**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| GT Real Estate Holdings, LLC | Case No. 22-10505 (KBO) |
| Debtor. | |
| | **Re:  D.I. 9, 53** |

**LIMITED OBJECTION OF YORK COUNTY, SOUTH CAROLINA**
**TO DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL**
**ORDERS (I) AUTHORIZING THE DEBTOR TO OBTAIN POSTPETITION**
**FINANCING, (II) GRANTING LIENS AND SUPER-PRIORITY CLAIMS,**
**(III) MODIFYING THE AUTOMATIC STAY, (IV) SCHEDULING A**
**FINAL HEARING, AND (V) GRANTING RELATED RELIEF**

York County, South Carolina (the "County"), by and through its undersigned counsel, files this objection (the "Objection") to the entry of a final order (the "Final DIP Order") granting the relief sought, on a final basis, by the *Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to Obtain Postpetition Financing, (II) Granting Liens and Super-Priority Claims, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 9] (the "DIP Motion") filed by the above-captioned debtor and debtor in possession (the "Debtor").  In support of this Objection, the County respectfully states as follows:

**BACKGROUND**

1.      On June 1, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor is a limited liability company organized under the laws of the state of Delaware.

2.      Immediately following the Petition Date, on June 2, 2022, the Debtor filed the DIP Motion seeking entry of an interim order (the "Interim DIP Order")[1] approving the terms of the

---

[1] Capitalized terms used but not defined herein have the meaning provided in the DIP Motion and Interim DIP Order, as applicable.

Debtor's proposed postpetition financing facility (the "DIP Facility") on an interim basis prior to entry of the Final DIP Order.

3.    On June 6, 2022, this Court entered the Interim DIP Order.

4.    On June 15, 2022 the United States Trustee for Region 3 (the "UST") filed a statement [D.I. 84] providing that no official unsecured creditors committee ("Committee") would be appointed in this chapter 11 case due to an insufficient response to the UST's communications regarding service on the Committee.

**OBJECTION**

5.    As set forth more fully below, both (i) the list of parties defined as "Releasees" set to receive a Release and (ii) the scope of the Releases are overly broad.  Providing all of the Releasees listed in the Interim DIP Order with a Release will provide no recognizable benefit to the Debtor's estate and serves only to benefit the DIP Lender and its non-Debtor Affiliates.  The Releases may be read to include claims that it would be inappropriate to release at this time, and releasing these claims will be detrimental to the Debtor's creditors and other parties in interest in this chapter 11 case.  Furthermore, the investigation and challenge mechanisms contemplated in the Interim DIP Order are illusory at best and do not provide for any meaningful form of investigation or challenge to the proposed Releases.  At minimum, the terms of the Final DIP Order must be modified to provide creditors and parties in interest with derivative standing to investigate the Prepetition Secured Lender, non-Debtor Affiliates, and the claims currently set to be released by the Debtor.

**A.  The Definition of "Releasees" Is Overbroad and Inappropriate.**

6.    As provided in the Interim DIP Order, the Releasees include "(a) the DIP Lender, (b) the Prepetition Secured Lender, (c) Affiliates of the DIP Lender, and (d) officers, employees,

directors, agents, representatives, owners, members, partners, financial and other advisors and consultants, legal advisors, shareholders, managers, consultants, accountants, attorneys, and predecessors and successors in interest of the DIP Lender and its Affiliates". Interim DIP Order, ¶ E(x).

7.      "Affiliate," as defined in the DIP Credit Agreement, has the meaning set forth in Section 101(2) of the Bankruptcy Code and also includes any other Person that, directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, such Person. For the purposes of this definition, the term "control" (including the terms "controlled by" and "under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, by contract, or otherwise. *See* DIP Credit Agreement, Section 1. This expansive definition may be read to include parties that would be inappropriate to provide with Releases, including the Debtor's non-Debtor Affiliates and ultimate equity sponsor, which have not provided any benefit to the Debtor's estate in exchange for such Releases.

8.      The Debtor has provided no rationale for the Releases provided to the officers, directors, agents, representatives, owners, members, partners, shareholders, managers, and predecessors and successors in interest of the DIP Lender, the Prepetition Secured Lender, or any Affiliate of the Prepetition Secured Lender or DIP Lender, especially in their personal capacities and with respect to any claim that is not a released claim.

9.      Prior to entry of the Final DIP Order and the occurrence of the Challenge Period Expiration Date, the County believes that the interests of the Debtor, its estate, and its creditors

will be unnecessarily and irreparably harmed unless the definition of Releasee provided in

Paragraph E(x) of the Interim DIP Order is modified to include only:

> (a) the DIP Lender, (b) the Prepetition Secured Lender and
> (c) employees, representatives, financial and other advisors and
> consultants, legal advisors, consultants and accountants and
> attorneys of the DIP Lender and/or the Prepetition Secured Lender,
> in their respective capacity as such.

**B. The Releases are Overbroad and Inappropriately Release the Claims of Third Parties.**

10.    Upon entry of the Final DIP Order and the occurrence of the Challenge Period

Termination Date, the Releases will become effective and would release the Releasees from all

claims of the Debtor "arising out of, in connection with, or relating to the DIP Facility, the DIP

Documents, the Prepetition Debt Documents relating to the Subsequent Prepetition Secured Note

and/or the transactions contemplated hereunder or thereunder including, without limitation,

(x) any so-called 'lender liability' or equitable subordination claims or defenses, (y) any and all

claims and causes of action arising under the Bankruptcy Code, and (z) any and all claims and

causes of action with respect to the validity, priority, perfection or avoidability of the liens or

claims held by the Prepetition Secured Lender and DIP Lender."  Interim DIP Order, ¶ E(x).

11.    Worse yet, in paragraph (E)(vii), the Debtor seeks to stipulate to the fact that "there

exist no claims or causes of action against the Prepetition Secured Lender with respect to, in

connection with, related to, or arising from the Prepetition Debt Documents . . . that may be

asserted by the Debtor *or any other person or entity*."  Interim DIP Order, ¶ E(vii).  The Debtor

has no authority to stipulate, and then seek to bind creditors, to any finding that non-debtors have

no claims against the Prepetition Secured Lender.  Therefore, the reference to "or any other person

or entity" should be stricken from paragraph E(vii).

12.     The scope of the Releases (assuming there is no successful Challenge) should be limited to the Debtor's claims relating to Prepetition Debt Documents, the Subsequent Prepetition Secured Note and just those Borrowings actually incurred by the Debtor pursuant to the DIP Facility.  As provided, the Releases would extend to the Debtor's estate, thereby preventing *any* party from asserting derivative claims on behalf of the Debtor's estate against the DIP Lender and the Secured Prepetition Lender for the released claims.  This binding of creditors and parties in interest, coupled with the lack of an effective investigation mechanism (as further discussed below), is intended to force a release in favor of the Affiliates of the DIP Lender and the Prepetition Secured Lender at the expense of the Debtor's creditors and other parties in interest.

13.     The Releases provided in Paragraph E(x) of the Interim DIP Order should be limited to the release of the more narrowly-tailored Releasees only:

> of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending or threatened including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, arising out of, in connection with, or relating only with Borrowings actually disbursed to the Debtor pursuant to the DIP Facility, the DIP Documents, the Prepetition Debt Documents relating to the Subsequent Prepetition Secured Note and/or the transactions contemplated hereunder or thereunder including, without limitation, (x) any so-called "lender liability" or equitable subordination claims or defenses, (y) any and all claims and causes of action arising under the Bankruptcy Code, and (z) any and all claims and causes of action with respect to the validity, priority, perfection or avoidability of the liens or claims held by the DIP Lender solely in its capacity as DIP Lender.  Also subject to entry of a Final Order, the Debtor further waives and releases any defense, right of counterclaim, right of setoff or deduction to the payment of the Prepetition Secured Note and the DIP Obligations actually incurred by the Debtor which the Debtor now has or may claim to

have against the Releasees arising out of, connected with, or relating to any and all acts, omissions or events occurring prior to the entry of the Final Order.

## C.   <u>The Right to Pursue Challenges Is Illusory.</u>

14.     The Interim DIP Order does not provide for any meaningful method of investigating the Debtor, the non-Debtor Affiliates, or the claims subject to the Releases.  Instead, the Interim DIP Order provides only for an illusory challenge mechanism that provides no method for any creditor or non-insider in this chapter 11 case to assert any causes of action that may be pursued by the Debtor or on the Debtor's behalf.  As such, the challenge and investigation mechanism contained in the Interim DIP Order must be modified to ensure that any investigation conducted by the Debtor's creditors or parties in interest is (i) not illusory and (ii) provides creditors and parties in interest a meaningful opportunity to assert claims on the Debtor's behalf.

15.     The Debtor is a limited liability company established under the laws of Delaware. Under the Delaware Limited Liability Company Act, only a member or an assignee of a member of a limited liability company may bring a derivative action on behalf of the managers and members of a limited liability company.  *See, e.g.*, *Official Comm. of Unsecured Creditors of HH Liquidation, LLC v. Comvest Grp. Holdings, LLC (In re HH Liquidation, LLC)*, 590 B.R. 211, 284 (Bankr. D. Del. 2018).  Therefore, only a member (or assignee of a member) of the Debtor has standing to bring a derivative suit on the Debtor's behalf.  As the DIP Lender is the 100% member of the Debtor, only the DIP Lender or its assignee has standing to bring a derivative claim on behalf of the Debtor's estate.  Thus, as courts in this District have noted, the proverbial fox is guarding the hen house, as there will be no meaningful derivative claim brought by the DIP Lender relating to the claims that the DIP Lender is seeking to have released by the Debtor.

16.    This illusory derivative standing and investigation issue is further compounded by the fact that no Committee has been established in this chapter 11 case.  As it stands, the investigation and Challenge Period are toothless and provide creditors and parties in interest with no meaningful method of (i) ascertaining the existence of any causes of action relating to the claims the Debtor is releasing or (ii) asserting a cause of action on the Debtor's behalf.

17.    The Debtor did not stipulate to providing standing to any party in interest, and instead provides that a party in interest "**with standing to do so**" must initiate an adversary proceeding prior to the Challenge Period Termination Date.  *See* Interim DIP Order, ¶ 8(a) (emphasis added).  As no party has standing to bring these derivative claims, there must be some other mechanism created that would allow parties in interest in this chapter 11 case to meaningfully investigate and challenge the claims being released by the Debtor.

18.    Courts in this District previously have established workarounds to this derivative standing issue for Delaware limited liability companies.  For example, in *In re Rudy's Barbershop LLC*, the court required the inclusion of a stipulation in the final order authorizing the debtors' postpetition financing that required the debtors and their postpetition lenders (who were the debtors' majority equity holders and prepetition lenders) to agree that they would not raise a defense in any challenge proceeding, adversary proceeding, or contested matter brought in connection with the prepetition activity set to be released based on the ability of creditors to file derivative suits on behalf of limited liability companies.  *In re Rudy's Barbershop, LLC*, Case No. 20-10746 (LSS) (Bankr. D. Del. 2020) [D.I. 144], ¶5.39.  Furthermore, the operating agreements of each of the debtors were amended to permit creditors to bring challenge proceedings, adversary proceedings, and contested matters against the prepetition secured parties that were serving as postpetition lenders.  *Id.*

- 7 -

19.     Likewise, in *In re The Collected Group, LLC* the court required the inclusion of a similar stipulation providing that, in connection with any challenge asserted by a creditor, the debtors' prepetition secured lenders could not raise as a defense to such challenge the inability of creditors to file derivative suits on behalf of limited liability companies under the Delaware Limited Liability Company Act.  *In re The Collected Grp., LLC*, Case No. 21-10663 (LSS) (Bankr. D. Del. 2021) [D.I. 146], ¶ 35.

20.     Pursuant to the DIP Motion and the *Declaration of Jonathan Hickman, Chief Restructuring Officer of the Debtor, in support of the DIP Motion* [D.I. 10], in seeking postpetition financing, the Debtor discussed financing with only two (2) parties, including the Prepetition Secured Lender.  It is unclear to what extent the Debtor legitimately searched for postpetition financing, as the DIP Motion provides that the DIP Facility was negotiated with the DIP Lender in "a matter of days," and no other offers for financing were received.  *See* DIP Motion, ¶¶ 17-18. As presented by the Debtor, the Debtor has either been forced to take on onerous terms by the DIP Lender or has been working for the DIP Lender's benefit, either of which must be investigated by an independent party in interest with a vested interest in increasing the size of the Debtor's estate. It is unclear whether any colorable causes of action exist against the Debtor's Affiliates, the DIP Lender, or the Prepetition Secured Lender.  However, without the ability to assert a derivative claim on the Debtor's behalf, and with no Committee established in this case, the Debtor's creditors currently are left at the mercy of the DIP Lender and its insider non-Debtor Affiliates— who cannot reasonably be expected to undertake any significant investigation or assert any claims that may be harmful to their position.

21.     As such, prior to entry of the Final DIP Order and the Challenge Period Expiration Date, the County believes that the interests of the Debtor, its estate and its creditors will be

unnecessarily and irreparably harmed unless the Final DIP Order expressly provides that

stipulation providing that creditors may assert derivative claims on account of the Debtor and its

estate. Moreover, requiring an LLC Challenge Motion (as defined in ¶ 8(a) of the Interim DIP

Order) serves no purpose other than to reduce the investigation period substantially so that any

such motion can he heard and granted before the Challenge Period Expiration Date. Accordingly,

the Final Order should be revised to include the following provision:

> The DIP Lender, Prepetition Secured Lender, and Debtor stipulate
> and agree that the DIP Lender, the Prepetition Secured Lender, and
> Debtor will not raise as a defense in connection with any Challenge
> the ability of creditors to file derivative suits on behalf of limited
> liability companies under the Delaware Limited Liability Company
> Act in connection with matters arising out of, in connection with, or
> relating to the Prepetition Debt Documents, the Prepetition Secured
> Note, and the Subsequent Prepetition Secured Note and/or the
> transactions contemplated thereunder. Further, the Prepetition
> Lender, in its capacity as holder of 100% of the membership
> interests of the Debtor, agrees that the Debtor's operating agreement
> is hereby amended to permit a Challenge or any adversary
> proceeding or contested matter against the Prepetition Secured
> Lender to be commenced by a creditor or an official committee
> appointed in this chapter 11 case, either of which shall be deemed to
> have standing to assert any Challenge.

22.    Furthermore, the Challenge Period of seventy-five (75) calendar days from entry of

the Interim DIP Order must be meaningfully extended to both account for the delay in the ability

of creditors and parties in interest to be able to assert a Challenge and also to permit a meaningful

investigation of the Debtor and the Releases can be undertaken. As such, the County believes that

the Challenge Period should be extended, at minimum, to seventy-five (75) calendar days from

entry of the Final DIP Order.

## D. Revisions Are Required Due to the Absence of an Official Committee of Unsecured Creditors.

23.    No official committee of unsecured creditors has been appointed in this case.

Therefore, all rights granted solely to the non-existent "committee" should be granted to any

creditor that seeks to (or does) assert a Challenge. *See, e.g.*, Interim DIP Order, ¶ 17(b) (providing for delivery of an Event of Default notice to the Debtor, the "Committee" and United States Trustee and that "the Debtor and any Committee shall be entitled to an emergency hearing" regarding an alleged Event of Default) and ¶ 8(b) (investigation budget for "Creditors' Committee"). Additionally, in light of the fact that a creditor may (among other things) conduct an investigation and assert a Challenge, the statement in ¶ 20(e) that the Interim DIP Order "does not create any rights for the benefit of any . . . creditor" is false and should be deleted.

### E.   The DIP Liens and DIP Superpriority Claims Should Not Encumber or Be Payable from the Proceeds of Avoidance Actions.

24.    The Interim DIP Order provides that, upon entry of a Final Order, the DIP Liens shall attach to the proceeds of avoidance actions under "sections 502(d), 544, 545, 547, 548, 549, 551, 553(b), 732(2) and 742(2) of the Bankruptcy Code." Interim DIP Order, ¶ 2(d). Moreover, the DIP Superpriority Claim is payable from such property. *Id.*, ¶ 2(i).

25.    No liens or claims of the DIP Lender should attach to any avoidance actions or the proceeds thereof. The unsecured creditors should receive any benefit from such proceedings. That is particularly true here, as the DIP Lender has "rolled-up" prepetition debt and seeks to have such debt payable from property that should benefit unsecured creditors.

*[The remainder of this page has been left intentionally blank.]*

**WHEREFORE,** the County respectfully requests that the Court (a) DENY entry of the Final Order or (b) alternatively, modify the Final Order to (i) limit the parties determined to be Releasees as set forth above, (ii) limit the scope of the Releases as set forth above, (iii) modify the Challenge mechanism to provide creditors with standing and allow creditors to assert derivative claims on behalf of the Debtor and the Debtor's estate as set forth above, (iv) extend the Challenge Period at minimum to seventy-five (75) calendar days from entry of the Final Order, (v) require the revisions providing the rights reserved for the Committee be granted to all creditors as set forth above, (vi) provide that the DIP Liens and DIP Superpriority Claims do not encumber the avoidance actions and are not payable from proceeds of the avoidance actions as set forth above and (vii) provide such other relief as is appropriate.

**REED SMITH LLP**

Dated: June 22, 2022

*/s/ Kurt F. Gwynne*
Kurt F. Gwynne (No. 3951)
1201 North Market Street, Suite 1500
Wilmington, DE  19801
Telephone:  (302) 778-7500
Facsimile:  (302) 778-7575
E-mail:  kgwynne@reedsmith.com

**OF COUNSEL:**                                    -and-

**GALLIVAN, WHITE & BOYD P.A**.          Derek J. Baker, Esq. (admitted *pro hac vice*)
John T. Lay, Jr., Esq.                        Three Logan Square, Suite 3100
Post Office Box 7368                          1717 Arch Street
Columbia, SC 29202                            Philadelphia, PA  19103
Telephone:  (803) 724-1800                    Telephone:  (215) 851-81008
Facsimile:  (803) 779.1767                    Facsimile:   (215) 851-1420
E-mail:  jlay@GWBlawfirm.com                  E-mail:  dbaker@reedsmith.com

*Counsel to York County, South Carolina*
