## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| GT REAL ESTATE HOLDINGS, LLC, | Case No. 22-10505 (KBO) |
| Debtor. | |

## MOTION OF MASCARO/BARTON MALOW, A JOINT VENTURE, TO TRANSFER VENUE TO THE BANKRUPTCY COURT FOR THE DISTRICT OF SOUTH CAROLINA

Mascaro/Barton Malow, a Joint Venture, ("MBM"), by and through its undersigned counsel, submits this motion (the "Motion") for entry of an order, pursuant to 28 U.S.C. § 1412 and Rule 1014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to transfer venue to the United States Bankruptcy Court for the District of South Carolina (the "South Carolina Bankruptcy Court"), and respectfully represents as follows:

### I.    PRELIMINARY STATEMENT

1.    The interests of all creditors and other parties-in-interest are best served by a transfer of venue to the South Carolina Bankruptcy Court. The Debtor has no material assets in Delaware, no employees in Delaware, and no business operations in Delaware. Not a single one of the Debtor's creditors (which have been identified in its filings) are located in Delaware. The Debtor's only connection to Delaware is as its place of formation. This is not the typical complex Chapter 11 bankruptcy case filed in this Court by a Delaware entity that involves thousands of creditors and assets located across the country. This case is essentially a single-asset bankruptcy, where the asset is a partially-completed complex that was to be the new South Carolina headquarters and practice facility (the "Project") for the Carolina Panthers NFL football team. There is a limited creditor base, which primarily includes MBM, its subcontractors (the majority of whom operate near the Project),

the City of Rock Hill, South Carolina ("Rock Hill") and the County of York, South Carolina ("York County").  The primary stated cause for the filing of the Bankruptcy Case involves disputes with the local governments of Rock Hill and York County over facts and circumstances that occurred in South Carolina (in particular, the failed issuance of public bonds).  The stated goals for filing the Bankruptcy Case (wind down, protection of assets, and claims reconciliation) all involve actions to occur in South Carolina and, in all likelihood, evidence and witnesses located in South Carolina.  Nearly all of the claims in this Bankruptcy Case arise from actions that occurred or failed to occur in South Carolina. The pre-petition transfers of the Debtor's assets to insiders involved assets located in the Carolinas. Finally, the negative impact of the contemplated wind down of the Project will have on the City of Rock Hill and York County, South Carolina, residents and businesses cannot be overrstated.

2.     Transfer of venue to South Carolina likewise will not prejudice any parties in interest.  The Debtor's principal place of business is the home of the Carolina Panthers located approximately 30 miles from the Project in Rock Hill.  DT Sports Holding, LLC (the proposed DIP lender in this Bankruptcy Case and parent of the Debtor), and the Debtor's two subsidiaries, Waterfront Golf Club, LLC and Waterfront Golf Club I, LLC[1] all share the same business address as the Debtor.  More than half of the subcontractors who worked on the Project are located in the Carolinas and more than half of the creditors identified on the Debtor's 20 Largest List (as defined below), are located near the Project.[2]  Proceeding in South Carolina optimally suits the persons with an interest in being heard in the Bankruptcy Case as well as others who must protect their interests in the almost certain event of the Debtor's liquidation.

---

[1] Waterford Golf Club, LLC and Waterford Golf Club I, LLC collectively own and operate a golf course in Rock Hill, South Carolina.

[2] The largest insider claim in the amount of $163.5 million is held by the Carolina Panthers, who are located approximately 30 miles from the Project in Rock Hill, South Carolina.  (MBM does not concede to the validity, classification or treatment of this insider claim).

3.      Accordingly, and for the reasons set forth herein, MBM respectfully requests that this Honorable Court grant the Motion and transfer this proceeding to the United States Bankruptcy Court for the District of South Carolina.

## II.      JURISDICTION AND VENUE

4.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2).

5.      The legal bases for the relief requested in this Motion are 28 U.S.C. § 1412 and Bankruptcy Rule 1014(a).

## III.      BACKGROUND

6.      On June 1, 2022 (the "Petition Date"), GT Real Estate Holdings, LLC (the "Debtor") commenced the instant bankruptcy case (the "Bankruptcy Case") by filing a voluntary petition for relief under chapter 11 of 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

7.      The Debtor is an entity created to own and develop a 234-acre sports and entertainment venue in Rock Hill, South Carolina, the primary purpose of which was to provide a new headquarters and practice facility (the "Practice Facility/HQ") for Panthers Football, LLC. *First Day Dec.,* D.I. 8, ¶ 6.  Panthers Football, LLC is more commonly known as the Carolina Panthers NFL football team (the "Carolina Panthers").  *Id.*

8.      The Debtor's only other assets identified in its filings are its ownership interests in two subsidiaries, Waterford Golf Club, LLC and Waterford Golf Club 1, LLC (collectively, "Waterford"), which own and operate the Waterford Golf Club.  *First Day Dec.,* D.I. 8, ¶ 24.  The Waterford Golf Club is also located in Rock Hill, South Carolina, the same as the Practice Facility/HQ.  *Id.*

9.      The Debtor's mailing address is 800 S. Mint St., Charlotte, NC 28202, which is commonly known as Bank of America Stadium ("Panthers Stadium").  See *Petition Pkg.* D.I. 1, pg. 1.  Panthers Stadium is located in Charlotte, North Carolina, approximately 30 miles from Rock Hill, South Carolina, where the Debtor's Practice Facility/HQ is located.

10.     Numerous of the Debtor's affiliates who share the Panthers Stadium address with the Debtor include, without limitation, DT Sports Holding, LLC ("Insider Lender/Parent"), DT Panthers, LLC, Tepper Sports & Entertainment, Tepper Sports Holding, Inc., Panthers Football Holdco, LLC, the Carolina Panthers, Waterford Golf Club, LLC, and Waterford Golf Club 1, LLC. *See, Notice of Filing Creditor Matrix*, D.I. 12.

11.     On or about July 13, 2020, construction of the Practice Facility/HQ commenced pursuant to that certain Construction Management Agreement between the Debtor and MBM dated March 30, 2020 (the "Contract").  *First Day Dec.,* D.I. 8, ¶¶ 5, 23.

12.     Pursuant to the Contract, MBM, as Construction Manager/General Contractor, among other things, manages and provides general contracting and other services with respect to construction of the Project. *See, First Day Dec.,* D.I. 8, ¶¶ 23.

13.     As the Practice Facility/HQ construction Project is located in South Carolina, MBM is registered in South Carolina and licensed by the South Carolina Department of Labor, Licensing, and Registration as a general contractor.  *See*, License Nos. 122160 (Mascaro Construction, L.P.) and 12035 (Barton Malow Company).  *See also* D.I. No. 76.

14.     MBM, as Construction Manager/General Contractor, provided materials and labor to the Project both directly, and by engaging numerous first-tier subcontractors (who, in many cases, engaged second-tier subcontractors).  The majority of the first-tier subcontractors and

additional second-tier subcontractors (collectively the "<u>Subcontractors</u>") are geographically located near the Project.

15.     MBM and many Subcontractors performed as required under the Contract at all times relevant hereto and possess mechanic's lien rights in the Practice Facility/HQ under South Carolina law. Aside from the Insider Claim (as defined below) of the Carolina Panthers, the claims of MBM and the Subcontractors constitute the vast majority of the debt in this Bankruptcy Case, in addition to the claims of the local governments. *See, First Day Dec.,* D.I. 8, ¶35.

16.     The Debtor has no employees. *First Day Dec.,* D.I. 8, ¶ 24. Further, upon information and belief, the Debtor has never had any employees or, until very recently, a management team. Having no employees, communications and directives relating to the Project have largely come from representatives of the Carolina Panthers and were received by MBM representatives located in Rock Hill.

17.     The Debtor's Contract with MBM was signed by "Mark Hart" as "Vice President and C.O.O.", but Mark Hart is believed to be the Vice President and Chief Operating Officer of the Carolina Panthers, not the Debtor.

18.     Since the Project Start Date, the Carolina Panthers funded the under-capitalized Debtor approximately $163.5 million for the costs associated with the Project on an unsecured basis. *First Day Dec.,* D.I. 8, ¶ 27. Of that amount, the Carolina Panthers directly paid MBM $115,422,770 for amounts due per the Contract.

19.     The Carolina Panthers assert that the foregoing funds were loaned to the Debtor and that they have a claim against the Debtor in the amount of $163.5 million (the "<u>Insider Claim</u>"). *First Day Dec.,* D.I. 8, ¶ 27.

20.     The Debtor/Carolina Panthers suspended work at the Project on March 7, 2022, following disputes with the local government.   The disputes were heavily publicized pre-bankruptcy and described in the Debtor's filings as being attributable to Rock Hill and its purported refusal to issue $225 million in public bonds.  *See First Day Dec.,* D.I. 8, ¶ 29.

21.     On March 18, 2022, the Debtor and/or its affiliate issued a notice of default to Rock Hill under the Finance and Construction Administration Agreement (the "FCAA"), which triggered a 30-day cure period.  On April 19, 2022, the Debtor provided a notice of special termination of the Land Development Agreement (the "LDA") and a notice of rescission of the FCAA.  *First Day Dec.,* D.I. 8, ¶ 33.  Rock Hill disputes the bases for such actions.  *First Day Dec.,* D.I. 8, ¶ 34.

22.     The FCAA, LDA and related Dedication Agreement between the Debtor and Rock Hill and the Fee in Lieu of Tax and Incentive Agreement between the Debtor and York County, are all governed by South Carolina law.  See *First Day Dec.,* D.I. 8-1, pg. 30, 8-2, pg. 34., 8-3, pg. 19 and 8-5, pg. 40.

23.     Following suspension of the Project, Mark Hart and/or other persons within the Carolina Panthers organization continued to provide MBM with directives for goods and services per the Contract up to days before the Petition Date.

24.     Between the time the Debtor issued a notice of default under the FCAA and the cure date, the Debtor transferred a parking lot/facility located adjacent to the existing Carolina Panthers football stadium in Charlotte, North Carolina to PS Marks, LLC, an insider of the Debtor, for $15.5 million.  *First Day Dec.,* D.I. 8, ¶ 36.

25.     While the Debtor states that the parking lot/facility was purchased for the same price the Debtor paid for it "previously," it is unclear when that purchase occurred and the

condition of that property at the time of the original acquisition.  Without more information, it is impossible to ascertain at this time if this recent insider transaction was in exchange for less than equivalent value but it indisputably was made while the Debtor was insolvent.  It likewise is unknown whether the Debtor made any effort to market the parking facility publicly or to maximize value.

26.    In the week leading up to the Petition Date, the Insider Lender/Parent, the Debtor's owner, extended financing via certain prepetition insider loans to the Debtor.  *First Day Dec.,* D.I. 8, ¶ 26.  As collateral for the Prepetition Insider Loans, the Debtor pledged another then-unencumbered asset - membership interests in Waterford.  *First Day Dec.,* D.I. 8, ¶ 39.  The first loan in the amount of $4.0 million purportedly was advanced on May 26, 2022 and the second loan in the amount of $3.2 million purportedly was advanced on May 31, 2022.  *First Day Dec.,* D.I. 8, ¶ 26.  DT Sports also took a mortgage on the golf course property owned by Waterford, thereby collateralizing any value that the Debtor's estate may have enjoyed in the asset.  *First Day Dec.,* D.I. 8, ¶ 26.

27.    The Debtor and Rock Hill subsequently continued to negotiate their disputes and entered into a Standstill Agreement.  *First Day Dec.,* D.I. 8, ¶ 24. The Standstill Agreement purportedly contained a litigation forbearance, which expired at 5:00 pm prevailing Eastern Time on June 2, 2022 (a day after the Petition Date).  *First Day Dec.,* D.I. 8, ¶ 37.

28.    The Debtor states that vendors began providing notice of their statutory mechanic's liens on the Project, and that the Debtor lacked the liquidity needed to continue to preserve the safety and security of the Project indefinitely.  *First Day Dec.,* D.I. 8, ¶ 38.  Consequently, the Debtor elected to commence this Chapter 11 Case.  *Id*.

29.     The Debtor, by its own admission, does not continue to operate its business.  The Debtor has stated in its filings with this Court that it is not operating and instead has filed the Case to effectuate a wind down (the "Wind Down"). *First Day Dec.,* D.I. 8, ¶¶ 9,12.

30.     Pursuant to Bankruptcy Rule 1007(d), the Debtor filed with its petition, Official Form 204 – *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (the "20 Largest List").  *Petition Pkg.* D.I. 1, pg. 13.

31.     The 20 Largest List identifies 17 creditors of the Debtor – none of whom are identified as having a Delaware address. *See D.I. 1, pg. 13.*

32.     With the exception of York County, all of the creditors on the 20 Largest List are identified as holding "Trade" claims against the Debtor.  *See D.I. 1, pg. 13.*

33.     MBM is currently owed nearly $80 Million under the Contract, which is for labor and materials supporting valid mechanic's liens under S.C. Code § 29-5-10.

34.     Additionally, as of the date of this Motion, MBM is aware of 19 mechanic's liens which have been filed with respect to the Project in the aggregate amount of more than $41,000,000.

35.     Upon information and belief, all of the Debtor's records are located at the Project site in South Carolina and, to a lesser degree, at Panther's Stadium, which is approximately 30 miles away from the Project.

36.     For instance, the Debtor has represented to this Court that

> [t]o prepare the Schedules and Statements, the Debtor must compile information from books, records, and documents relating to its various assets and contracts.  As described in the First Day Declaration, [MBM] is responsible for various aspects of the construction of the Project and the Debtor does not have any employees of its own.  In addition, most of the third party vendors and contractors for the Project are subcontractors … . The Debtor

must obtain certain information to complete the Schedules and
Statements from [MBM]…

*Debtor's Motion for Entry of Order Extending Time to File Schedules*, D.I. 82, ¶9.

37.    Most of MBM's Project records are located at the Project site, in Rock Hill, South Carolina.

38.    Also, upon information and belief, all relevant contracts were executed by employees of the Carolina Panthers.

## IV.    RELIEF REQUESTED AND BASIS THEREFORE

39.    In light of the foregoing facts, which are hereby incorporated by reference, and in the interests of justice and for the convenience of the parties, this Court should exercise its discretion and transfer venue of the instant Bankruptcy Case to South Carolina.

40.    Venue is proper in South Carolina and transferring this matter is clearly in the best interest of all creditors and parties-in-interest.  The Debtor has no assets in Delaware and no operations in Delaware.  Moreover, none of the Debtor's creditors (which have been identified in its filings) are located in Delaware.  *See Debtor's Voluntary Petition*, D.I. 1, pg. 13.  The Debtor's only connection to Delaware is as its place of formation. *Id*.

41.    Conversely, the Debtor and its affiliates, including the Carolina Panthers, for whom the Practice Facility/HQ was designed, are all located in close proximity to the Practice Facility/HQ Project in South Carolina.

42.    Effectively all of the Debtor's assets are located in South Carolina.  These assets consist primarily of the 234 -acre Project.

43.    Likewise, the majority of the Debtor's major creditors are located in, or operate in, close proximity to the Project, including the MBM and the Subcontractors – who hold mechanic's lien claims against the Debtor under South Carolina law. In addition to the mechanic's lien claims,

MBM's claims against the Debtor for breach of the Contract, pursuant to which the Project is being constructed, will also be governed by South Carolina law.

44.    The Debtor is also involved in disputes with the City of Rock Hill, South Carolina and the County of York, South Carolina – both of whom are listed as creditors of the Debtor.  *See Debtor's Voluntary Petition*, D.I. 1, pg. 13; *Notice of Filing Creditor Matrix*, D.I. 12.  According to the Debtor (see, e.g., D.I. 8), these disputes are the primary cause for the filing of the Bankruptcy Case and they involve facts and circumstances that occurred in South Carolina.  In fact, York County has initiated a lawsuit against D.T. Sports and affiliates of the Debtor regarding the Project and the failed issuance of local bonds. *See, York County v. Appaloosa Management, et al.*, Case No. 2022 CP 4601756 in the Court of Common Pleas of York County, South Carolina.

45.    The Debtor has stated this case was filed for the purpose of winding down its operations.  Logic dictates that such a Wind Down will entail the sale of the Practice Facility/HQ, or more likely, a sale of the land and a costly demolition of the existing structure.

46.    The residents and businesses of Rock Hill and York County will likely also be negatively impacted by the termination of the Project.[3]  As residents and taxpayers, they understandably have a vested interest in the outcome of this case and should be given the opportunity to be heard, if they so choose, without the inconvenience and expense of distant travel and/or engaging counsel. *See, First Day Dec*., D.I. 8, ¶ 22 (mentioning economic impact of the Project).

47.    The stated goals for filing the Bankruptcy Case (wind down, protection of assets, and claims reconciliation) all involve actions to occur in South Carolina.  Naturally, all relevant evidence and witnesses are located in South Carolina.

---

[3] Additionally, Chester County, South Carolina, may also impacted by the Project and related agreements. *See, First Day Dec., D.I. 8, at fn. 10.*

48.     Transfer of venue to South Carolina could not conceivably prejudice any parties in interest, none of whom have more than the most *de minimus* relationship to the District of Delaware. To the contrary, transfer of venue to South Carolina would be both in the interest of justice and for the convenience of all parties, including the Debtor, whose operations are located in South Carolina.

49.     Every facet of this bankruptcy is centered in the Rock Hill, South Carolina area. The Debtor's principal place of business and nearly all of its known creditors are located in and near Rock Hill, South Carolina.  The Debtor's principal asset is a large parcel of real estate in Rock Hill, South Carolina, which was in the process of being improved.  The dispute that purportedly led to this proceeding is between Debtor and the City of Rock Hill, South Carolina, and the case involves contractual agreements and mechanic's liens under South Carolina law. The County of York, South Carolina has commenced a legal proceeding related to the Project in the Court of Common Pleas of York County, South Carolina.

50.     Pursuant to the 28 U.S.C. § 1412 and Bankruptcy Rule 1014, this Court should enter an order transferring venue for the Debtor's bankruptcy proceedings to South Carolina "in the interest of justice or for the convenience of the parties."

**A.     Venue is Proper in South Carolina.**

51.     South Carolina is a proper venue for these Chapter 11 proceedings. Venue is governed by 28 U.S.C. § 1408. Section 1408 provides that venue is proper in a district:

> in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and eighty-day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district;

11

28 U.S.C. § 1408(1).  Here, the Debtor's center of operations and primary asset – and the reason

that the Debtor entity was created – the Practice Facility/HQ - is located in South Carolina.  The

Bankruptcy Court for the District of South Carolina easily satisfies the statutory venue requirement

of 28 U.S.C. § 1408.

**B.**      **This Court Should Transfer Venue of the Bankruptcy Case to South Carolina in the Interest of Justice and for the Convenience of the Parties.**

52.     Under 28 U.S.C. § 1412, the court may transfer a bankruptcy case "in the interest

of justice or for the convenience of the parties."  *See In re LaGuardia Assocs., L.P.*, 316 B.R. 832,

837 (Bankr. E.D. Pa. 2004); *see also* Fed. R. Bankr. P. 1014(a).  The decision to transfer venue

lies within the discretion of the bankruptcy court.  *In re Rehoboth Hosp., LP*, No. 11-12798 (KG),

2011 WL 5024267, at *3 (Bankr. D. Del. Oct. 19, 2011), (*citing Son v. Coal Equity, Inc. (In re*

*Centennial Coal, Inc.)*, 282 B.R. 140, 146 (Bankr. D. Del. 2002)).  Although there is a presumption

in favor of maintaining the debtor's choice of venue, that presumption is not dispositive and must

be weighed against other relevant factors.  And, relevant here, "the weight afforded to the debtor's

choice of forum is diminished when the choice of forum is not directly related to the operative,

underlying facts of the case." *Id*., (citing  *Centennial Coal*, 282 B.R., at 144-45).

53.     The Third Circuit considers the following factors when determining whether to

transfer venue of a chapter 11 case:

> (1) plaintiff's choice of forum, (2) defendant's forum preference, (3) whether the
> claim arose elsewhere, (4) the location of books and records and/or the possibility
> of viewing premises if applicable, (5) the convenience of the parties as indicated
> by their relative physical and financial condition, (6) the convenience of the
> witnesses—but only to the extent that the witnesses may actually be unavailable
> for trial in one of the fora, (7) the enforceability of the judgment, (8) practical
> considerations that would make the trial easy, expeditious, or inexpensive, (9)
> the relative administrative difficulty in the two fora resulting from congestion of
> the courts' dockets, (10) the public policies of the fora, (11) the familiarity of the
> judge with the applicable state law, and (12) the local interest in deciding local
> controversies at home.

*Hechinger Liquidation Trust v. Fox (In re Hechinger Inv. Co. of Delaware, Inc.)*, 296 B.R. 323,

325–26 (Bank. D. Del. 2003) (citing *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879–80 (3d Cir.

1995)); *see also Centennial Coal,* 282 B.R., at 144-48 (analyzing same factors); *In re Rehoboth*

*Hosp., LP*, 2011 WL 5024267, at *3-5 (analyzing similar factors).[4] These factors strongly favor

transfer to South Carolina.

### 1.    The Debtor's Choice of Forum Is Entitled to Little Weight In this Case.

54.    Given the overwhelming number of contacts and with the Carolinas, and especially

South Carolina, the Debtor's choice of Delaware for its bankruptcy filing is entitled to little weight

under the circumstances.  The Debtor appears to have filed its petition in Delaware solely because

it is a Delaware limited liability company.  A debtor's place of formation, however, is of little

significance in the venue analysis.  *In re La Guardia Assocs.*, 316 B.R. at 836. "[T]he weight

afforded to the debtor's choice of forum is diminished when the choice of forum is not directly

related to the operative, underlying facts of the case."  *In re Rehoboth Hosp., LP*, 2011 WL

5024267, at *3; *See also, In re Buffets Holdings, Inc.*, 397 B.R. 725, 728 (Bankr. D. Del. 2008)

("While recognizing the significant weight given to a plaintiff's choice of forum in any venue

transfer decision, the Court finds that weight is diminished where, as here, the Plaintiff's choice

of forum for its bankruptcy case has no direct relation to the operative, underlying facts of the

[case].")

55.    The operative underlying facts of this case are all centered in and near South

Carolina.  The Debtor's principal asset, the Practice Facility/HQ, is located in South Carolina.  The

---

[4] The convenience of debtor's counsel or other professionals is *not* a relevant consideration. *In re Trico Steel Co., LLC*, 261 B.R. 915, 917 (Bankr. N.D. Ohio 2001).

majority of the Debtor's creditors are located in South Carolina - or nearby North Carolina.  The Debtor's contracts with MBM, York County and Rock Hill are governed by the laws of South Carolina - as are the mechanic's lien claims of the Subcontractors.  The Debtor's mailing address is not located in Delaware.  *See Debtor's Voluntary Petition*, <u>D.I.</u> 1, pg. 1.  Nor is the Debtor's purported parent, the Insider Lender/Parent, or its parent, Tepper Sports Holding, Inc., both of whom are located Charlotte.  *See* D.I. 1 pg. 14.  In fact, none of the creditors listed on the Debtor's 20 Largest List have an address in Delaware, while a majority of the creditors listed on the 20 Largest List are located in close proximity to the Project.  *See* D.I. 1, pg. 13.

### 2.   <u>All Other Factors Strongly Favor Transfer to South Carolina or Are Neutral</u>.

56.     Nearly all of the twelve relevant factors support transferring this action in "the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412; *Jumara*, 55 F.3d at 879–80.  Factors that support a transfer in this case include:

(2)   [creditor's] forum preference,

(3)   whether the claim arose elsewhere,

(4)   the location of books and records and/or the possibility of viewing premises if applicable,

(5)   the convenience of the parties as indicated by their relative physical and financial condition,

(6)   the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora,

…

(8)   practical considerations that would make the trial easy, expeditious, or inexpensive, . . .

(10)  the public policies of the fora,

(11)  the familiarity of the judge with the applicable state law, and

(12)  the local interest in deciding local controversies at home.

*In re Hechinger Inv. Co. of Delaware, Inc.*, 296 B.R. at 325–26 (citing *Jumara*, *55* F.3d at 879–80).  These factors are addressed below.  Factor seven, which is the enforceability of judgment,

and factor nine, which is the relative administrative difficulty in the two fora resulting from congestion of the courts' dockets are both neutral.

- ***Factor 2: MBM Strongly Prefers a South Carolina Forum.***

57.    MBM is by far the largest non-insider creditor in the Bankruptcy Case.  MBM is currently owed approximately $80 Million under the Contract.  Further, MBM also holds a claim in a currently undetermined amount for additional amounts related to, or arising from, the Contract, which is governed by South Carolina law.

58.    In addition to MBM's claims, it appears that <u>every</u> <u>single</u> other claim against the Debtor arose in South Carolina and/or is related to the Project, which is located in South Carolina.

59.    MBM prefers the case proceed in South Carolina, because the Project is located there and because the subject Contracts, and Subcontractor's mechanic's lien claims are governed by South Carolina law.

60.    The Debtor's next largest creditor, York County[5], is also located in South Carolina, and has already initiated a lawsuit against the Debtor's affiliates in the Court of Common Pleas of York County, South Carolina, with respect the Project.

61.    The stated reason for the bankruptcy case filing is a dispute with Rock Hill, which is located in South Carolina.

62.    In addition to MBM, one would think that both York County and City would also prefer venue in South Carolina, due to their respective interests in the Project and the outcomes of the various disputes related thereto.

---

[5] The Debtor's 20 Largest List includes York County as holding a disputed claim in the amount of 21,000,000. *See* D.I. 1 pg. 14.

- ***Factor 3: MBM's Claims and the Bankruptcy Itself Arose in South Carolina.***

63.     Neither the facts and circumstances leading to Debtor's chapter 11 petition and the claims asserted in Debtor's first day filings, nor any claims against Debtor arose in Delaware. Rock Hill's failure to issue the $225 million in public bonds that exposed the Debtor's liquidity crisis and necessitated the bankruptcy filing, occurred in South Carolina. *See First Day Declaration,* D.I. 8, ¶¶ 29-38.  MBM's claims against Debtor arising from the Contract arose in South Carolina where the Project is located.  Accordingly, this factor weights in favor of transfer. *See Matter of Ocean Properties of Delaware, Inc.*, 95 B.R. at 306 (transferring venue of entire bankruptcy case to Florida where "the majority of creditors, in number, amount and unrelated to the Debtors are Florida claimants and the locale of all assets is Florida.  Applying these facts to the factors which must be considered in balancing the Debtor's choice of forum, it is clear that the scales tip in favor of a Florida forum");  *In re Buffets Holdings, Inc.*, 397 B.R. at 728 (transferring proceeding where contract and all relevant events occurred in other jurisdiction).

- ***Factors 4-6 and 8: South Carolina is the Most Convenient Forum.***

64.     South Carolina is by far the most convenient forum for this Chapter 11 proceeding. *First*, South Carolina is where the Project which is the admitted reason for the Debtor's existence, is located. Many of the Creditors are located in South Carolina, or just across the border in North Carolina.  While the Debtor may have a mailing address located a short trip across the border at Panthers Stadium, many of its relevant business records (to the extent not also located at Panthers Stadium) are located at the Project in South Carolina.  Moreover, if it becomes necessary to view the Practice Facility/HQ in the course of this action, or obtain records from the Project or creditors, it is much more convenient for a South Carolina court to do so. South Carolina is also convenient

16

for MBM, the primary creditor of the Debtor. MBM has a business office located at the Project in Rock Hill, South Carolina, and its employees are located there.

65.     South Carolina is also convenient for the Debtor. The Debtor's principal (and only significant) asset, the Practice Facility/HQ is located in Rock Hill, South Carolina, and its principal place of business is located a short drive away in Charlotte.  The Debtor's affiliates are currently in litigation with York County in South Carolina.  Finally, the Debtor's corporate owner DT Sports Holding, LLC, and its parent, Tepper Sports Holding, Inc., are both located in nearby Charlotte, North Carolina.

66.     South Carolina is more convenient for potential witnesses. Because the Project and MBM are located in South Carolina, relevant employees are all located nearby.  The employees and Subcontractors would be potential witnesses in MBM's claims against the Debtor, and any claims of the Subcontractors against the Debtor.  Obviously, Rock Hill and County employees (and witnesses to the Debtor's transactions with those entities) are located in South Carolina. Because most of the potential witnesses are located in South Carolina or in the Charlotte area, presumably the expenses would be lower for them to appear in person in South Carolina rather than in Delaware.  *See In re Centennial Coal, Inc.*, 282 B.R. at 148 ("In light of the proximity of the parties to, and the ease of accessibility to the witnesses and documents in Kentucky, I find that it would be significantly burdensome and expensive for Defendants to litigate in Delaware.").

67.     The South Carolina court may also have more effective subpoena power.  The South Carolina court could subpoena any potential local area witnesses. Fed. R. Civ. P. 45(C)(1)(A) & (B) (100-mile rule); Fed. R. Bankr. P. 9016 (applying Fed. R. Civ. P. 45).  By contrast, it is inconceivable that any witnesses who would be subject to subpoena by a court in Delaware would not be subject to subpoena by a court in South Carolina.

68. For all of the foregoing reasons, the convenience factors weigh strongly in favor of transfer of the Bankruptcy Case to South Carolina. *See In re Centennial Coal, Inc.*, 282 B.R. at 146 (transferring a contract dispute when "not only did each of the events giving rise to the claims and defenses in this action take place in Kentucky, but also, the outcome of this proceeding will likely turn on evidence that will be more easily obtained and/or produced in Kentucky."); *In re Buffets Holdings, Inc.*, 397 B.R. at 728 ("In light of the parties' proximity to the witnesses and documents in Michigan, the Court finds that it would be significantly more burdensome and expensive for the Plaintiff (as well as the Defendants) to litigate in Delaware.").

- ***Factors 10-11: Public Policy, Familiarity with State Law, and Local Interests Favor Transfer to South Carolina.***

69. Not only is South Carolina a more convenient venue, transfer to South Carolina would also further public policy and the interests of justice. At its core, this entire Bankruptcy Case is a local South Carolina controversy. It involves substantial and unusual claims of local governmental units. The Debtor's purported inability to continue to maintain and fund the Project based upon Rock Hill's purported failure to issue public bonds was the stated reason the Debtor filed its bankruptcy petition. *See First Day Declaration,* D.I. 8, ¶¶ 29-38. The above-described disputes with the Project and Debtor, including but not limited to the disputes between the Debtor, its Affiliates, York County and Rock Hill, revolve around the various contracts between the parties – which contracts are all governed by the laws of South Carolina and involve governmental units in South Carolina.

70. The State of South Carolina has a clear interest in having South Carolina courts - which have a greater familiarity with South Carolina law - decide such local controversies. *See In re Centennial Coal, Inc.*, 282 B.R. at 148 ("A federal judge sitting in Kentucky is more likely to be familiar with the applicable state law issues than this Court and has a greater interest in deciding

issues which may affect Kentucky residents and/or the development of Kentucky common law.");

*In re Buffets Holdings, Inc.*, 397 B.R. at 730 (transferring a contract dispute because "a Michigan court indeed has a strong interest in resolution of the matter due to the potential impact upon Michigan residents and businesses, as well as the development of Michigan law").

71.     Indeed, as decisions by this Court have recognized, the local interest is at its zenith in cases like this one where "the future of the [property] is of primary importance to the community in which it resides." *In re Rehoboth Hosp., LP*, 2011 WL 5024267, at *4.   Both the suspension of construction at the Debtor's Project and the filing of this Case understandably have sparked community concern.   *See, e.g.,* https://www.wbtv.com/2022/04/20/panthers-decision-cut-ties-with-rock-hill-is-concerning-local-residents/.   *See, also*, https://www.fox46.com/nfl/carolina-panthers/rock-hill-responds-to-panthers-project-after-developers-filed-bankruptcy/; https://www.southcarolinapublicradio.org/sc-news/2022-06-02/panthers-rock-hill-deal-official-dead-following-bankruptcy-filing. South Carolina's strong interest in the litigation that could decide the fate of the Project location within its borders is undeniable.

### 3.     In Real Estate Cases Such as This One, Delaware Courts Have Transferred Venue to the Location of the Debtor's Real Estate Assets.

72.     Although not its only asset, the Practice Facility/HQ in South Carolina is, by far, the Debtor's principal asset.   In fact, the Practice Facility/HQ is the only asset of significance discussed in any detail in the First Day Declaration. *First Day Dec.,* D.I. 8, ¶¶ 6-22.   "In the context of what is essentially a single asset case, the location of the lone improved real estate asset is of particular concern to the Court, especially in the event of a potential liquidation." *In re Rehoboth Hosp., LP*, 2011 WL 5024267, at *5. Under such circumstances, "the case is 'better administered by a court in the district in which it is located.'" *Id.*

73.     Indeed, in similar cases, where the primary asset was real property located in another jurisdiction, Delaware courts have ordered transfer to the jurisdiction where the real property is located.   For instance, the court transferred the bankruptcies of two Delaware corporations to the Southern District of Florida because all assets were located at debtors' real property locations in Miami Beach.  *Matter of Ocean Properties of Delaware, Inc.*, 95 B.R. 304, 305 (Bankr. D. Del. 1988) (noting the "the proximity of the [Florida] court to interested parties as well as the location of assets, the economics of administering the estate and the relative economic harm to debtor and other interested parties").  Similarly, the court transferred a bankruptcy to Texas where the principle asset was real property in Texas. *In re Rehoboth,* 2011 WL 5024267, at *3-4 (finding that the "true day to day operational and managerial decisions for the [property] are conducted … in Texas").   *See also In re Qualteq, Inc.*, No. 11-12572 (KJC), 2012 WL 527669,at *3 (Bankr. D. Del. Feb. 16, 2012) (transferring action to Illinois where "82% of the Debtors' assets (including real and personal property)" were located and where "approximately 91%[ of the debtors' employees] work," while "[n]one of the Debtors' employees work in Delaware").  As one court has noted, "[i]n *virtually every single asset improved real estate* partnership case which we have seen, the court has transferred bankruptcy jurisdiction to the jurisdiction where the assets are located." *In re Midland Assocs.*, 121 B.R. 459, 461 (Bankr. E.D. Pa. 1990) (emphasis added) (quoting *In re Pavilion Place Assocs.*, 88 B.R. 32, 36 (Bankr. S.D.N.Y. 1988).

## V.    **CONCLUSION**

74.     The operative underlying facts of this case are indisputably and overwhelmingly centered in and around Rock Hill, South Carolina.  The scant and *de minimis* ties of the Debtor to Delaware are completely unrelated to Project, which is the Debtor's primary asset and the source and substance of all the known claims and disputes in this case.  There is no creditor, witness or

any other articulable and material reason that venue of this case should not be transferred to the United States Bankruptcy Court for the District of South Carolina.

      **WHEREFORE**, for the reasons discussed above, the Court should exercise its discretion and grant this motion to transfer venue to the United States Bankruptcy Court for the District of South Carolina, and grant such other and further relief as is just and necessary.

Dated: June 24, 2022  
Wilmington, Delaware

      */s/ Richard W. Riley*  
      **WHITEFORD, TAYLOR & PRESTON LLC**[6]  
      Richard W. Riley (DE No. 4052)  
      600 North King Street, Suite 300  
      Wilmington, Delaware 19801  
      Telephone:   (302) 353-4144  
      Facsimile:   (302) 661-7950  
      Email:       rriley@wtplaw.com

      -and-

      Michael J. Roeschenthaler, Esq.  
      Scott M. Hare, Esq.  
      Kenneth J. Lund, Esq.  
      **WHITEFORD TAYLOR & PRESTON L.L.P.**  
      200 First Avenue, Third Floor  
      Pittsburgh, PA 15222  
      Telephone:   (412) 618 - 5800  
      Facsimile:   (412) 275 - 2406  
      Email:       mroeschenthaler@wtplaw.com  
                 share@wtplaw.com  
                 klund@wtplaw.com

      *Counsel to Mascaro/Barton Malow, a Joint Venture*

---

[6] Whiteford, Taylor & Preston LLC operates as Whiteford Taylor & Preston L.L.P. in jurisdictions outside of Delaware.