# EXHIBIT 2

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| GT Real Estate Holdings, LLC | ) | Case No. 22-10505 (KBO) |
|  | ) |  |
| Debtor. | ) |  |
|  | ) | **Re: Docket Nos. 9, 53, 59** |

**FINAL ORDER PURSUANT TO SECTIONS 105, 361, 362, 363, 364, 503 AND 507 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002, 4001, 6004, AND 9014 (I) AUTHORIZING THE DEBTOR TO OBTAIN SECURED SUPERPRIORITY POSTPETITION FINANCING AND GRANT LIENS AND SUPERPRIORITY ADMINISTRATIVE CLAIMS, AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "***Motion***")[1] of the Debtor for entry of an order (this "***Order***"), pursuant to sections 105, 361, 362, 363, 364, 503 and 507 of title 11 of the United States Code (the "***Bankruptcy Code***"), and Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), and Rules 2002-1, 4001-2, 9006-1, and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure for the District of Delaware (the "***Local Rules***") (A) authorizing the Debtor to obtain secured superpriority postpetition financing and grant liens and superpriority administrative expense claims and (B) scheduling a final hearing, the Debtor sought, as more fully set out in the Motion, the following relief:

(i)      the Court's authorization, pursuant to Sections 363 and 364(c)(1), (2) and (3) of the Bankruptcy Code, for the DIP Borrower to (A) enter into a senior secured superpriority debtor-in-possession credit facility (the "***DIP Facility***"), pursuant to the Senior Secured Superpriority Debtor-in-Possession Credit Agreement attached to the Motion as <u>Exhibit 1</u> (as

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or the DIP Credit Agreement, as applicable.

amended, restated, supplemented or otherwise modified from time to time, the "*DIP Credit Agreement*" and, together with this order (the "*Final Order*"), the Interim Order (as defined below), and all other agreements, documents and instruments delivered or executed in connection therewith, as hereafter amended, restated, supplemented or otherwise modified from time to time collectively, the "*DIP Documents*") by and among the DIP Borrower and DT Sports Holding, LLC (the "*Prepetition Secured Lender*" and "*DIP Lender*"), and (B) obtain extensions of credit thereunder on a senior secured, junior secured and superpriority basis in an aggregate principal amount not to exceed $20,000,000, including new extensions of financing not to exceed $16,800,000, which amount shall be available in multiple draws as set forth in, and subject to the terms and conditions of, the DIP Credit Agreement (the "*New Money DIP Loans*");

(ii)    the Court's authorization for the Debtor to execute the DIP Credit Agreement and the other DIP Documents to which it is a party and to perform such other and further acts as may be necessary or appropriate in connection therewith;

(iii)    the Court's authorization for the Debtor to use DIP Extensions of Credit (as defined below) in accordance with the proposed budget prepared by the Debtor and annexed to the DIP Credit Agreement (as updated from time to time), and as otherwise provided herein and in the other DIP Documents;

(iv)    the Court's authorization to grant to the DIP Lender, in respect of the DIP Obligations (as defined below), a superpriority administrative claim pursuant to Section 364(c)(1) of the Bankruptcy Code, senior liens on and security interests in all unencumbered assets and property of the Debtor (now owned or hereafter acquired) pursuant to Section 364(c)(2) of the Bankruptcy Code, and junior liens on all assets and property of the Debtor subject to Permitted

2

Liens (as defined in the DIP Documents), pursuant to Section 364(c)(3) of the Bankruptcy Code, in each case as and to the extent set forth more fully below;

(v)    the Court's authorization of a roll-up loan facility (the "***Roll-Up DIP Facility***"), pursuant to which the DIP Lender shall be deemed to make a loan under the Roll-Up DIP Facility (such loan, the "***Roll-Up DIP Loan***" and, together with the New Money DIP Loans, the "***DIP Loans***" and together with all other financial accommodations and extensions of credit under the DIP Credit Agreement and the DIP Facility, the "***DIP Extensions of Credit***"), which Roll-Up DIP Loan shall be in an aggregate principal amount equal to the Debtor's outstanding obligations under the Subsequent Prepetition Secured Note (as defined below) and shall be deemed used to satisfy and discharge such obligations;

(vi)    the modification or waiver by the Court of the automatic stay imposed by Section 362 of the Bankruptcy Code and any other applicable stay (including Bankruptcy Rule 6004) to the extent necessary to implement and effectuate the terms and provisions of the DIP Facility, the Interim Order, this Final Order, and the other DIP Documents;

(vii)    approval of the Workers' Trust Escrow Arrangements;

(viii)    the scheduling by the Court of the Interim Hearing (as defined below) to consider entry of the Interim Order and a Final Hearing (as defined below) to consider entry this Final Order granting the relief requested in the Motion on a final basis and approving the form of notice with respect to the Final Hearing and the transactions contemplated by the Motion; and

(ix)    approval of the Interim Order and this Final Order.

The Court having considered the Motion, the terms of the DIP Facility and the DIP Documents, the *Declaration of Jonathan Hickman, Chief Restructuring Officer of the Debtor, in*

*Support of the Chapter 11 Petition and First Day Pleadings* [D.I. 8], the *Declaration of Jonathan Hickman in Support of the Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to Obtain Postpetition Financing, (II) Granting Liens and Super-Priority Claims, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [D.I. 10], the evidence submitted at the hearing held before this Court on June 6, 2022 to consider the Interim Order (the "***Interim Hearing***") and the evidence submitted at the hearing held before this Court on June 29, 2022 to consider entry of the Final Order (the "***Final Hearing***"); and the Court, after the Interim Hearing, having issued that certain *Interim Order Pursuant to Sections 105, 361, 362, 363, and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004, and 9014 (I) Authorizing the Debtors to Obtain Secured Superpriority Postpetition Financing and Grant Liens and Superpriority Administrative Claims, and (II) Granting Related Relief* [D.I. 53] (the "***Interim Order***"); and in accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d), and 9014 and 2002-1, 4001-2, 9006-1, and 9013-1 of the Local Rules, appropriate notice of the Motion, the Interim Hearing, and the Final Hearing having been given under the circumstances; and it appearing that approval of the relief requested in the Motion is fair and reasonable and in the best interests of the Debtor, its creditors and its estate, and essential for the continued operation of the Debtor's businesses; and all objections, if any, to the entry of this Final Order having been withdrawn, resolved or overruled by the Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[2]

A.    **Petition Date**.  On June 1, 2022 (the "*Petition Date*"), the Debtor filed its voluntary petition under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "*Court*").  The Debtor has continued in the management and operation of its business and property as debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Case.

B.    **Jurisdiction and Venue**.  The Court has jurisdiction over these proceedings, pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012 (Sleet, C.J.).  Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue for the Case and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    **Committee Formation.**  As of the date hereof, no official committee of unsecured creditors has been appointed in the Chapter 11 Case (any such committee, the "*Creditors' Committee*" and, together with any other statutory committee appointed in the Chapter 11 Case pursuant to Section 1102 of the Bankruptcy Code, a "*Committee*").

D.    **Interim Order**.  Following the Interim Hearing, the Court approved the Motion on an interim basis pursuant to the Interim Order.

E.    **Notice**.  The Debtor has represented that notice of the Final Hearing and the relief requested in the Motion has been provided by the Debtor, by telecopy, email, overnight courier and/or hand delivery, to (a) the Office of the United States Trustee for the District of Delaware

---

[2]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

(the "***U.S. Trustee***"); (b) the holders of the 20 largest unsecured claims against the Debtor; (c) the proposed DIP Lender; (d) the Construction Manager (as defined below); (e) the United States Attorney for the District of Delaware; (f) the state attorney general for South Carolina; (g) the Internal Revenue Service; (h) the United States Securities and Exchange Commission; (i) the City; (j) the County; (k) the South Carolina Department of Revenue; (l) all applicable banks and other financial institutions; (m) any such other party entitled to notice pursuant to Local Bankruptcy Rule 9013-1(m); and (n) any such other party entitled to receive notice pursuant to Bankruptcy Rule 2002 (the "***Notice Parties***").  Under the circumstances, such notice of the Final Hearing and the relief requested in the Motion is appropriate notice and complies with Section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(b) and (c), and 4001-2 of the Local Rules.

F.      **Debtor's Stipulations**.  After consultation with its attorneys and financial advisors, and without prejudice to the rights of parties-in-interest as set forth in paragraph 8(a) herein, the Debtor, on its behalf and on behalf of its estate, admits, stipulates, acknowledges, and agrees as follows:

(i)      *Necessary Approvals*.  No authorization or approval or other action by, and no notice to or filing with, any governmental authority or regulatory body, except for the Court, is required for the due execution, delivery and performance by the Debtor of the DIP Documents.

(ii)      *Prepetition Secured Notes*. As of the Petition Date, the DIP Borrower was indebted to the DIP Lender pursuant to that certain Amended and Restated Promissory Note and Guaranty (Secured by Real Property), dated as of May 26, 2022 (as amended, restated, supplemented, or otherwise modified from time to time) (the "***Prepetition Secured Note***") and  a second Promissory Note and Guarantee (Secured by Real Property), dated as of May 31, 2022 (the "***Subsequent Prepetition Secured Note***" and together with the Prepetition Secured Note the "***Prepetition***

*Secured Notes*," collectively with all other agreements, documents and instruments delivered or executed in connection therewith, each as may have been amended, restated, supplemented or otherwise modified from time to time through the Petition Date, the "***Prepetition Debt Documents***") between the Debtor and Prepetition Secured Lender, without objection, defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than $7,200,000 with respect to the principal amount of the Prepetition Secured Notes plus accrued (both before and after the Petition Date) and unpaid interest thereon.

(iii)    *Prepetition Liens*.  Pursuant to the Prepetition Debt Documents, as security for its obligations thereunder, the DIP Borrower pledged its membership interests in non-debtor Waterford Golf Club, LLC (the "***Prepetition Liens***" and such collateral, the "***Prepetition Collateral***").

(iv)    *Enforceability of the Subsequent Prepetition Secured Note*.  The Subsequent Prepetition Secured Note is (a) legal, valid, binding, and enforceable against the DIP Borrower, and (b) not subject to any contest, attack, objection, recoupment, defense, counterclaim, offset, subordination, re-characterization, avoidance or other claim, cause of action or other challenge of any kind or nature under the Bankruptcy Code, under applicable non bankruptcy law or otherwise.

(v)    *Enforceability of Prepetition Liens*.  After making due inquiry, the Prepetition Liens securing the Subsequent Prepetition Secured Note have been properly recorded and perfected under applicable non-bankruptcy law, and are legal, valid, enforceable, non-avoidable, and not subject to contest, avoidance, attack, offset, re-characterization, subordination or other challenge of any kind or nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise.  As of the Petition Date, the Debtor is not aware, after making due inquiry, of any liens or security interests having priority over the Prepetition Liens securing the Subsequent

Prepetition Secured Note.  The Prepetition Liens securing the Subsequent Prepetition Secured Note were granted to the Prepetition Secured Lender for fair consideration and reasonably equivalent value, and was granted contemporaneously with the making of the loans and/or commitments and other financial accommodations secured thereby.

(vi)    *Indemnity*.  The DIP Lender shall be and hereby is indemnified and held harmless by the Debtor in respect of any claim or liability incurred with respect to the DIP Facility or in any way related thereto except for claims relating to gross negligence and willful misconduct.  No exception or defense in contract, law or equity exists as to any obligation set forth, as the case may be, in this paragraph E(vi) or in the DIP Documents, to indemnify and/or hold harmless the DIP Lender, as the case may be, and any such defenses are hereby waived.

(vii)    *No Claims, Causes of Action*. As of the date hereof, there exist no claims or causes of action against the Prepetition Secured Lender with respect to, in connection with, related to, or arising from the Prepetition Debt Documents relating to the Subsequent Prepetition Secured Note and/or the DIP Documents that may be asserted by the Debtor or any other person or entity.

(viii)    *Cash Collateral*.    For purposes of this Final Order, the term "***Cash Collateral***" shall mean all cash and cash equivalents of the Debtor constituting DIP Collateral (as defined below), whenever or wherever acquired, and the proceeds of all DIP Collateral whether existing on the Petition Date, arising pursuant to this Final Order or otherwise and shall include, without limitation:

(a)    all cash proceeds arising from the collection, sale, lease or other disposition, use or conversion of any DIP Collateral, whether such property existed as of the commencement of this Chapter 11 Case or arose or was generated thereafter;

(b)    all of the deposits, refund claims and rights in retainers of the Debtor constituting DIP Collateral; and

(c)    the proceeds of any sale of DIP Collateral.

The Debtor's use of Cash Collateral shall be subject to the terms of this Final Order.

(ix)    *DIP Liens and Obligations*.  Until such time as all DIP Obligations are indefeasibly paid in full in cash, the Debtor shall not in any way prime or seek to prime (or otherwise cause to be subordinated in any way) the DIP Liens (as defined below) by offering a subsequent lender or any party-in-interest a superior or *pari passu* lien or claim pursuant to Section 364(d) of the Bankruptcy Code or otherwise, except with respect to (a) prior payment of the Carve-Out (as defined below) and (b) the Permitted  Liens.  Until such time as all DIP Obligations are indefeasibly paid in full in cash, the Debtor shall not in any way or at any time permit to exist an administrative expense claim against the Debtor of any kind or nature whatsoever, including, without limitation, claims for any administrative expenses of the kind specified in, or arising or; ordered under sections 105, 326, 328, 503(b), 506(c), 507(a), 507(b), 546(c), 726, 1113 and 1114 of the Bankruptcy Code, that is superior to or *pari passu* with the DIP Superpriority Claim (as defined below) provided herein, except with respect to prior payment of the Carve-Out.

(x)    *Release*.  The Debtor forever and irrevocably releases, discharges, and acquits (a) the DIP Lender, (b) the Prepetition Secured Lender, (c) Affiliates of the DIP Lender, and (d) officers, employees, directors, agents, representatives, owners, members, partners, financial and other advisors and consultants, legal advisors, shareholders, managers, consultants, accountants, attorneys, and predecessors and successors in interest of the DIP Lender and its Affiliates, each in their respective capacity as such, (collectively, the "***Releasees***") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued,

fixed, contingent, pending or threatened including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, arising out of, in connection with, or relating to the DIP Facility, the DIP Documents, and/or the Prepetition Debt Documents relating to the Subsequent Prepetition Secured Note including, without limitation, (x) any so-called "lender liability" or equitable subordination claims or defenses, (y) any and all claims and causes of action arising under the Bankruptcy Code, and (z) any and all claims and causes of action with respect to the validity, priority, perfection or avoidability of the liens or claims held by the Prepetition Secured Lender and DIP Lender, in their respective capacities as such.  The Debtor further agrees to pay the Prepetition Secured Note and the DIP Obligations actually incurred by the Debtor without setoff or deduction for any defense, claim or right of counterclaim which the Debtor now has or may claim to have against the Releasees arising out of, connected with, or relating to any and all acts, omissions or events occurring prior to the entry of the Final Order; provided that, for the avoidance of doubt, nothing in this paragraph shall be deemed or construed as a waiver or release of any claim or counterclaim of the Debtor against the Releasees not arising out of, in connection with, or relating to the DIP Facility, the DIP Documents, and/or the Prepetition Debt Documents relating to the Subsequent Prepetition Secured Note, which claims and counterclaims are hereby preserved.

       G.      **Need for Postpetition Financing**.  A need exists for the Debtor to obtain the DIP Facility in order to satisfy in full the costs and expenses of administering this Case and to preserve the value of its estate. The ability of the Debtor to preserve and maintain the value of the Debtor's assets and to maximize the return for all creditors requires the availability of the DIP Facility.  In the absence of the availability of funds and liquidity in accordance with the terms hereof, serious and irreparable harm to the Debtor, its estate, and creditors would occur.  Thus, the ability of the

Debtor to preserve and maintain the value of the assets and maximize the return for creditors requires the availability of capital from the DIP Facility and the use of Cash Collateral. Accordingly, sufficient cause exists for the entry of this Final Order.

H.    **No Credit Available on More Favorable Terms**.  The DIP Lender has agreed to extend credit solely on the terms set forth in this Final Order and the other DIP Documents. The Debtor has been unable to obtain unsecured credit allowable as an administrative expense under Section 503 of the Bankruptcy Code, or other sufficient financing under Sections 364(c) of the Bankruptcy Code, on more favorable terms than those set forth in this Final Order.  A loan facility in the amount provided under the DIP Documents is not available to the Debtor without granting the DIP Lender superpriority claims, liens, and security interests, pursuant to sections 364(c)(1), 364(c)(2), and 364(c)(3) of the Bankruptcy Code, as provided in the Interim Order, this Final Order, and the DIP Documents.  The terms and conditions of the DIP Documents are the result of arm's length negotiations between the DIP Borrower and the DIP Lender.

I.    **Extension of Financing**.  The DIP Lender has indicated a willingness to provide financing to the Debtor in accordance with the DIP Credit Agreement and the other DIP Documents and subject to (i) entry of this Final Order, (ii) the Milestones, and (iii) findings by this Court that such financing is essential to the Debtor's estate, that the DIP Lender is a good faith credit provider, and that the reversal or modification on appeal of the authorization hereunder for the Debtor to incur the debt under the DIP Facility, or the grant hereunder of the priority of the DIP Liens, does not affect the validity of such debt, or any priority of any such lien so granted, as provided in Section 364(e) of the Bankruptcy Code.

J.    **Fair Consideration and Reasonably Equivalent Value**.  The Debtor has received and will receive fair and reasonable consideration in exchange for access to the DIP Facility and

all other financial accommodations provided under the DIP Documents and this Final Order.  The terms of the DIP Documents are entirely fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties and are supported by reasonably equivalent value and fair consideration.

       K.       **Business Judgment and Good Faith Pursuant to Section 364(e)**.

       (i)       The extension of credit under the DIP Facility, and the fees paid and to be paid thereunder, are reasonable, and the best available under the circumstances, reflect the Debtor's exercise of prudent business judgment, are entirely fair, and are supported by reasonably equivalent value and consideration;

       (ii)       the DIP Facility was negotiated in good faith and at arm's length between the Debtor and the DIP Lender; and

       (iii)       the use of the proceeds to be extended under the DIP Facility will be so extended in good faith and for valid business purposes and uses, as a consequence of which the DIP Lender is entitled to the protection and benefits of Section 364(e) of the Bankruptcy Code.

       L.       **Relief Essential and in the Best Interest of the Estate**.  The relief requested in the Motion (and provided in the Interim Order and this Final Order) is necessary, essential and appropriate for the management and preservation of the Debtor's assets and property.  It is in the best interest of the Debtor's estate that the Debtor be allowed to enter into the DIP Facility, incur the DIP Obligations as contemplated herein.

       **NOW, THEREFORE**, on the Motion of the Debtor and the record before this Court with respect to the Motion, including the record made during the Interim Hearing and Final Hearing, and with the consent of the Debtor, the DIP Lender, and good and sufficient cause appearing therefor,

**IT IS ORDERED** that:

1.    **Motion Granted**.  The Motion is granted on a final basis in accordance with the terms and conditions set forth in this Final Order.  Any objections to the Motion with respect to entry of this Final Order, to the extent not withdrawn, waived or otherwise resolved are hereby denied and overruled.

2.    **DIP Facility**.

(a)    **DIP Obligations**.  The Debtor is expressly and immediately authorized and empowered to enter into the DIP Facility, and to incur and to perform the DIP Obligations including the DIP Obligations under the Roll-Up DIP Loan, in accordance with and subject to this Final Order and the other DIP Documents, to execute and/or deliver (to the extent not previously executed or delivered) all DIP Documents and all other related instruments, certificates, agreements and documents, and to take all actions which may be reasonably required or otherwise necessary for the performance by the Debtor under the DIP Facility, including (i) the creation and perfection of the DIP Liens described and provided for herein, and (ii) such acts as shall be necessary or desirable in order to effect the roll up and conversion of the Debtor's outstanding obligations under the Subsequent Prepetition Secured Note held by the DIP Lender as of the date hereof into Roll-Up DIP Loans.  The Debtor is hereby authorized to pay all principal, interest, fees and expenses, indemnities and other amounts described herein and in the other DIP Documents as such shall accrue and become due hereunder or thereunder, including, without limitation, the reasonable and documented fees and expenses of the attorneys and financial and other advisors and consultants of the DIP Lender as, and to the extent, provided for herein and in the DIP Documents (collectively, all loans (including the Roll-Up DIP Loan), advances, extensions of credit, financial accommodations, fees, expenses and other liabilities and obligations (including

indemnities and similar obligations) in respect of DIP Extensions of Credit, the DIP Facility and the DIP Documents, the "***DIP Obligations***"); <u>provided</u> that the payment of any invoices of the DIP Lender's professionals for fees and expenses shall be subject to the notice and objection provisions of paragraph 20(b) hereof. The DIP Documents and all DIP Obligations shall represent, constitute and evidence, as the case may be, valid and binding obligations of the Debtor, enforceable against the Debtor, its estate and any successors thereto in accordance with their terms. No obligation, payment, transfer or grant of security under the DIP Documents as approved under the Interim Order and this Final Order shall be stayed, restrained, voided, voidable or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law, or subject to any defense, reduction, setoff, recoupment or counterclaim.

(b)     **Authorization to Borrow.**  In order to continue to operate its business and preserve the value of its assets, subject to the terms and conditions of this Final Order and the other DIP Documents, the DIP Borrower is hereby authorized to borrow under the DIP Facility in accordance with the DIP Credit Agreement up to an aggregate principal amount of $20,000,000.

(c)     **Conditions Precedent**.  The DIP Lender shall have no obligation to make any DIP Extension of Credit or any other financial accommodation hereunder or under the other DIP Documents (and the Debtor shall not make any request therefor) unless all conditions precedent to making DIP Extensions of Credit under the DIP Documents have been satisfied or waived in accordance with the terms of the DIP Documents.

(d)     **DIP Collateral**.  As used herein, "***DIP Collateral***" shall mean all real and personal property of the DIP Borrower, including, without limitation: (a) all cash, money, cash equivalents, deposit accounts, securities accounts, accounts, other receivables, chattel paper, contract rights, goods and inventory (wherever located), instruments, documents, securities

(whether or not marketable) and investment property (including, without limitation, all of the issued and outstanding capital stock of each of its subsidiaries), furniture, fixtures, equipment, franchise rights, trade names, trademarks, servicemarks, copyrights, patents, intellectual property, general intangibles of any kind, rights to the payment of money (including, without limitation, tax refunds and any other extraordinary payments, supporting obligations, guarantees, letter of credit rights, commercial tort claims, causes of action and all substitutions, books and records related to the foregoing, and accessions, loan assets and shares of the Debtor, the equity interests owned by the Debtor, and proceeds (as defined in the Uniform Commercial Code ("**UCC**")) of the foregoing, wherever located, including insurance or other proceeds); (b) all owned real property, all leased real property, all rents and leases from any real property interests, and all other proceeds of real property; (c) the proceeds of any avoidance actions brought pursuant to sections 502(d), 544, 545, 547, 548, 549 (except as set forth in clause (d) below), 551, 553(b), 732(2) or 742(2) of the Bankruptcy Code unless such actions are brought against the DIP Lender or its Affiliates; (d) the proceeds of any avoidance actions brought pursuant to section 549 of the Bankruptcy Code to recover any postpetition transfer of the DIP Collateral or postpetition transfer of proceeds thereof, unless such action is brought against the DIP Lender or its Affiliates; and (e) the Debtor's rights under section 506(c) of the Bankruptcy Code and the proceeds thereof; provided that DIP Collateral shall not include (i) property that cannot be subject to liens pursuant to applicable law, rule, contract or regulation or restrictions of contract existing on the Closing Date or the time of entry of such contract (other than to the extent such restriction is ineffective under the UCC or other applicable law); (ii) avoidance actions brought pursuant to claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 551, 553(b), 732(2) or 742(2) of the Bankruptcy Code; and (iii) other excluded property as set forth in the DIP Documents. For the avoidance of doubt,

the DIP Collateral shall include all the foregoing rights, property, claims, and interests, without regard as to whether such rights, property, claims, and interests came into the Debtor's estate, or otherwise arose, after the Petition Date.

(e)    **Valid and Binding Obligations**. All DIP Obligations shall constitute valid, binding, and nonavoidable obligations of the Debtor, enforceable against it and each of its successors and assigns, in accordance with their terms and the terms of this Final Order, and no obligation, payment, transfer, or grant of a lien or security interest under the DIP Documents, the Interim Order, or this Final Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under section 502(d) of the Bankruptcy Code) or subject to any avoidance, reduction, set off, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity.

(f)    **Roll-Up DIP Loan**. Without prejudice to the rights of parties-in-interest as set forth in paragraph 8(a) herein, without any further action by the Debtor, the DIP Lender shall be deemed to make the Roll-Up DIP Loan in an aggregate principal amount equal to the Debtor's outstanding obligations under the Subsequent Prepetition Secured Note held by the DIP Lender as of the date hereof, which Roll-Up DIP Loan shall be used to satisfy and discharge such obligations pursuant to the terms and conditions of the DIP Credit Agreement. Such satisfaction and discharge are hereby authorized as compensation for, in consideration for, and solely on account of, the agreement of DIP Lender to fund the New Money DIP Loans and not as payments under, adequate protection for, or otherwise on account of, the Subsequent Prepetition Secured Note. The

Prepetition Lender would not be willing to provide the New Money DIP Loans without the inclusion of the Roll-Up DIP Loans in the DIP Obligations.

(g)    **DIP Liens**.  Subject and subordinate to the Carve-Out, as set forth more fully in the Interim Order, this Final Order and the other DIP Documents, the DIP Lender, immediately upon entry of the Interim Order, was granted and, upon entry of this Final Order, is granted on a final basis, the following security interests and liens, which were, upon entry of the Interim Order, and continue to be, upon entry of this Final Order, valid, binding, perfected, continuing, enforceable and non-avoidable (all liens and security interests granted to the DIP Lender pursuant to the Interim Order, this Final Order, and the other DIP Documents, the "***DIP Liens***"):

(I)    pursuant to section 364(c)(2) of the Bankruptcy Code, valid, binding, continuing, enforceable, fully perfected, and non-avoidable first priority senior security interests in and liens upon all DIP Collateral, whether existing on the Petition Date or thereafter acquired, that is not otherwise subject to (x) valid, enforceable, perfected and non-avoidable Permitted Liens (other than Permitted Mechanic's Liens),[3] that were in existence immediately prior to the Petition Date, and (y) Permitted Mechanic's Liens, subject and junior to the Carve-Out;

(II)    pursuant to section 364(c)(3) of the Bankruptcy Code, valid, binding, continuing, enforceable, fully perfected security interests and liens upon

---

[3]    "Permitted Mechanic's Liens" means liens that (x) comply in all respects with S.C. Code Ann. § 29-5-10, *et seq.* (the "***South Carolina Mechanic's Lien Law***") and (y) have not been dissolved pursuant to S.C. Code Ann. § 29-5-90; provided that any notice of such mechanic's lien required to prevent dissolution of a lien that otherwise complies with the South Carolina Mechanic's Lien Law shall be considered effective for timing purposes so long as it is filed and served within the ninety day period required under S.C. Code Ann. § 29-5-90, notwithstanding whether such Notice of Mechanic's Lien was filed before or after the Petition Date.

DIP Collateral encumbered by Permitted Liens, which security interests and liens shall be subject and subordinate to the Permitted Liens and the Carve-Out; and

(III)     the Debtor and the DIP Lender stipulate and agree that Permitted Mechanic's Liens are senior in priority to the DIP Liens and are not otherwise avoidable under any sections of the Bankruptcy Code, provided, however, for the avoidance of doubt, nothing herein shall limit the Debtor's rights, including audit rights, to reconcile and object to the amount of any particular Permitted Mechanic's Liens as part of the Chapter 11 Case.

(h)     **Effectiveness of DIP Liens**.   The DIP Liens were effective immediately upon the entry of the Interim Order and shall not at any time be made subject or subordinated to, or made *pari passu* with, any other lien, security interest or claim existing as of the Petition Date, or created under sections 363 or 364 of the Bankruptcy Code or otherwise, other than (i) Permitted Liens and (ii) prior payment of the Carve-Out.

(i)     **Superpriority Administrative Claim Status**.   The DIP Obligations shall, pursuant to section 364(c)(1) of the Bankruptcy Code, at all times constitute (without the need to file a proof of claim or to take any further action or file any further document or pleading with the Court or another court or governmental office) an allowed superpriority administrative expense claim (the "***DIP Superpriority Claim***") of the DIP Lender against the Debtor's estate with priority over any and all other obligations, liabilities, and indebtedness of the Debtor, whether now existing or hereafter arising or incurred, of any kind whatsoever, including any and all administrative expenses or other claims of the Debtor of the kind specified in or arising under sections 105, 326, 328, 330, 331, 503(b), 507, 546(c), 726, 1114, but shall in any event be subject and subordinate to the Carve-Out. The DIP Superpriority Claim granted in this paragraph shall be subject and

18

subordinate in priority of payment only to prior payment of the Carve-Out. Except as referenced in this Final Order, no other superpriority claims shall be granted or allowed in this Case or in any Successor Case(s) (as defined below). The DIP Superpriority Claim shall be senior in all respects to any other superpriority claims granted in this Case.

(j)     **DIP Proceeds Account**. Any and all DIP Extensions of Credit shall be deposited into one or more accounts of the Debtor designated for the purpose of holding loan proceeds of the DIP Facility (collectively, the "***DIP Proceeds Account***"). The DIP Lender shall hereby be granted a valid, enforceable, fully perfected and non-avoidable lien on the DIP Proceeds Account. Disbursements from the DIP Proceeds Account shall be made solely in accordance with this Final Order, the Cash Management Order (as defined below), and the other DIP Documents.

(k)     **Other Provisions Relating to the DIP Liens**. The DIP Liens shall secure all of the DIP Obligations. The DIP Liens shall be valid and enforceable against any trustee appointed in the Chapter 11 Case, upon the conversion of this Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (such case or proceeding, a "***Successor Case***"), and/or upon the dismissal of the Chapter 11 Case. The DIP Liens shall not be subject to Sections 510, 549, 550 or 551 of the Bankruptcy Code or the "equities of the case" exception of Section 552 of the Bankruptcy Code or Section 506(c) of the Bankruptcy Code. If the granting of the DIP Liens against any of the DIP Collateral are in any way prohibited or restricted under any of the Debtor's organizational documents, such organizational documents are hereby modified solely to permit the granting of the DIP Liens.

(l)     **Workers' Trust Escrow Arrangements**. The Workers' Trust Escrow Arrangements are approved, and the Debtor is expressly authorized to take all actions contemplated under the DIP Documents to perform its obligations under the Workers' Trust

19

Escrow Arrangements.  Neither the Workers' Trust Contribution nor the Workers' Trust Escrow Account are property of Debtor's estate (as defined in section 541 of the Bankruptcy Code), and the Debtor's Professionals (as defined herein) shall be reimbursed for their portion of the Workers' Trust Expenses from the Workers' Trust Escrow Account without any further leave from the Court, including, for the avoidance of doubt, any requirement to file a fee application with the Court. Mascaro/Barton Malow, a Joint Venture (the "***Construction Manager***"), in its capacity as Construction Manager, when requested (email shall suffice) by Jonathan Hickman, in his capacity as Chief Restructuring Officer (the "***CRO***") or any person that the CRO may designate on behalf of the Debtor, is hereby authorized and directed to receive, process, honor, and pay any and all checks, drafts, and other forms of payment (including fund transfers) to facilitate the payment of the Workers' Trust Distributions to the Workers' Trust Beneficiaries; *provided* that the Construction Manager shall not have any liability to any party for relying in good faith on such direction by the Debtor.  Each subcontractor that employed or contracted with a Workers' Trust Beneficiary is hereby authorized and directed to receive, process, honor, and pay any and all checks, drafts, and other forms of payment (including fund transfers) to facilitate the payment of the Workers' Trust Distributions to the Workers' Trust Beneficiaries; *provided* that no such subcontractor shall have any liability to any party for assisting in the administration of the Workers' Trust Distributions.  Workers' Trust Distributions are not and shall not be considered distributions with respect to any claim (as defined in section 101 of the Bankruptcy Code) against the Debtor's estate or against any third-party, and such distributions shall not be subject to setoff or reduction other than ordinary course deductions for applicable taxes and benefits or for garnishments or other deductions required by law.  Except as otherwise provided in the DIP Documents, any balance that remains in the Workers' Trust Escrow Account following the

completion of all Workers' Trust Distributions and payment of all Workers' Trust Expenses shall revert to the Debtor and be deemed a Borrowing under the DIP Facility.

3.     **Authorization and Approval to Use Proceeds of DIP Facility**.  Subject to the terms and conditions of this Final Order and the other DIP Documents, the Debtor is authorized to request and use proceeds of the DIP Extensions of Credit in accordance with the DIP Documents or as otherwise ordered by the Court.  Notwithstanding anything herein to the contrary, subject only to the Debtor's rights under paragraph 17(b) hereof and the Carve-Out, the Debtor's right to request or use proceeds of DIP Extensions of Credit or to use Cash Collateral shall terminate on the Termination Date (as defined below).  Nothing in this Final Order shall authorize the disposition of any assets of the Debtor or its estate or proceeds resulting therefrom outside the ordinary course of business, except as permitted herein (subject to any required Court approval).

4.     **Milestones and Credit Bid Protection**.  The DIP Lender has represented that the Debtor's compliance with the Milestones is an essential element of the DIP Facility and that it would not have agreed to make the New Money DIP Loans without the Milestones.[4]  Further, subject to any Successful Challenge, the DIP Lender shall have, subject to Section 363(k) of the Bankruptcy Code, the unqualified right to credit bid (x) up to the full amount of the DIP Obligations, and (y) the DIP Superpriority Claim without the need for further Court order authorizing the same, in connection with any sale of any of the DIP Collateral, whether such sale is effectuated through Section 363 or Section 1129 of the Bankruptcy Code, by a chapter 7 trustee under Section 725 of the Bankruptcy Code, or otherwise.  Moreover, nothing in this Final Order

---

[4]     Certain Milestones were amended following entry of the Interim Order, including the following: (i) Milestone 5(b)(iii) now requires that on or before September 15, 2022, the Debtor shall have filed with the Bankruptcy Court an Acceptable Plan; (ii) the "Outside Plan Confirmation Date" now means November 30, 2022, and (iii) the "Outside Plan Effective Date" now means December 31, 2022.

shall alter the DIP Lender's right to credit bid, under Section 363(k) of the Bankruptcy Code, all amounts owed under the Prepetition Secured Notes but without prejudice to the rights of parties-in-interest as set forth in paragraph 8(a).

5.      **Monitoring of Collateral**.  The DIP Lender, and its consultants and advisors, shall be given reasonable access to the Debtor's books, records, assets and properties for purposes of monitoring the Debtor's businesses and the value of the DIP Collateral, and shall be permitted to conduct, at its discretion and at the Debtor's cost and expense, field audits, collateral examinations and inventory appraisals in respect of the DIP Collateral.

6.      **Financial Reporting**.  The Debtor shall provide the DIP Lender with the monthly financial reporting given to the U.S. Trustee and all of the financial reporting as required under and in all instances consistent with the DIP Documents.

7.      **DIP Lien Perfection**.  The Interim Order and/or this Final Order shall be sufficient and conclusive evidence of the validity, perfection and priority of the DIP Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect the DIP Liens or to entitle the DIP Liens to the priorities granted herein.  Notwithstanding the foregoing, the DIP Lender may, in its sole discretion, file such financing statements, deeds of trust, mortgages, security agreements, notices of liens and other similar documents, and is hereby granted relief from the automatic stay of Section 362 of the Bankruptcy Code in order to do so, and all such financing statements, deeds of trust, mortgages, security agreements, notices and other agreements or documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the Chapter 11 Case.  The Debtor shall take any action requested by the DIP Lender, including executing and

delivering to the DIP Lender all such financing statements, mortgages, security agreements, notices and other documents as the DIP Lender may request, to evidence, confirm, validate or perfect, or to insure the contemplated priority of the DIP Liens.  The DIP Lender, in its sole discretion, may file a photocopy of this Final Order and/or the Interim Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which the Debtor has real or personal property.  To the extent that the Prepetition Secured Lender is the secured party under any account control agreements, listed as loss payee under any of the Debtor's insurance policies or is the secured party under any Prepetition Debt Document, the DIP Lender is also hereby deemed to be the secured party under such account control agreements, loss payee under the Debtor's insurance policies and the secured party under each such Prepetition Debt Document, and shall have all rights and powers attendant to that position (including, without limitation, rights of enforcement) and shall act in that capacity and distribute any proceeds recovered or received in accordance with the terms of this Final Order and the other DIP Documents.

8.    **Reservation of Certain Third Party Rights and Bar of Challenges and Claims**.

(a)    All of the stipulations in paragraph F hereof (the "***Claims Stipulations***") shall be irrevocably binding on all persons and entities upon the Challenge Period Termination Date (as defined below).  Nothing in this Final Order shall prejudice any rights any party in interest may have (a) to object to or challenge any of the Claims Stipulations, including in relation to (i) the validity, extent, perfection or priority of the Prepetition Liens on the Prepetition Collateral, or (ii) the validity, allowability, priority, status or amount of the Prepetition Secured Notes, or (b) to bring suit against the Prepetition Secured Lender in connection with or related to the matters covered by the Claims Stipulations; <u>provided</u> that, unless any party with standing to do so

commences an adversary proceeding or contested matter (as applicable) raising such objection or challenge, including without limitation any claim against the Prepetition Secured Lender in the nature of a setoff, counterclaim or defense to the Prepetition Secured Notes (including but not limited to, those under Sections 544, 547, 548, 549, 550 and/or 552 of the Bankruptcy Code or by way of suit against any of the Prepetition Secured Parties) (each such proceeding or appropriate pleading commencing a proceeding or other contested matter, a "*Challenge*"), by the date that is seventy-five (75) calendar days following entry of the Interim Order (the period described in the immediately preceding clause shall be referred to as the "*Challenge Period*" and the date that is the next calendar day after the termination of the Challenge Period shall be referred to as the "*Challenge Period Termination Date*"), upon the Challenge Period Termination Date, any and all such challenges and objections by any Committee, any chapter 11 or chapter 7 trustee appointed herein or in any Successor Case, and any other party in interest shall be deemed to be forever waived and barred, and the Prepetition Secured Note shall be deemed to be an allowed secured claim within the meaning of Sections 506 and 502 of the Bankruptcy Code for all purposes in connection with the Chapter 11 Case, and the Claims Stipulations shall be binding on all creditors, interest holders and parties in interest.  Notwithstanding the foregoing, if a chapter 11 trustee is appointed in the Chapter 11 Case or if the Chapter 11 Case is converted to chapter 7 prior to the expiration of the Challenge Period, the chapter 11 or chapter 7 trustee, as applicable, shall have until the later of (i) the expiry of the Challenge Period, (ii) thirty (30) days following the appointment of the chapter 11 trustee or the conversion of such Chapter 11 Case, as applicable, and (iii) such date as otherwise ordered by the Court, to commence a Challenge.  For the avoidance of doubt, any chapter 7 trustee appointed or elected in this Chapter 11 Case shall, until the expiration of the Challenge Period, and thereafter for the duration of any adversary proceeding or

24

contested matter commenced pursuant to this paragraph  (whether commenced by such trustee or commenced by any other party in interest on behalf of the Debtor's estate), be deemed to be a party other than the Debtor and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgments, admissions, confirmations and stipulations of the Debtor in this Final Order.  To the extent any objection or complaint is filed prior to the Challenge Period Termination Date, the Claims Stipulations shall nonetheless remain binding and preclusive except to the extent expressly challenged in such objection or complaint.  Upon a successful Challenge as against any party, the Court may fashion an appropriate remedy.  All remedies or defenses of any party with respect to any Challenge are hereby preserved.  Nothing herein shall limit the Committee's or any other party in interest's ability to (x) file a motion in respect of any timely Challenge for which it cannot obtain standing as a matter of law because the Debtor is a limited liability company (an "***LLC Challenge Motion***"), and (y) seek pursuant to such LLC Challenge Motion a mechanism by which to prosecute such Challenge.  Upon request of a party in interest, the Debtor agrees to make available to such party in interest copies of the Prepetition Debt within three days of receiving such a request.

(b)      No portion of the Carve-Out, no proceeds of the DIP Facility, the DIP Collateral or DIP Extensions of Credit, and no proceeds of the Prepetition Collateral may be used for the payment of the fees and expenses of any person incurred (i) in investigating, challenging, or in relation to the challenge of, any of the Prepetition Liens, Prepetition Secured Notes, DIP Liens, or DIP Obligations (or the value of the Prepetition Collateral or the DIP Collateral), or the initiation or prosecution of any claim or action against the Prepetition Lender or DIP Lender, including, without limitation, any claim under Chapter 5 of the Bankruptcy Code, or any state, local or foreign law, in respect of the Prepetition Secured Notes or the DIP Obligations, or in

preventing, hindering or delaying the realization by the DIP Lender upon any DIP Collateral or the enforcement of its rights under the Interim Order, this Final Order, or any other DIP Document, (ii) in requesting authorization, or supporting any request for authorization, to obtain non-consensual use of Cash Collateral or any postpetition financing (whether equity or debt) or other financial accommodations pursuant to Section 364(c) or (d) of the Bankruptcy Code, or otherwise, other than (x) from the DIP Lender or (y) if such financing is sufficient to indefeasibly pay and satisfy all DIP Obligations in full in cash and such financing is immediately so used or (iii) in connection with any claims or causes of actions against the Releasees, including formal or informal discovery proceedings in anticipation thereof, and/or in challenging any Prepetition Secured Notes, DIP Obligations, Prepetition Liens, or DIP Liens; provided that, if a Creditors' Committee is appointed, the Creditors' Committee may investigate any potential challenges with respect to the Prepetition Secured Notes, Prepetition Debt Documents, and Prepetition Liens during the Challenge Period at an aggregate expense for such investigation (but not litigation, prosecution, objection, or challenge thereto) not to exceed, in the aggregate, an amount to be agreed by the Creditors' Committee, the Debtor, and the DIP Lender and, if no such agreement is reached, all rights for further relief with respect to such investigation budget are reserved.

9. **<u>Carve-Out.</u>**

(a)      As used in this Final Order, the "***Carve-Out***" means the sum of: (i) all fees required to be paid to the Clerk of the Court and all statutory fees payable to the U.S. Trustee under Section 1930(a) of title 28 of the United States Code, together with the statutory rate of interest (without regard to the Post-Carve-Out Trigger Notice Cap (as defined below)); (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under Section 726(b) of the Bankruptcy Code; (c) to the extent allowed at any time (including after the Carve-Out Trigger Date (as defined

26

below)), whether by interim order, compensation or procedural order, or otherwise, all unpaid fees and expenses (the "*Allowed Professional Fees*") incurred or accrued by persons or firms retained by the Debtor pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "*Debtor Professionals*") and the Committee (who's such professionals, the "*Committee Professionals*" and, together with the Debtor Professionals the "*Professionals*") that are incurred on or prior to the Carve-Out Trigger Date; and (iv) the Allowed Professional Fees of the Professionals incurred on and after the first business day following the Carve-Out Trigger Date in an aggregate amount not to exceed $1,000,000 (the amounts set forth in this clause (iv) being the "*Post-Carve-Out Trigger Notice Cap*"); <u>provided</u> that the Post-Carve-Out Trigger Notice Cap shall be reduced, dollar-for-dollar, by the amount of any fees and expenses incurred and accruing by the Debtor and paid to the applicable Professionals following delivery of the Carve-Out Trigger Notice (as defined below); <u>provided</u> <u>further</u> that the Post-Carve-Out Trigger Notice Cap shall be reduced, dollar for dollar, by the amount of any prepetition retainers received by any Professional and not previously applied to fees and expenses of such Professional.  For the avoidance of doubt and notwithstanding anything to the contrary contained in the Interim Order, this Final Order, or the Prepetition Debt Documents, the Carve-Out shall be senior to the DIP Liens, the DIP Superpriority Claim, and the Prepetition Liens.

(b)    For purposes of the foregoing, "*Carve-Out Trigger Notice*" shall mean a written notice filed on the docket of the Bankruptcy Case and delivered by electronic mail (or other electronic means) by the DIP Lender to the Debtor, its lead restructuring counsel, counsel to Masaco/Barton Malow, A Joint Venture ("*MBM*"), the U.S. Trustee and lead counsel to any Committee, if any, of the occurrence and continuation of an Event of Default or the termination of funding under the DIP Facility, stating that the Post-Carve-Out Trigger Notice Cap has been

invoked. "***Carve-Out Trigger Date***" shall mean the date on which the DIP Lender provides the Carve-Out Trigger Notice.

(c)      After the Carve-Out Trigger Date, the DIP Lender shall permit usage of the DIP Facility to fund no greater than the full amount of the Carve-Out, including the Post-Carve-Out Trigger Notice Cap, into a segregated account (the "***Carve-Out Reserve Account***") held by the Debtor, to be applied to the Allowed Professional Fees and the fees of the U.S. Trustee and Clerk of the Court when due and payable (the "***Carve-Out Segregated Funds***").  Without in any way limiting the Debtor's ability to use the Carve-Out Segregated Funds in the Carve-Out Reserve Account to pay the Allowed Professional Fees and the fees of the U.S. Trustee and Clerk of the Court, the Carve-Out Segregated Funds shall remain encumbered by and subject to the DIP Liens. To the extent the Carve-Out Segregated Funds in the Carve-Out Reserve Account exceed the Allowed Professional Fees and the fees of the U.S. Trustee and Clerk of the Court, any such remaining amounts shall be promptly returned to the DIP Lender.

10.      **Payment of Compensation**.  Nothing herein shall be construed as a consent to the allowance of any professional fees or expenses of the Debtor or any Committee or shall limit or otherwise affect the right of the DIP Lender to object to the allowance and payment of any such fees and expenses.  No professional fees shall be paid absent a Court order allowing such payment, pursuant to a fee application on notice, or other procedure permitted by any Court order allowing interim compensation or the payment of fees of ordinary course professionals.  So long as no Event of Default exists that has not been waived in writing, the Debtor shall be permitted to pay compensation and reimbursement of expenses allowed by the Court and payable under Sections 330 and 331 of the Bankruptcy Code or compensation procedures approved by the Court

and in form and substance reasonably acceptable to the Debtor and the DIP Lender, as the same

may be due and payable, and the same shall not reduce the Post-Carve-Out Trigger Notice Cap.

11.     **Section 506(c) Claims**.  Effective upon the Challenge Period Termination Date, as

a further condition of the DIP Facility, and any obligation of the DIP Lender to make DIP

Extensions of Credit, the Debtor (and any successors thereto or any representatives thereof,

including any trustees appointed in the Chapter 11 Case or any Successor Case) shall be deemed

to have waived any rights, benefits or causes of action under Section 506(c) of the Bankruptcy

Code as they may relate to or be asserted against the DIP Lender, the DIP Liens, the DIP Collateral,

the Prepetition Secured Lender, the Prepetition Liens or the Prepetition Collateral.  Save and

except for the Carve-Out, nothing contained in the Interim Order, this Final Order or in the other

DIP Documents shall be deemed a consent by the DIP Lender to any charge, lien, assessment or

claim against, or in respect of, the DIP Collateral under Section 506(c) of the Bankruptcy Code or

otherwise.

12.     **Collateral Rights; Limitations in Respect of Subsequent Court Orders**.

Without limiting any other provisions of this Final Order, unless the DIP Lender has provided its

prior written consent, it shall be an Event of Default under the DIP Facility for there to be entered

in this Chapter 11 Case, or in any Successor Case, any order which authorizes (i) the obtaining of

credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest

or other lien on all or any portion of the DIP Collateral and/or entitled to priority administrative

status which is superior to or *pari passu* with those granted pursuant to the Interim Order and/or

this Final Order to or for the benefit of the DIP Lender, or (ii) the use of Cash Collateral for any

purpose other than as set forth in this Final Order and the DIP Documents.

13.     **Proceeds of Subsequent Financing**. Without limiting the provisions and protections of paragraph 12 hereof, if at any time prior to the indefeasible repayment and satisfaction in full in cash of all DIP Obligations and the termination of the DIP Lender's obligations to make DIP Extensions of Credit, including subsequent to the confirmation of any Chapter 11 plan (the "*Plan*") with respect to the Debtor, the Debtor's estate, any trustee, any examiner with enlarged powers or any responsible officer subsequently appointed, shall obtain credit or incur debt in violation of the Interim Order, this Final Order, or the other DIP Documents, then the first cash proceeds derived from such credit or debt and all Cash Collateral in the amount necessary to satisfy all DIP Obligations then outstanding shall immediately be turned over to the DIP Lender for the indefeasible repayment and satisfaction in full in cash of all DIP Obligations then outstanding.

14.     **Cash Management**.  Any DIP Extensions of Credit or other proceeds of the DIP Facility may only be held in deposit accounts that are deposit accounts over which the DIP Lender is deemed to have "control" (unless otherwise expressly authorized under the DIP Credit Agreement), in accordance with the DIP Credit Agreement, and shall be disbursed in accordance with the terms and conditions set forth in the DIP Credit Agreement.  The Debtor's cash management system shall at all times be maintained (i) in accordance with the terms of the DIP Documents and any order of this Court approving the maintenance of the Debtor's bank account and cash management system (the "*Cash Management Order*"), and (ii) in a manner which in any event shall be reasonably satisfactory to the DIP Lender.  The Debtor shall not transfer any funds (including, without limitation, any proceeds of DIP Collateral or any Cash Collateral) to any of the Debtor's non-Debtor affiliates, during the Chapter 11 Case except in accordance with the DIP Documents and the terms and conditions of the Cash Management Order.  The DIP Lender shall

be deemed to have "control" over all cash management accounts for all purposes of perfection under the UCC.  Absent the occurrence of an Event of Default, all amounts collected in the cash collection accounts may be used in accordance with this Final Order and the other DIP Documents; after the occurrence and during the continuance of an Event of Default, subject only to the funding of the Carve-Out and the Debtor's rights under paragraph 17(b) hereof, all such amounts shall be applied in accordance with paragraph 18(b) hereof.

15.    **Disposition of DIP Collateral**.  The Debtor shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral, except as permitted by the DIP Documents or as approved by the Court.

16.    **Survival of Certain Provisions**.  In the event of the entry of any order converting this Case into a Successor Case, the DIP Liens, the DIP Superpriority Claim, and the Carve-Out shall continue in these proceedings and in any Successor Case, and such DIP Liens, DIP Superpriority Claim, and Carve-Out shall remain enforceable and, as applicable, maintain their respective priorities as provided by this Final Order.

17.    **Events of Default; Rights and Remedies upon Event of Default**.

(a)    Any automatic stay otherwise applicable to the DIP Lender is hereby modified so that, upon and after the occurrence of the Termination Date, the DIP Lender shall, subject to subparagraph (b) of this paragraph 17, be immediately entitled to exercise all of its rights and remedies in respect of the DIP Collateral and the Prepetition Collateral, in accordance with this Final Order and the other DIP Documents, as applicable.  The term "***Termination Date***" shall mean: the earliest to occur of: (i) the Maturity Date, (ii) substantial consummation (as defined in section 1101 of the Bankruptcy Code and which for purposes hereof shall be no later than the "effective date" thereof) of a plan of reorganization or liquidation filed in the Case that is

confirmed pursuant to an order entered by the Court, (iii) the acceleration of the loans and the termination of all Commitments in accordance with the terms of the DIP Documents, and (iv) this Final Order ceasing to be in full force and effect for any reason.

(b)     Notwithstanding the foregoing subparagraph (a) of this paragraph 17, immediately following the giving of notice filed on the docket of the Bankruptcy Case and by the DIP Lender to the Debtor, counsel to the Debtor, counsel to MBM, counsel to any party in interest that seeks to or does assert a Challenge, counsel for any Committee and the U.S. Trustee of the occurrence of an Event of Default: (i) all Commitments of the DIP Lender to provide any DIP Extensions of Credit shall immediately be suspended; (ii) the Debtor shall have no right to request or use any proceeds of any DIP Extensions of Credit or DIP Collateral, or to use Cash Collateral; provided that, during the Default Notice Period (as defined below), the Debtor shall be permitted to continue to use Cash Collateral and the proceeds of the DIP Facility solely in the ordinary course of business and towards the satisfaction of the DIP Obligations and the Carve-Out, as provided in the applicable DIP Documents and this Final Order, and to take the actions set forth in the following clause (v); (iii) on or after five (5) business days following delivery of such notice (such 5-business day period, the "*Default Notice Period*"), unless such Event of Default is cured within such time, the DIP Lender shall have relief from the automatic stay to exercise remedies under the DIP Documents; (iv) the Debtor shall deliver and cause the delivery of the proceeds of the DIP Extensions of Credits and the DIP Collateral to the DIP Lender as provided herein and in the DIP Documents subject to the funding of the Carve-Out; and (v) the Debtor and any Committee shall be entitled to an emergency hearing before this Court during the Default Notice Period to challenge the lifting of the automatic stay.  If the Debtor or any Committee or any other party in interest does not contest the occurrence of the Event of Default within the Default Notice Period, or if there is

a timely contest of the occurrence of an Event of Default and the Court after notice and a hearing declines to stay the enforcement thereof, the Termination Date shall be deemed to have occurred for all purposes and the automatic stay, as to the DIP Lender and Prepetition Secured Lender, shall automatically terminate in all respects.

(c)    Upon the occurrence of the Termination Date (but subject, only in the case of the occurrence of the Termination Date resulting from an Event of Default, to the provisions of paragraph 17(b) hereof), the DIP Lender and Prepetition Secured Lender are authorized to exercise all remedies and proceed under or pursuant to the applicable DIP Documents and the Prepetition Debt Documents.  All proceeds realized in connection with the exercise of the rights and remedies of the applicable DIP Lender and Prepetition Secured Lender shall be turned over and applied in accordance with paragraph 18(b) hereof.

(d)    The automatic stay imposed under Section 362(a) of the Bankruptcy Code is hereby modified pursuant to the terms of the DIP Documents as necessary to (i) permit the Debtor to grant the DIP Liens and to incur all DIP Obligations and all liabilities and obligations under the other DIP Documents, as the case may be, and (ii) authorize the DIP Lender to retain and apply payments, and otherwise enforce its rights and remedies hereunder, subject to the provisions of paragraph 17(b) hereof.

(e)    Nothing included herein shall prejudice, impair or otherwise affect the DIP Lender's rights to seek any other or supplemental relief in respect of the Debtor.

18.    **Applications of Proceeds of Collateral, Payments and Collections**.

(a)    As a condition to the DIP Extensions of Credit and the authorization to use Cash Collateral, the Debtor has agreed that proceeds of any DIP Collateral and Prepetition Collateral, any amounts held on account of the DIP Collateral and Prepetition Collateral, and all

payments and collections received by the Debtor with respect to all proceeds of DIP Collateral and Prepetition Collateral, shall be used and applied in accordance with the DIP Documents (including repayment and reduction of the DIP Obligations) and this Final Order.

(b)     Subject to the prior payment of Permitted Mechanic's Liens solely with respect to Collateral subject to a junior lien of the DIP Lender, the Debtor's rights under paragraph 17(b) hereof, and the funding of the Carve-Out, if applicable, upon and after the occurrence of the Termination Date, (i) all proceeds of DIP Collateral, whenever received, shall be paid and applied as follows: *first*, to permanently and indefeasibly repay and reduce the DIP Obligations then due and owing in accordance with the DIP Documents, until paid and satisfied in full in cash; and *second*, to the Debtor's estate; and (ii) all proceeds of Prepetition Collateral, whenever received, shall be paid and applied as follows: *first*, to permanently and indefeasibly repay and reduce any and all amounts then due and owing under the Prepetition Secured Note; *second*, to permanently and indefeasibly repay and reduce any DIP Obligations then due and owing in accordance with the DIP Documents, until paid and satisfied in full in cash; and *third*, to the Debtor's estate.  For avoidance of doubt, nothing in this Final Order shall be construed to limit the voluntary and mandatory repayment provisions set forth in the DIP Documents.

19.     **Proofs of Claim, etc**.  The DIP Lender shall not be required to file proofs of claim in the Chapter 11 Case or any Successor Case for any claim described herein.

20.     **Other Rights and Obligations**.

(a)     **Good Faith under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Final Order**.  Based on the findings set forth in this Final Order and in accordance with Section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facility as approved by the Interim Order and/or this Final Order, the reversal or modification on appeal

of the authorization hereunder for the Debtor to obtain the DIP Facility, or the grant hereunder of

the DIP Liens, shall not affect the validity of such debt or the priority of such liens.

(b)    **Expenses**.    To the fullest extent provided in the DIP Documents, the

Prepetition Debt Documents, and this Final Order, the Debtor will pay all expenses incurred by

the DIP Lender in its capacity as DIP Lender (including, without limitation, the reasonable fees

and disbursements of its counsel, any other local counsel that they shall retain and any internal or

third-party appraisers, consultants, financial, restructuring or other advisors and auditors advising

any such counsel) in connection with (i) the preparation, execution, delivery, funding and

administration of the DIP Documents, including, without limitation, all due diligence fees and

expenses incurred or sustained in connection with the DIP Documents, (ii) the administration of

the Prepetition Debt Documents, (iii) the Chapter 11 Case or any Successor Case, or (iv)

enforcement of any rights or remedies under the DIP Documents or the Prepetition Debt

Documents.  Notwithstanding any other provisions of the Interim Order and/or this Final Order,

the DIP Lender, and its advisors and professionals, shall not be required to comply with the U.S.

Trustee fee guidelines, but shall provide reasonably detailed statements (redacted if necessary for

privileged, confidential or otherwise sensitive information, as to those statements provided to any

party other than the U.S. Trustee) for fees and expenses incurred after entry of the Interim Order

to the Office of the U.S. Trustee, counsel for MBM, counsel for any Committee, the Debtor, and

filed on the docket of the Bankruptcy Case.  Thereafter, within ten (10) calendar days of

presentment of such statements, if no written objections to the reasonableness of the fees and

expenses charged in any such invoice (or portion thereof) is made, the Debtor shall pay in cash all

such fees and expenses of the DIP Lender, and its advisors and professionals.  Any objection to

the payment of such fees or expenses shall be made only on the basis of "reasonableness," and

shall specify in writing the amount of the contested fees and expenses and the detailed basis for such objection. To the extent an objection only contests a portion of an invoice, the undisputed portion thereof shall be promptly paid. If any such objection to payment of an invoice (or any portion thereof) is not otherwise resolved between the objecting party and the issuer of the invoice, either party may submit such dispute to the Court for a determination as to the reasonableness of the relevant disputed fees and expenses set forth in the invoice. This Court shall resolve any dispute as to the reasonableness of any fees and expenses.

(c)    **Binding Effect**. The provisions of this Final Order shall be binding upon and inure to the benefit of the DIP Lender, the Debtor, and their respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtor or with respect to the property of the Debtor's estate) whether in this Chapter 11 Case, in any Successor Case, or upon dismissal of any such chapter 11 or chapter 7 case.

(d)    **No Waiver**. The failure of the DIP Lender to seek relief or otherwise exercise its rights and remedies under this Final Order, the other DIP Documents, the Prepetition Debt Documents, or otherwise, as applicable, shall not constitute a waiver of any of the DIP Lender's rights hereunder, thereunder or otherwise. Notwithstanding anything herein, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair any of the rights, claims, privileges, objections, defenses or remedies of the DIP Lender under the Bankruptcy Code or under non-bankruptcy law against any other person or entity in any court, including without limitation, the rights of the DIP Lender to: (i) to request conversion of any of the Case to a case under Chapter 7, dismissal of the Case, or the appointment of a trustee in the Case, or (ii) to propose, subject to the provisions of Section 1121 of the Bankruptcy Code, a Plan.

36

(e)    **No Third Party Rights**.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, third party or incidental beneficiary.

(f)    **No Marshaling**.  The DIP Lender shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral, as applicable.

(g)    **Section 552(b)**.  The DIP Lender shall be entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under Section 552(b) of the Bankruptcy Code shall not apply to the DIP Lender with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral or the DIP Collateral.

(h)    **Amendment**.  The Debtor and the DIP Lender may amend, modify, supplement or waive any provision of the DIP Documents without further approval of the Court, unless such amendment, modification, supplement or waiver (w) increases the interest rate (other than as a result of the imposition of the default rate) or fees charged in connection with the DIP Facility, (x) increases the commitments of the DIP Lenders to make DIP Extensions of Credit under the DIP Documents, (y) changes the Termination Date or (z) otherwise is materially adverse to the interests of the Debtor or its estate; provided that any amendment, modification, or supplement of the DIP Documents that does not require Court approval shall, within five (5) business days, be filed with the Court and served on the office of the U.S. Trustee, counsel to MBM, and any Committee.  No waiver, modification or amendment of any of the provisions hereof shall be effective unless set forth in writing, signed by, or on behalf of, the Debtor and the DIP Lender and approved by the Court after notice to parties in interest.

(i)      **Priority of Terms**.  To the extent of any conflict between or among (a) the express terms or provisions of any of the DIP Documents, the Motion, any other order of this Court, or any other agreements, on the one hand, and (b) the terms and provisions of this Final Order, on the other hand, unless such term or provision herein is phrased in terms of "defined in" or "as set forth in" the DIP Credit Agreement, the terms and provisions of this Final Order shall govern.

(j)      **Survival of Final Order**.  The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (i) confirming any Plan in the Case, (ii) converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, (iii) to the extent authorized by applicable law, dismissing the Chapter 11 Case, (iv) withdrawing of the reference of the Chapter 11 Case from this Court or (v) providing for abstention from handling or retaining of jurisdiction of the Chapter 11 Case in this Court.  The terms and provisions of the Interim Order, this Final Order, and the DIP Documents, including the DIP Liens and DIP Superpriority Claim granted pursuant to this Final Order and the DIP Documents, and any priorities and protections granted to or for the benefit of the DIP Lender hereunder and thereunder, shall continue in full force and effect to the fullest extent provided by Section 364(e) of the Bankruptcy Code.

(k)      **Enforceability**.  This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.

(l)      **Waiver of any Applicable Stay**.  Any applicable stay (including, without limitation, under Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this Final Order.

(m)    **<u>Retention of Jurisdiction</u>**.   The Court has and will retain jurisdiction to enforce this Final Order according to its terms.

_____
**Hon. Karen B. Owens**
**United States Bankruptcy Judge**
