**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| GT Real Estate Holdings, LLC, | ) Case No. 22-10505 (KBO) |
| | ) |
| Debtor.[1] | ) **Hearing Date: July 22, 2022 at 9:30 a.m. (ET)** |
| | ) **Objection Deadline: July 12, 2022** |
| | ) **Reply Deadline: July 18, 2022 at 4:00 p.m. (ET)** |
| | ) |
| | ) **Re: Docket No. 112** |

## DEBTOR'S OBJECTION TO MOTION OF MASCARO/BARTON MALOW, A JOINT VENTURE, TO TRANSFER VENUE TO THE BANKRUPTCY COURT FOR THE DISTRICT OF SOUTH CAROLINA

---

[1] The Debtor and the last four digits of its taxpayer identification number are: GT Real Estate Holdings, LLC (9589). The location of the Debtor's principal office is 800 South Mint Street, Charlotte, NC 28202.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT _____ 1

RELEVANT FACTS _____ 2

OBJECTION _____ 8

I. There is No Dispute that Venue in Delaware is Proper _____ 8

II. The Debtor's Choice of Forum is Entitled to Substantial Weight and
Should Not be Disturbed_____ 9

III. The Convenience of the Parties Will Be Enhanced if Venue is Maintained
in Delaware _____ 12

 A. Application of the *CORCO* Factors Weighs Against Transfer_____ 13

  1. The Economic Administration of the Estate_____ 13

  2. The Location of the Debtor's Assets _____ 16

  3. The Proximity of Creditors _____ 18

  4. The Proximity of the Debtor and Witnesses Necessary to
the Administration of the Estate _____ 21

  5. The Necessity for Ancillary Administration if Liquidation
Should Result _____ 24

 B. To the Extent Relevant, the *Jumara* Factors Also Weigh Against
Transfer_____ 24

IV. The Interest of Justice is Not Served by Transferring Venue_____ 29

ii

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Am. Institutional Partners v. Fairstar Res., Ltd.*,
　2011 WL 1230074 (D. Del. Mar. 31, 2011) ...........................................................27

*Greater Yellowstone Coal. v. Bosworth*,
　180 F. Supp. 2d 124 (D.D.C. 2001) .......................................................................30

*Hechinger Liquidation Tr. v. Fox (In re Hechinger Inv. Co. of Del.)*,
　296 B.R. 323 (Bank. D. Del. 2003) ...............................................................13, 27

*In re Alcorn Corp.*,
　2012 WL 2974889 (Bankr. E.D. Pa. July 20, 2012)..................................13, 28, 29

*In re Banning Lewis Ranch Co.*,
　No. 10-13445 (KJC) (Bankr. D. Del. Mar. 15, 2011)..............................................17

*In re Caesars Entm't Operating Co.*,
　2015 Bankr. LEXIS 314 (Bankr. D. Del. Feb. 2, 2015) .........................................12

*In re Carey Limousine, L.A., Inc.*,
　No. 12-12664 (BLS) (Bankr. D. Del. Dec. 19, 2012)..............................................20

*In re Caribbean Petroleum Corp.*,
　No. 10-12553 (KG) (Bankr. D. Del. Sept. 17, 2010)...............................................17

*In re Commonwealth Oil Ref. Co. (Puerto Rico v. Commonwealth Oil Ref. Co.)*,
　596 F.2d 1239 (5th Cir. 1979), *cert. denied*, 444 U.S. 1045 (1980)............................... passim

*In re Denham Homes, LLC*,
　2010 Bankr. LEXIS 1127 (Bankr. N.D. Ill. Apr. 12, 2010) .......................10, 12, 17

*In re Enron Corp.*,
　274 B.R. 327 (Bankr. S.D.N.Y. 2002)............................................................ passim

*In re Enron Corp.*,
　284 B.R. 376 (Bankr. S.D.N.Y. 2002)............................................................ passim

*In re Fairfield P.R., Inc.*,
　333 F. Supp. 1187 (D. Del. 1971).....................................................................17, 24

*In re Garden Manor Assocs., L.P.*,
　99 B.R. 551 (Bankr. S.D.N.Y.1988).................................................................10, 17

AMERICAS 115565601

*In re Hechinger Inv. Co. of Del.*,
    288 B.R. 398 (Bankr. D. Del. 2003) ............................................................................9

*In re Indus. Pollution Control, Inc.*,
    137 B.R. 176 (Bankr. W.D. Pa. 1992) .......................................................................13

*In re Innovative Commc'n Co.*,
    358 B.R. 120 (Bankr. D. Del. 2006) ......................................................................9, 12

*In re LaGuardia Assocs., L.P.*,
    316 B.R. 832 (Bankr. E.D. Pa. 2004) ............................................................... passim

*In re Midland Assocs.*,
    121 B.R. 459 (Bankr. E.D. Pa. 1990) .......................................................................16

*In re NWL Holdings, Inc.*,
    2011 WL 767777 (Bankr. D. Del. Feb. 24, 2011) .....................................................25

*In re Ocean Props. of Del., Inc.*,
    95 B.R. 304 (Bankr. D. Del. 1988) ........................................................................9, 16

*In re Oklahoma City Associates*,
    98 B.R. 194 (Bankr. E.D. Pa. 1989) .........................................................................11

*In re ONCO Inv. Co.*,
    320 B.R. 577 (Bankr. D. Del. 2005) ....................................................................15, 26

*In re Pavilion Place Assocs.*,
    88 B.R. 32 (Bankr. S.D.N.Y. 1988) ..........................................................................16

*In re Peachtree Lane Associates, Ltd.*,
    150 F.3d 788 (7th Cir. 1998) ........................................................................11, 16, 17

*In re Portjeff Dev. Corp.*,
    118 B.R. 184 (Bankr. E.D.N.Y. 1990).......................................................................30

*In re PWS Holding Corp.*,
    1998 Bankr. LEXIS 549 (Bankr. D. Del. Apr. 28, 1998) .............................9, 10, 29

*In re Qualteq, Inc.*,
    2012 WL 527669 (Bankr. D. Del. Feb. 16, 2012) .....................................................16

*In re Rehoboth Hosp., LP*,
    2011 Bankr. LEXIS 3992 (Bankr. D. Del. Oct. 19, 2011) .................................11, 16

*In re Rests. Acquisition I, LLC*,
    2016 Bankr. LEXIS 684 (Bankr. D. Del. Mar. 4, 2016).........................................9, 12

iv

*In re Safety-Kleen Corp.*,
No. 00-2303 (PJW) (Bankr. D. Del. July 19, 2000) ...............................................23

*In re Strouse Greenberg Props. VI Ltd. P'ship*,
1990 WL 19803 (Bankr. E.D. Pa. Mar. 2, 1990) ....................................................29

*In re Trico Steel Co.*,
261 B.R. 915 (Bankr. N.D. Ohio 2001) ..................................................................23

*In re Visteon Corp.*,
2011 Bankr. LEXIS 4008 (Bankr. D. Del. Oct. 21, 2011) ..............................25, 26

*In re Walston AirBusiness, Inc.*,
26 B.R. 955 (Bankr. N.D. Ill. 1983) .......................................................................20

*In re Wardman Hotel Owner, L.L.C.*,
No. 21-10023 (JTD) (Bankr. D. Del. Feb. 16, 2021)...................................... passim

*Intel Corp. v. Broadcom Corp.*,
167 F. Supp. 2d 692 (D. Del. 2001)........................................................................10

*Jumara v. State Farm Ins. Co.*,
55 F.3d 873 (3d Cir. 1995).......................................................................................13

*OCB Rest. Co. v. Vlahakis (In re Buffets Holdings, Inc.)*,
397 B.R. 725 (Bankr. D. Del. 2008) .......................................................................11

*Son v. Coal Equity, Inc. (In re Centennial Coal, Inc.)*,
282 B.R. 140 (Bankr. D. Del. 2002) .......................................................................11

*Waste Distillation Tech., Inc., v. Pan Am. Res., Inc.*,
775 F. Supp. 759 (D. Del. 1991).............................................................................10

*York County v. Appaloosa Management, LP*,
2022-CP-4601756 (S.C. 16th Jud. Cir. Ct. June 9, 2022)..........................................8

*York County v. Appaloosa Management, LP et al.*,
No. 0:22-cv-02167-CMC (D.S.C. July 7, 2022).......................................................8

v

## STATUTES AND OTHER AUTHORITY

28 U.S.C. § 1404(a) ....................................................................................................................13

28 U.S.C. § 1408...........................................................................................................................8

28 U.S.C. § 1408(1) ......................................................................................................................9

28 U.S.C. § 1412.................................................................................................................9, 12, 13

AMERICAS 115565601

GT Real Estate Holdings, LLC, the debtor and debtor in possession (the "***Debtor***") in the above-captioned chapter 11 case respectfully submits this objection (this "***Objection***") in response to the *Motion of Mascaro/Barton Malow, a Joint Venture, to Transfer Venue to the Bankruptcy Court for the District of South Carolina* [D.I. 112] (the "***Motion***").  In support of this Objection, the Debtor relies upon and incorporates by reference the *Declaration of Jonathan Hickman, Chief Restructuring Officer of the Debtor, in Support of the Debtor's Objection to Motion of Mascaro/Barton Malow, a Joint Venture, to Transfer Venue to the Bankruptcy Court for the District of South Carolina* [D.I. 8] (the "***Hickman Declaration***") filed contemporaneously herewith, and respectfully states as follows:[2]

## PRELIMINARY STATEMENT

1.      Mascaro/Barton Malow, a Joint Venture ("***MBM***") seeks to uproot the Debtor's chapter 11 case here in the United Stated Bankruptcy Court for the District of Delaware (this "***Court***") and transfer venue to the United States Bankruptcy Court for the District of South Carolina (the "***South Carolina Court***").  The Motion seems a transparent collateral attack on the Debtor's postpetition financing (the "***DIP Financing***") in pursuit of MBM's agenda to drive the Debtor into chapter 7 liquidation.[3]  MBM has identified no reason to substitute its judgment for the Debtor's decision to seek relief under chapter 11 in this Court.

2.      *First*, as a Delaware limited liability company, the Debtor is entitled to have its chapter 11 case administered in this Court, and its decision to file in this Court is entitled to substantial weight and deference.  *Second*, MBM has failed to demonstrate that the South Carolina

---

[2]     In further support of this Objection, the Debtor relies upon and incorporates by reference the Declaration of Jonathan Hickman, Chief Restructuring Officer of the Debtor, in Support of the Chapter 11 Petition and First Day Pleadings [D.I. 8] (the "**First Day Declaration**").  Capitalized terms used but not defined herein have the meanings given to them in the Motion.

[3]     *See* June 30, 2022 Hr'g Tr. at 50:25-51:1 [D.I. 169] (Mr. Roeschenthaler: "I'd rather see this in Chapter 7.").

Court is a more convenient or just venue than this Court for this case.  MBM, which is the Debtor's largest unaffiliated creditor and representative of a varied and dispersed set of subcontractors, itself has a principal place of business in Pittsburgh, PA, and is represented by a law firm with *three* offices in Delaware and not a single office in South Carolina.[4]  Further, MBM ignores the state of the world post-COVID where the traditional proximity factors carry less weight.  *Third*, MBM has not made – and cannot make – a showing that a transfer of venue will improve the Debtor's chances for an efficient, value-maximizing disposition or reorganization of the Debtor's assets. Transferring venue to the South Carolina Court would cause significant disruption and delay and put the Debtor's DIP Financing at risk, all to the ultimate detriment of MBM and the Debtor's other creditors.  *Finally*, the Motion is not for convenience or in the interest of justice.  MBM evidently believes that the South Carolina Court would be more receptive to its desire to abandon pursuit of value-maximizing transactions in favor of a chapter 7 liquidation and value destructive litigation.  MBM's forum shopping, however, is not a proper basis for transferring venue.  For these and the other reasons set forth herein, the Court should deny the Motion.[5]

### **RELEVANT FACTS**[6]

3.    In the Motion, MBM presents a skewed version of the facts without any evidentiary support in the record and based largely on unfounded assumptions and speculation.  The following facts correct and complete the record, and support denial of the Motion.

---

[4]    Counsel to MBM, Whiteford, Taylor & Preston LLC and Whiteford Taylor & Preston L.L.P. (collectively, "***Whiteford***"), maintains offices in Maryland, Kentucky, Delaware, Virginia, New York, Pennsylvania, and Washington, D.C.  *See* wtplaw.com/offices.  Mr. Roeschenthaler is a resident in Whiteford's Pittsburgh office.  [*See* D.I. 45].

[5]    Certain parties in interest filed joinders to the Motion, but none independently moved to transfer venue.  [*See* D.I.s 123, 132, 133, 134, 138, 139, 142, 146, 147, 157, 161, 162, 174, 178, 188, 194, 195].  Insofar as any party seeks to construe their joinder as an independent motion, their requests should be denied for the same reasons set forth herein.  The DIP Lender (as defined below) and certain of the Debtor's other affiliates have indicated to the Debtor that they oppose the Motion.

[6]    The Debtor notes that many allegations in the Motion have nothing to do with the venue analysis and instead appear directed towards the narrative that MBM is trying to build around alter ego and related theories.  The Debtor takes no position at this time as to the viability of any such claims and reserves all rights with respect to such allegations and any such claims.

2

4.     The Debtor was created to own and develop a mixed-use, pedestrian-friendly community, sports, and entertainment venue, that would also include a new headquarters and practice facility for the Carolina Panthers, a National Football League team, situated on a 234-acre site (the "***Project***") located in Rock Hill, South Carolina (the "***City***" or "***Rock Hill***") in York County (the "***County***").  (Hickman Decl. ¶7.)  The Debtor suspended further construction on the Project in March 2022.  (*Id.*)  After terminating and rescinding certain contracts relating to the Project, on June 1, 2022 (the "***Petition Date***"), the Debtor, through its independent managers, elected to file for relief under chapter 11 of the Bankruptcy Code in this Court.  (*Id.*)

5.     The Debtor is a limited liability company formed under the laws of Delaware.[7]  The Debtor is wholly owned by DT Sports Holding, LLC (the "***Member***"), another limited liability company formed under the laws of Delaware, which, in turn, is wholly owned by Tepper Sports Holding, Inc. (the "***Ultimate Parent***"), a Delaware corporation.  (*Id.* ¶8.)  The principal place of business of the Debtor, the Member, and the Ultimate Parent is located at 800 S. Mint Street in Charlotte, North Carolina.  (*Id.*)  The Debtor has always been managed by officers and managers residing in various jurisdictions, only *one* of which resides in South Carolina.[8]  (*Id.*)  All of the Debtor's books and records are located at the Debtor's North Carolina address.  *See Statement of Financial Affairs for GT Real Estate Holdings, LLC (Case No. 22-10505)* [D.I. 182] (collectively, the "***Statements***") Question 26.[9]

---

[7]     *See* Hickman Decl., Ex. A.

[8]     MBM erroneously claims that "the Debtor has never had . . . , until very recently, a management team," Motion ¶16, and that directives relating to the Project have largely come from representatives of the Carolina Panthers, *see id.* ¶16, 23.  In fact, the vast majority of the Debtor's officers have served in their positions since December 9, 2019, *see* Hickman Decl., Exs. B, C, and D, and these officers provided the directives relating to the Project.  (Hickman Decl. n.6.)

[9]     MBM claims that "all of the Debtor's records are located at the Project site in South Carolina and, to a lesser degree, at Panther's Stadium, . . ."  Motion ¶35.  MBM is incorrect.  Although there is nothing in the record to confirm the location of *MBM's* books and records related to the Project site are located in South Carolina, *see id.* ¶37, *the Debtor's* own books and records are maintained at the Debtor's principal place of business in North Carolina.  Statements Question 26.

3

6.      The Project site is the Debtor's primary asset.  (Hickman Decl. ¶9.)  In addition, the Debtor also wholly owns two limited liability companies formed under the laws of Delaware – Waterford Golf Club, LLC and Waterford Golf Club 1, LLC (collectively, the "***Waterford Entities***") – that in turn own and operate a golf course located in Rock Hill.  (*Id.*)  The Debtor also maintains a commercial checking account (the "***Bank Account***") with a balance of just over $1 million.  *See Schedules of Assets and Liabilities for GT Real Estate Holdings, LLC (Case No. 22-10505)* [D.I. 183] (collectively, the "***Schedules***") Question 23.  The bank address for the Bank Account is located in Newark, Delaware.  [*See* D.I. 3-3].[10]

7.      The Debtor has no employees.  (Hickman Decl. ¶10.)  Instead, the Debtor engaged MBM to serve as the construction manager and general contractor for the Project on March 31, 2020 pursuant to a Construction Management Agreement (the "***CMA***").[11]  (*Id.*)  MBM is a joint venture with a principal place of business in Pittsburgh, PA.[12]  Upon information and belief, MBM has additional projects, all of which are located in Pennsylvania.[13]  MBM is represented by counsel located in Pennsylvania and Delaware.  [*See* D.I. 45].  MBM is the Debtor's largest unaffiliated creditor, with a claim it alleges is in excess of $80 million.  *See* Motion ¶¶33, 57.[14]  Upon information and belief, all amounts paid to MBM have been made by or on behalf of the Debtor by checks with a North Carolina address on them, and all invoices and other letters received from

---

[10]    The Debtor's assets also included claims related to various contracts between the Debtor and the City in an undetermined amount.  *See* Schedules Question 24.

[11]    Hickman Decl., Ex. E, CMA.

[12]    The CMA lists MBM's address as 1720 Metropolitan Street, Pittsburgh, PA 15233.  Hickman Decl., Ex. E, CMA pg. 1.

[13]    *See, e.g.*, https://www.unitedarchitectural.com/portfolio-posts/upmc-mercy-vision-and-rehabilitation-hospital-pittsburgh-pa/ (listing MBM as the construction manager for the UPMC Mercy Vision and Rehabilitation Hospital in Pittsburgh, PA); https://www.nicholsonconstruction.com/news/nicholson-installing-soil-nail-walls-for-the-university-of-pittsburghs-new-recreation-and-wellness-center (discussing MBM's involvement as part of the construction for a recreation center for the University of Pittsburgh).

[14]    The Debtor reserves all rights with respect to the validity, extent and value of MBM's purported claims and any liens it believes it has.

AMERICAS 115565601

MBM have been addressed to an officer of the Debtor at its principal place of business in North Carolina. (Hickman Decl. ¶10.) When the Debtor suspended construction on the Project, it did so pursuant to letters addressed to MBM at its Pennsylvania address, with attention to Mr. John West, the MBM executive overseeing the Project.[15] (*Id.*)

8.      Substantially all vendors for the Project are subcontractors of MBM, and have no contractual privity with the Debtor.[16] (*Id.* ¶11.) Under applicable nonbankruptcy law, these subcontractors may be entitled to assert mechanic's liens and, to date, 26 vendors (including MBM and several subcontractors) have sent notice to the Debtor asserting mechanic's liens. (*Id.*) Of those vendors, 22 are located outside of South Carolina. (*Id.*)

9.      The Debtor is represented by White & Case LLP through attorneys located in Florida, Illinois, Massachusetts, and New York; Farnan LLP through attorneys located in Delaware; and Alvarez & Marsal North America, LLC ("*A&M*") through professionals located in Georgia, Illinois, Maryland, North Carolina, and Pennsylvania. (*Id.* ¶12.) The Debtor is currently in discussions with various real estate professionals in New York, North Carolina, South Carolina, and Texas to assist it in evaluating the recapitalization or disposition of the Debtor's assets. (*Id.*)

10.      The largest prepetition claim (in the amount of $163.5 million) against the Debtor is held by Panthers Football, LLC (the "***Panthers Football***"), a Delaware limited liability company, with its principal place of business in North Carolina. (*Id.* ¶13.)

11.      On July 1, 2022, this Court entered an order [D.I. 171] (the "***DIP Order***") approving on a final basis the debtor in possession financing facility (the "***DIP Facility***") made available to the Debtor by the Member (in such capacity, the "***DIP Lender***"). The DIP Lender is represented

---

[15]    *See, e.g.*, Hickman Decl., Ex. F.

[16]    *See* Schedule G (listing the Debtor's executory contracts, none of which includes the subcontractors); Motion ¶14 (noting that "MBM . . . engag[ed] numerous first-tier subcontractors (who, in many cases, engaged second-tier subcontractors").

5

by counsel located in Delaware and Florida.  [D.I.s 6, 7].  The credit agreement (the "***DIP Credit Agreement***") governing the DIP Facility is governed by New York law, and specifies that all judicial proceedings relating to the DIP Facility shall be brought in *this Court*.[17]  [*See* D.I. 9-2].  Further, the case milestones in the DIP Credit Agreement specifically contemplate the filing of a chapter 11 plan in *this Court* and the entry of a confirmation order by *this Court*.  *See* DIP Order n.4.  Neither of these milestones would be achievable if venue of the chapter 11 case were transferred.  The provisions of the DIP Credit Agreement may not be amended except pursuant to a writing executed by the Debtor and the DIP Lender.[18]  The DIP Credit Agreement provides for an event of default that will occur if this Court or any other court amends the DIP Credit Agreement without the DIP Lender's consent.[19]

12.    The Debtor identified seventeen non-insider unsecured creditors on Official Form 204 annexed to its petition (the "***Top 20 List***"), none of which are located in South Carolina except for the City (in its capacity as a utility provider) and the County.  [D.I. 1].[20]

13.    On July 7, 2022, the Debtor filed its Schedules and Statements of financial affairs [*see* D.I.s 182, 183], and a meeting of creditors pursuant to section 341 of the Bankruptcy Code took place virtually on July 8, 2020.[21]  [*See* D.I. 187].

14.    Substantial proceedings have already occurred before this Court, including two

---

[17]    DIP Credit Agreement §8(g), *Recitals* (defining "Bankruptcy Court" as "the United States Bankruptcy Court for the District of Delaware").  The Member also advanced $7.2 million to the Debtor in April and May 2022 pursuant to certain promissory notes (the "***Prepetition Promissory Notes***"), which are also governed by New York law.  (Hickman Decl. ¶14.)  The Prepetition Promissory Notes are secured by certain assets of the Debtor, including the membership interests in the Waterford Entities.  (*Id.*)  The Member's security interests in the equity of the Waterford Entities was perfected through the filing of financing statements with the Delaware Secretary of State, the location of the Debtor.  *See* Hickman Decl., Ex. G.

[18]    DIP Credit Agreement §§6(h), 8(e), 8(i).  The DIP Credit Agreement is binding and enforceable pursuant to the terms of the DIP Order.  As of the date of this Objection, no party has lodged a notice of an appeal of the DIP Order.

[19]    DIP Credit Agreement §6(h).

[20]    The claims of the County (as well as claims of the City other than its claims in its capacity as a utility provider) are disputed.

[21]    The locations of the Debtor's creditors based on the Schedules is discussed in Section III.A.3 below.

6

hearings, one evidentiary, both of which were conducted virtually.  [*See* D.I.s 55, 168, 169].  On information and belief, the Debtor's Chief Restructuring Officer (the "*CRO*"), Jonathan Hickman (videoconferencing in from North Carolina), was cross examined by counsel for MBM videoconferencing in from Pennsylvania, counsel for the City videoconferencing in from Texas, and counsel for the County videoconferencing in from Pennsylvania.  (Hickman Decl. ¶15.)  The Debtor expects that majority of proceedings before this Court during the course of this case will continue to be conducted virtually.[22]  In contrast, all hearings before the South Carolina Court are presumptively required to take place in person.[23]

15.    The Debtor's professionals have already invested significant time and administrative expense and effort managing the Debtor's estate before this Court.  (*Id.* ¶16.)  As of the date of this Objection, the Debtor has filed a substantial number of pleadings in this case.  (*Id.*)  This Court has already considered and granted approximately thirteen motions on an interim and final basis (excluding motions for admission *pro hac vice*), including the motion to approve the DIP Facility, and the Court is familiar with the facts and circumstances of the Debtor.  (*Id.*)

16.    On June 27, 2022, this Court entered an order establishing bar dates [D.I. 131] (the "*Bar Date Order*").  The Bar Date Order approved a proof of claim form specifying this Court as presiding over this case, and forms of mailing and publication notices providing instructions for parties in interest to register their claims in this case before this Court.  The Debtor's claims agent served the approved form of notice of the Bar Date on July 8, 2022 [*see* D.I. 185].

---

[22]    The Honorable Karen B. Owens, United States Bankruptcy Court for the District of Delaware, *Phase 2 Procedures and General Reminders (dated February 9, 2021)* (the "*Judge Owens Chambers Phase 2 Procedures*") (stating that "[i]n-person hearings shall be minimized and limited to critical cases only").

[23]    *See Operating Order 22-01* from the United States Bankruptcy Court for the District of South Carolina, dated March 21, 2022 (Burris, C.J.) ("Court hearings before a bankruptcy judge will be held in person unless otherwise indicated.") (attached hereto as *Exhibit A*).

17.     On June 9, 2022, the County asserted claims against certain affiliates of the Debtor in South Carolina state court.  *See York County v. Appaloosa Management, LP*, 2022-CP-4601756 (S.C. 16th Jud. Cir. Ct. June 9, 2022) (the "**York County Action**").[24]  Those affiliates have removed that action from state court to the United States District Court for the District of South Carolina, and the affiliates have indicated their intention to file a motion to transfer that action to this Court.[25]

18.     The Debtor has been diligently prosecuting this chapter 11 case in accordance with the well-established and time-tested protocols observed in Delaware.  The DIP Credit Agreement requires that a chapter 11 plan be filed in this Court by September 15, 2022, confirmed no later than November 30, 2022 by entry of a confirmation order by this Court, and consummated by December 31, 2022.  *See* DIP Order n.4.  The Debtor is pursuing a value maximizing recapitalization or disposition of its assets in keeping with this timeline, and will seek to confirm a chapter 11 plan in due course.  (Hickman Decl. ¶17.)  These matters will be subject to review under the substantive provisions of the Bankruptcy Code.

## <u>OBJECTION</u>[26]

### I.     There is No Dispute that Venue in Delaware is Proper

19.     The Debtor is a limited liability company formed under the laws of Delaware as of June 5, 2019.[27]  Accordingly, venue of this chapter 11 case in Delaware is proper under 28 U.S.C.

---

[24]   Although the County appears to believe it has claims against the Debtor, the Debtor disputes the validity and extent of any such claims because the contracts governing the relationship between the Debtor and County give the County no right to payment (or equitable rights that can be reduced to money) against the Debtor.  The City has asserted no claims against the Debtor, and the Debtor would dispute the validity and extent of any such claims for reasons similar to those upon which it disputes any alleged claims of the County.  Such claims would properly be adjudicated as core proceedings in the claims allowance process provided for under the federal bankruptcy laws.

[25]   *See* Notice of Removal by Defendants Appaloosa Management, LP; DT Sports Holding, LLC; and Tepper Sports Holding, Inc., *York County v. Appaloosa Management, LP et al.*, No. 0:22-cv-02167-CMC (D.S.C. July 7, 2022) [D.I. 1] (the "**York County Action Notice of Removal**") (attached hereto as ***Exhibit B***).

[26]   To the extent that MBM raises any new arguments in its reply or at the hearing on the Motion that were not set forth in the Motion, the Debtor reserves the right to amend, modify, or supplement this Objection in response to such new arguments.

[27]   *See supra* n.7.

8

§ 1408. *See In re Innovative Commc'n Co.*, 358 B.R. 120, 125 (Bankr. D. Del. 2006) ("Venue is appropriate in the state of incorporation, 28 U.S.C. § 1408(1), so venue is proper in Delaware[.]"). MBM does not dispute that venue is proper in Delaware. *See* Motion ¶54.

## II.    The Debtor's Choice of Forum is Entitled to Substantial Weight and Should Not be Disturbed

20.    There is a strong presumption in favor of maintaining venue when a bankruptcy case is pending in a proper forum. *See In re Hechinger Inv. Co. of Del.*, 288 B.R. 398, 402 (Bankr. D. Del. 2003). While courts have discretion to transfer venue of a properly filed chapter 11 case "in the interest of justice or for the convenience of the parties," 28 U.S.C. § 1412, the showing required to support such a transfer is substantial.

21.    Since venue in this Court is proper, the Debtor's choice of this forum is entitled to great weight. *See, e.g.*, *In re Rests. Acquisition I, LLC*, 2016 Bankr. LEXIS 684, at *7 (Bankr. D. Del. Mar. 4, 2016) ("[C]ourts will generally grant substantial deference to a debtor's choice of forum."); *In re Ocean Props. of Del., Inc.*, 95 B.R. 304, 305 (Bankr. D. Del. 1988) (debtor's choice of a proper venue "entitled to great weight"); *In re PWS Holding Corp.*, 1998 Bankr. LEXIS 549, at *4-5 (Bankr. D. Del. Apr. 28, 1998) (debtor's "choice of forum is to be accorded substantial weight and deference"). A court "should exercise its power to transfer cautiously, and the party moving for the transfer must show by a preponderance of the evidence that the case should be transferred." *In re Commonwealth Oil Ref. Co. (Puerto Rico v. Commonwealth Oil Ref. Co.)*, 596 F.2d 1239, 1241 (5th Cir. 1979), *cert. denied*, 444 U.S. 1045 (1980) (referred to herein as "**CORCO**") (citation omitted). Venue should be disturbed only when the transfer is heavily favored. *See In re PWS Holding*, 1998 Bankr. LEXIS 549, at *5 (court must "determin[e] whether the balance of interests **strongly** favors transfer" (emphasis in original)); *see also In re Enron Corp.*, 274 B.R. 327, 342–43 (Bankr. S.D.N.Y. 2002) ("**Enron I**") ("Where a transfer would

9

merely shift the inconvenience from one party to the other . . . the [debtor's] choice of forum should not be disturbed." (quoting *In re Garden Manor Assocs., L.P.*, 99 B.R. 551, 555 (Bankr. S.D.N.Y.1988))).  The moving party must show by a heavy preponderance of the evidence that the case cannot "be efficiently and fairly administered in the debtor's chosen forum."  *In re Denham Homes, LLC*, 2010 Bankr. LEXIS 1127, at *4-5 (Bankr. N.D. Ill. Apr. 12, 2010).

22.    These principles apply with greater force when a Delaware entity seeks the protection of Delaware courts.  There is a "fundamental legal tenet that every citizen of a state is entitled to take advantage of the state and federal judicial process available in that state."  *In re PWS Holding*, 1998 Bankr. LEXIS 549, at *14.  "Delaware has an interest in protecting the rights of its citizens."  *Intel Corp. v. Broadcom Corp.*, 167 F. Supp. 2d 692, 706 (D. Del. 2001).[28]

23.    MBM completely ignores these guiding principles and claims that "the Debtor's choice of Delaware for its bankruptcy filing is entitled to little weight under the circumstances" and that "[a] debtor's place of formation . . . is of little significance in the venue analysis."  *See* Motion ¶54.[29]  In support of its position, MBM cites several readily distinguishable cases.  *First*, MBM's reliance on *In re LaGuardia Assocs., L.P.*, 316 B.R. 832 (Bankr. E.D. Pa. 2004) as supporting the proposition that "[a] debtor's place of formation . . . is of little significance in the venue analysis" is plainly wrong.  The *LaGuardia* court stated that the place of formation of the debtor was "unhelpful" because the debtor was a *partnership*:

---

[28]    Indeed, it is the well-settled law of this District that, even if Delaware is not a debtor's "home turf," deference should still be accorded to the Delaware entity's choice of venue.  *See Waste Distillation Tech., Inc., v. Pan Am. Res., Inc.*, 775 F. Supp. 759, 766 (D. Del. 1991) ("[T]his Court rejects the assertion that 'lack of doing business' here makes it unfair to try the case here.").

[29]    MBM's claim that the Debtor's decision to file in Delaware should not be respected is puzzling given MBM's choice of counsel.  Whiteford has filed at least a half dozen bankruptcy cases in Delaware between 2012 and the present based on the lead debtor's incorporation in Delaware where the debtors' principal places of business or assets were located in other jurisdictions.  *See Extraction Oil & Gas, Inc.*, No. 20-11548 (CSS) (Bankr. D. Del. June 14, 2020); *SQN Helo 8, LLC*, No. 17-10010 (BLS) (Bankr. D. Del. Jan. 3, 2017); *Draw Another Circle, LLC*, No. 16-11452 (KJC) (Bankr. D. Del. June 13, 2016); *Southfield Office Bldg. 14, LP*, No. 12-12415 (BLS) (Bankr. D. Del. Aug. 28, 2012); *LSP Energy Ltd. P'ship*, No. 12-10460 (MFW) (Bankr. D. Del. Feb. 10, 2012); *Pipeline Data, Inc.*, No. 12-13123 (KJC) (Bankr. D. Del. Jan. 19, 2012).

10

> Indeed, the place where a partnership was formed is viewed as being of scant significance for venue purposes, because "it is difficult to see how a partnership can be said to have a residence or domicile." *In re Peachtree Lane Associates, Ltd.*, 150 F.3d 788, 792 (7th Cir. 1998). Rather, "the only meaningful venue test with respect to a partnership may be the district in which it [Debtor] has its principal place of business or its principal assets in the United States." *In re Oklahoma City Associates*, 98 B.R. 194, 197 (Bankr. E.D. Pa. 1989).

316 B.R. at 836. Here, the Debtor is a limited liability company – not a partnership – and thus the principles guiding the *LaGuardia* court's analysis are inapplicable.

24. *Second*, MBM cites to *In re Rehoboth Hosp., LP*, 2011 Bankr. LEXIS 3992 (Bankr. D. Del. Oct. 19, 2011) and *OCB Rest. Co. v. Vlahakis (In re Buffets Holdings, Inc.)*, 397 B.R. 725 (Bankr. D. Del. 2008), both of which relied on *Son v. Coal Equity, Inc. (In re Centennial Coal, Inc.)*, 282 B.R. 140 (Bankr. D. Del. 2002), to claim that the Debtor's choice of forum here is entitled to less deference because this forum is unrelated to "the operative, underlying facts of the case." Motion ¶54. But *Buffets Holdings* and *Centennial Coal* considered transferring venue in respect of an adversary proceeding and held that for the adversary proceeding to stay in the same forum as the underlying bankruptcy, the adversary itself needed a sufficient nexus to the bankruptcy. *See In re Centennial Coal*, 282 B.R. at 145 (stating that "the instant [breach of contract adversary] proceeding was not closely tied to Debtors' bankruptcy"); *In re Buffets Holdings*, 397 B.R. at 728 (noting that "the Plaintiff's *choice of forum for its bankruptcy case* has no direct relation to the operative, underlying factors of the *adversary proceeding*" (emphasis added)). Here, the Debtor chose Delaware for its bankruptcy in the first instance and not for any adversary proceeding (Hickman Decl. ¶17.), which is distinct from MBM's stated authority.[30]

---

[30]   *In re Rehoboth* is additionally distinguishable because that decision was in the context of a single-asset real estate case. This case, however, is <u>not</u> a single-asset real estate case, as the Debtor also owns the Waterford Entities, the Bank Account, and claims related to various contracts between the Debtor and the City in an undetermined amount. *See also infra* Section III.A.2.

11

25.    The Debtor, through its independent managers, exercised sound business judgment in selecting Delaware as the forum for its chapter 11 case.  This Court has substantial experience in analyzing and considering matters related to DIP financing, handling reorganizations and sales of substantial real estate assets, and addressing the resolution of disputed claims, all of which are central to this Debtor's stated goals for this case.  Accordingly, the Debtor's choice of venue is entitled to great weight and should not be disturbed.

### III.    The Convenience of the Parties Will Be Enhanced if Venue is Maintained in Delaware

26.    When asked to transfer an entire bankruptcy case to another venue, courts examine whether the transfer would be (a) in the interest of justice, or (b) the convenience of the parties. 28 U.S.C. § 1412.  In considering the "convenience of the parties," courts weigh the following factors articulated by the Fifth Circuit in the *CORCO* case:

(a)    the economic administration of the estate;

(b)    the location of the debtor's assets;

(c)    the proximity of creditors of every kind to the court;

(d)    the proximity of the debtor to the court;

(e)    the proximity of the witnesses necessary to the administration of the estate; and

(f)    the necessity for ancillary administration if liquidation should result.

*CORCO*, 596 F.2d at 1247; *In re Rests. Acquisition I*, 2016 Bankr. LEXIS 684, at *6-7; *In re Caesars Entm't Operating Co.*, 2015 Bankr. LEXIS 314, at *19 (Bankr. D. Del. Feb. 2, 2015); *In re Innovative Commc'n*, 358 B.R. at 126.  Under this analysis, the "most important consideration is whether the requested transfer would promote the economic and efficient administration of the estate." *CORCO*, 596 F.2d at 1247; *accord In re Caesars Entm't*, 2015 Bankr. LEXIS 314, at *22; *In re Rests. Acquisition I*, 2016 Bankr. LEXIS 684, at *7; *Enron I*, 274 B.R. at 328; *see also In re*

AMERICAS 115565601

*Denham Homes*, 2010 Bankr. LEXIS 1127, at *5 ("The ultimate analysis under § 1412 is whether the case can be efficiently and fairly administered in the debtor's chosen forum.").[31]   As shown below, consideration of these factors requires denial of the Motion.

### A.    Application of the *CORCO* Factors Weighs Against Transfer

### 1.    The Economic Administration of the Estate

27.    MBM makes no effort to explain how or why the economic administration of the estate would be improved if this case was transferred to the South Carolina Court, aside from the superficial fact that the Project is located in South Carolina and speculating that Rock Hill residents *might* be more inclined to participate in the case in the South Carolina Court.  *See* Motion ¶46.

28.    *First*, the economic administration of a bankruptcy estate includes the need to maintain financing to fund a debtor's reorganization.  *See In re Indus. Pollution Control, Inc.*, 137 B.R. 176, 182 (Bankr. W.D. Pa. 1992); *Enron I*, 274 B.R. at 348.  The DIP Credit Agreement provides that this Court, and only this Court, has jurisdiction to review disputes and enforce the DIP Facility.  Further, the milestones in the DIP Credit Agreement require the filing of a plan and the entry of a confirmation order in *this Court*.  Any amendment to the DIP Order that seeks to change that provision without the DIP Lender's consent would be an event of default under the DIP Facility.  Thus, transferring venue could jeopardize the Debtor's DIP Financing.

29.    *Second*, transferring venue would result in an unwarranted increase in administrative costs to the Debtor.  *See In re Alcorn Corp.*, 2012 WL 2974889, at *3 (Bankr. E.D. Pa. July 20,

---

[31]    MBM ignores the *CORCO* factors and the paramount importance of the economic and efficient administration of the Debtor's estate.  Instead, MBM asks this Court to apply the factors adopted by the Third Circuit in *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995), a case involving a motion to transfer a civil action pursuant to 28 U.S.C. § 1404(a); *see Hechinger Liquidation Tr. v. Fox (In re Hechinger Inv. Co. of Del.)*, 296 B.R. 323, 325–26 (Bank. D. Del. 2003) (reciting and applying the *Jumara* factors in denying a motion to transfer venue of an adversary proceeding in the context of 28 U.S.C. § 1412).  However, the *Jumara* factors were developed for civil actions and more appropriately apply to adversary proceedings, not main bankruptcy cases.  As such, the Debtor submits that the factors articulated by the *CORCO* court are the applicable framework for this Court's determination of the Motion.

AMERICAS 115565601

2012) (denying venue transfer motion, explaining that increased administrative expenses frequently harm successful bankruptcy cases and that transferring venue would duplicate administrative expenses already incurred in the district in which the case was pending); *In re LaGuardia*, 316 B.R. at 842 (denying motion to transfer venue where it would lead to increased travel expenses for parties' lead counsel).  As shown in **Figure 1** below, the vast majority of the professionals who will be most heavily involved in the day-to-day activities related to the Debtor's chapter 11 case – counsel, financial advisors, and other professionals – are located outside of South Carolina.  (Hickman Decl. ¶18.)  Transferring this case would necessarily involve replacing existing local counsel and thus add an additional layer of duplicative professional fees.  (*Id.*)

### Figure 1: Location of Professionals of Certain Parties

| Name of Professional | Location |
|---|---|
| *The Debtor* | |
| White & Case LLP | FL<br>IL<br>MA<br>NY |
| A&M | GA<br>IL<br>MD<br>NC<br>PA |
| Farnan LLP | DE |
| *MBM* | |
| Whiteford | DE<br>MD<br>PA |
| *The City* | |
| McDermott Will & Emery LLP | DE<br>TX |
| *The County* | |
| Reed Smith LLP | DE<br>PA |
| Gallivan, White & Boyd P.A. | SC |
| *Certain Non-Debtor Affiliates* | |
| Paul Hastings LLP | NY |
| Moore & Van Allen, PLLC | NC<br>SC |
| *DIP Lender* | |
| GrayRobinson, P.A. | DE<br>FL |

| Populous | |
|---|---|
| Cousins Law LLC | DE |
| Lathrop GPM LLP | CO |
|  | KS |
| Subcontractors | |
| Various Counsel | DE |
|  | GA |
|  | NC |
|  | OH |
|  | SC |

30.     Further, transferring this case will also involve travel costs for such professionals. While the Debtor expects that proceedings before this Court will largely continue to be conducted virtually, all hearings before the South Carolina Court are presumptively required to take place in person.  As a result, the transfer of this case would necessarily force dozens of key professionals to fly to South Carolina every month for omnibus and other hearings, making the administration of this case not only more costly, but also less efficient.  (*Id.* ¶19.)  For example, in-person hearings in the South Carolina Court would necessitate the estate to spend money on plane tickets, airport transfers, daily meals, hotels, and taxis.[32]  (*Id.* ¶20 (estimating that the incremental costs for key professionals to attend hearings in-person in South Carolina versus virtually in Delaware would be tens of thousands of dollars per hearing and hundreds of thousands of dollars, if not more, in the aggregate over the duration of this case).)

31.     *Finally*, the core question is not whether the goals of this case – pursuing a value maximizing asset sale, recapitalization of the Debtor or other transaction – *could* be accomplished in another district, but instead whether transferring venue *would* lead to a case being "actually easier, faster or less expensive" to administer in another district.  *In re ONCO Inv. Co.,* 320 B.R. 577, 581 (Bankr. D. Del. 2005).  Here, the answer is a resounding "no."

---

[32]     Depending on the agenda for a particular hearing and the matters at issue, requiring in-person hearings for all matters may limit the ability of more junior attorneys to present distinct motions in front of the court.

15

## 2.      The Location of the Debtor's Assets

32.      Technology has rendered the location of the assets largely irrelevant by allowing virtual participation by all parties before this Court.  *See* Feb. 10, 2021 Hr'g Tr. at 10:11-12, *In re Wardman Hotel Owner, L.L.C.*, No. 21-10023 (JTD) (Bankr. D. Del. Feb. 16, 2021) [D.I. 138] (denying motion to transfer venue because, among other things, "for the foreseeable future, . . . this court . . . will hold hearings remotely").[33]  But MBM also misapplies limited case law to argue that the Project's location justifies the transfer of venue of this case to South Carolina.  MBM relies primarily on inapposite partnership debtor cases,[34] *see, e.g.*, *In re Rehoboth Hosp., LP*, 2011 Bankr. LEXIS 3992; *In re Midland Assocs.*, 121 B.R. 459 (Bankr. E.D. Pa. 1990);[35] *In re Pavilion Place Assocs.*, 88 B.R. 32 (Bankr. S.D.N.Y. 1988),[36] and its other authority is otherwise distinguishable. *See In re Qualteq, Inc.*, 2012 WL 527669 (Bankr. D. Del. Feb. 16, 2012) (transferring venue to Illinois where, unlike here, the debtors had more than 1,250 employees in Illinois and the debtors' owners had filed for chapter 7 in Illinois); *In re Ocean Props.*, 95 B.R. 304 (the debtors' *operating* hotels and *substantially all* of their creditors were located in Florida, and *all but one of the debtors' officers* resided in Florida).   In denying a motion to transfer venue, this Court recently distinguished each of *In re Rehoboth*, *In re Qualteq*, and *In re Ocean Props.* as follows:

> All of those cases involved ***operating hotels*** or other real estate
> assets with **significant day to day operations**, **numerous employees**

---

[33]   A copy of this hearing transcript is attached hereto as ***Exhibit C***.

[34]   As discussed above, the *LaGuardia* court noted that a *partnership* debtor's place of formation is "of scant significance for venue purposes, because 'it is difficult to see how a partnership can be said to have a residence or domicile.'"  316 B.R. at 836 (quoting *In re Peachtree Lane Assocs., Ltd.*, 150 F.3d 788, 792 (7th Cir. 1998)).

[35]   *In re Midland* is a "one asset" partnership case involving an office building located in Texas and only four creditors, two of which were located in Texas.  121 B.R. at 460-61.  Unlike *In re Midland*, the Debtor is a limited liability company (not a partnership) and owns other assets in addition to the Project, and has far more than just four creditors which are more geographically dispersed (and the majority of which are located outside of South Carolina), *see infra* Section III.A.3.

[36]   *In re Pavilion Place* is a "sole asset" partnership case involving the operation of a shopping center located in Minnesota, and the debtor's creditors were "overwhelmingly" from Minnesota.  *In re Pavilion Place Assocs.*, 88 B.R. at 32-33, 36-37.  That, again, is clearly not the case here.

16

and contractual obligations with local vendors. ***Here we are dealing with a hotel that has been closed since March of 2020*** and Debtors decided to permanently close the hotel in December of 2020.

There are ***only a few personnel on site to provide security and maintenance*** of the hotel ***while the Debtors pursue their plan to sell the property*** through an international sale process, a process which is already underway.

Feb. 10, 2021 Hr'g Tr. at 8:1-11, *In re Wardman Hotel Owner* (emphasis added). Just like in *In re Wardman Hotel Owner*, the Project is dormant, the Debtor does not continue to operate its business, the Debtor has no employees, and the Debtor is pursuing a sale, recapitalization, or other value maximizing process.

33.     Moreover, MBM's suggestion that the Project's location in South Carolina is dispositive has long been rejected in Delaware, dating back to before the enactment of the Bankruptcy Code, *see, e.g.*, *In re Fairfield P.R., Inc.*, 333 F. Supp. 1187 (D. Del. 1971) (motion to transfer venue of Delaware corporation debtor with its principal asset, principal office, books and records, principal witnesses, and a majority of its trade creditors located in Puerto Rico denied), which has been reaffirmed multiple times by bankruptcy courts in Delaware. *See, e.g.*, Sept. 8, 2010 Hr'g Tr. at 55–57, *In re Caribbean Petroleum Corp.*, No. 10-12553 (KG) (Bankr. D. Del. Sept. 17, 2010) [D.I. 167];[37] Dec. 8, 2010 Hr'g Tr. at 134-35, *In re Banning Lewis Ranch Co.*, No. 10-13445 (KJC) (Bankr. D. Del. Mar. 15, 2011) [D.I. 232];[38] Feb. 10, 2021 Hr'g Tr. at 6-12, *In re Wardman Hotel Owner* (rejecting argument that debtor's choice of forum was not entitled to much weight because its sole asset was located in another jurisdiction).[39]

---

[37]     A copy of the relevant portion of this hearing transcript is attached hereto as ***Exhibit D***.

[38]     A copy of the relevant portion of this hearing transcript is attached hereto as ***Exhibit E***.

[39]     *See also In re Garden Manor*, 99 B.R. 551 (bankruptcy court keeping case in New York notwithstanding that principal asset was in Arizona); *In re Peachtree Lane*, 150 F.3d 788 (bankruptcy court keeping case in Illinois notwithstanding that principal asset is in Texas); *In re Denham Homes*, 2010 Bankr. LEXIS 1127 (bankruptcy court keeping case in Illinois notwithstanding principal asset in Louisiana).

AMERICAS 115565601

### 3.    The Proximity of Creditors

34.    In evaluating the proximity of creditors, the Court must consider "both the number of creditors *as well as* the amount of claims held by such creditors."  *Enron I*, 274 B.R. at 345 (emphasis added).  Even if this factor favored transferring venue – which it does not here – this factor would not alone be determinative.  *In re Enron Corp.*, 284 B.R. 376, 400 (Bankr. S.D.N.Y. 2002) ("***Enron II***") (noting that "even if this factor were to strongly favor transferring venue, this factor alone would not be determinative" (cleaned up)).

35.    As an initial matter, MBM states that a majority of the creditors on the Debtor's Top 20 List "are located *in close proximity to the Project*", Motion ¶55 (emphasis added), and that "[t]he majority of the first-tier subcontractors and additional second-tier subcontractors . . . are *geographically located near the Project*."  *Id.* ¶14 (emphasis added); *see also id.* ¶2 ("near the Project"); *id.* ¶35 ("approximately 30 miles from the Project"); *id.* ¶43 ("close proximity" and "near the project"); *id.* ¶54 ("the Carolinas").   These misleading statements exaggerate the Debtor's contacts to South Carolina and seek to blur the distinction between North Carolina and South Carolina contacts, which are separate States with separate federal district courts.

36.    *First*, MBM largely undermines its own arguments by focusing on a substantial number of contacts with *North Carolina* – not South Carolina.  A simple majority of the vendors that have sent notice to the Debtor asserting mechanic's liens to date are located in North Carolina – not South Carolina.[40]  None of the creditors listed on the Top 20 List are located in South Carolina except for the City (in its capacity as a utility provider) and the County.  In addition, the Debtor's largest creditor is Panthers Football, which is also located in North Carolina – not South Carolina.[41]

---

[40]    *See* Schedule D (listing the addresses of parties that have sent notice to the Debtor asserting mechanic's liens).

[41]    *See* Schedule E/F Part 2 (listing Panthers Football as holding a claim in excess of $163 million).

AMERICAS 115565601

37.    *Second*, the Debtor's largest unaffiliated creditor, MBM, is located in Pittsburgh, PA.  MBM is represented by counsel located in Pennsylvania and Delaware.  MBM has various other projects located in Pennsylvania.  That MBM has an office and does business at the Project, *see* Motion ¶64, does not change the fact that MBM is located in Pennsylvania.  Even if this Court required all proceedings to take place in person (and it does not), Delaware would still be more convenient for MBM than South Carolina.

38.    *Third*, while a majority of the Debtor's creditors are located in North Carolina (not South Carolina), the remaining creditors are geographically diverse.  As shown in **Figure 2** below, the Debtor's creditors comprise approximately forty-six entities scattered across eleven States. (Hickman Decl. ¶21.)

**Figure 2: Location of Creditors By State**

| State | Number of Creditors | Percentage |
|---|---|---|
| California | 2 | 4.3% |
| Florida | 1 | 2.2% |
| Indiana | 1 | 2.2% |
| Kansas | 1 | 2.2% |
| Michigan | 1 | 2.2% |
| Minnesota | 1 | 2.2% |
| Missouri | 1 | 2.2% |
| North Carolina | 25 | 54.3% |
| Pennsylvania | 2 | 4.3% |
| South Carolina | 8 | 17.4% |
| Virginia | 3 | 6.5% |

As detailed in **Figure 3** and **Figure 4** below, (i) approximately eighty-three percent (83%) of all creditors *by number* are located outside of South Carolina; and (ii) approximately ninety-three percent (93%) of all creditors *by amount* are located outside of South Carolina.  (*Id.*)  In light of these facts, it is impossible to conclude that the convenience of the parties would best be served

AMERICAS 115565601

by transferring this case to South Carolina.  There is no centralized nexus that would be more convenient for all parties in interest than Delaware.



**Figure 3: Location of Creditors By Number**

17.4%

82.6%

■ Creditors in SC, 17.4%
■ Creditors Not in SC, 82.6%

**Figure 4: Location of Creditors By Amount**

7.0%

93.0%

■ Creditors in SC, 7.0%
■ Creditors Not in SC, 93.0%

39.    *Fourth*, even though a small percentage of the Debtor's creditors are located in South Carolina, these raw numbers do not tell the whole story.  The vast majority of the Debtor's creditors residing in South Carolina are the subcontractors whose interests MBM purports to defend.  (*Id.* ¶22.)  These subcontractors are actually parties-in-interest with direct contractual rights to payment against MBM, not the Debtor, and the claims of these subcontractors are subsumed by MBM's claim (*Id.*), which makes MBM the creditor whose location (*i.e.*, Pennsylvania) should have greater weight in the venue transfer analysis.  *See* Dec. 5, 2012 Hr'g Tr. at 96, *In re Carey Limousine, L.A., Inc.*, No. 12-12664 (BLS) (Bankr. D. Del. Dec. 19, 2012) [D.I. 146] (denying a motion to transfer venue and noting that the "significant participants in a Chapter 11 process . . . are usually not individual holders of claims");[42] *see also In re Walston AirBusiness,*

---

[42]    A copy of the relevant portion of this hearing transcript is attached hereto as ***Exhibit F***.

20

*Inc.*, 26 B.R. 955, 958 (Bankr. N.D. Ill. 1983) (denying motion to transfer venue where numerical count of creditors favored transfer, but value of creditors' claims favored retention).  In fact, nearly all of the parties that MBM has convinced to file joinders to the Motion are its own subcontractors.[43]  It makes no sense to allow MBM to magnify its stated preference for South Carolina by relying on the subcontractors whose individual claims are subsumed by MBM's claim. Here, the Debtor's largest unaffiliated creditor, MBM, is located outside of South Carolina and much closer to Delaware (and represented by professionals located there).

40.    *Fifth*, the physical proximity of creditors to this Court is largely irrelevant in the post-COVID world.  This Court is highly accessible to all interested parties, given that the docket is available free of charge on the internet, meaning that all pleadings and notices filed in this case are readily accessible.[44]  Additionally, the Judge Owens Chambers Phase 2 Procedures provide that "[i]n-person hearings shall be minimized and limited to critical cases only", whereas all hearings before the South Carolina Court are presumptively required to take place in person.[45]  The readily available access to this Court thus permits all interested parties to participate in meaningful ways from any location and reduces the cost of such participation.

### 4.    The Proximity of the Debtor and Witnesses Necessary to the Administration of the Estate

41.    When courts consider the proximity of a debtor in connection with a venue transfer motion, the analysis should focus on the location of the debtor's representatives who will appear in court, not with the employees who conduct the day-to-day business activities.  *CORCO*, 596

---

[43]    The only other parties to join the Motion are the City and the South Carolina Department of Transportation.  [D.I.s 147, 162].

[44]    Also, this Court expressly permits claimants to participate *pro se* and telephonically at any hearing on an objection to their claim.  *See* Del. Bankr. L.R. 3007-1(g).

[45]    *Supra* n.23.

F.2d at 1248; *see Enron II*, 284 B.R. at 392-93 (noting that the relevant debtor contacts are those persons "who are intimately familiar with the financial status of the company").  The necessary participants in this case will be the Debtor's restructuring professionals located in Delaware, Florida, Georgia, Illinois, Maryland, Massachusetts, New York, North Carolina, and Pennsylvania, and, as needed, the Debtor's officers and managers, which reside in various jurisdictions.  As shown in **Figure 5** below, only *one* of the Debtor's officers and managers is located in South Carolina.  (Hickman Decl. ¶23.)

**Figure 5: Location of the Debtor's Officers and Managers**

| Name | Position | Location |
|------|----------|----------|
| Vik Jindal | Member of Board of Managers | New York[46] |
| Lawrence Rolnick | Member of Board of Managers | New Jersey |
| Jonathan Hickman | Chief Restructuring Officer | North Carolina |
| Jim Bolin | Vice President | New Jersey |
| Mike Palmer | Vice President/Treasurer | New Jersey |
| Mark Hart[47] | Chief Operating Officer | South Carolina |
| Kristi Coleman | Chief Financial Officer | North Carolina |
| David Vaught | Counsel | North Carolina |

42.    As things stand, this Court is far more convenient for the witnesses in this case than the South Carolina Court.  The driving distance from the Debtor's principal place of business in Charlotte, North Carolina to the South Carolina Court located in Greenville, South Carolina is at least 100 miles, and is about ***an hour and a half to two hours away by car***.  (*Id.* ¶24.)  In contrast, proceedings before this Court during this case will typically be conducted virtually, rendering the proximity of the Debtor and witnesses moot.  However, to the extent that in-person attendance is

---

[46]    Mr. Jindal's residence is in New York but he is presently living in Texas for the summer.  (Hickman Decl. n.19.)

[47]    MBM incorrectly asserts that Mark Hart is a representative of the Carolina Panthers only and is not an officer of the Debtor. *See* Motion ¶17.  MBM is mistaken.  Mark Hart has served as the Debtor's Chief Operating Officer since December 9, 2019. *See supra* n.8.

AMERICAS 115565601

required, the CRO and other members of the Debtor's management are ready, willing, and able to travel to Delaware.[48]  (*Id.*)

43. Moreover, the Debtor's professionals are all located outside of South Carolina.  *See* July 11, 2000 Hr'g Tr. at 48:11-17, *In re Safety-Kleen Corp.*, No. 00-2303 (PJW) (Bankr. D. Del. July 19, 2000) [D.I. 238] (noting that "the vast majority of activities in this court involve lawyering and only a very, very limited number of principals have to appear on very, very limited occasions");[49] *Enron I*, 274 B.R. at 347 (noting that most of the debtor's officers would not be required to attend hearings and that the "participants in the proceedings before this Court will be the professionals retained in these cases").  Because the relevant professionals are geographically dispersed, the Debtor submits that no centralized nexus would be more convenient than Delaware given the current preference of allowing virtual participation before the Court.[50]

44. Finally, MBM argues that South Carolina is more convenient for potential witnesses by hypothesizing that "[t]he employees [of MBM] and Subcontractors would be potential witnesses in MBM's claims against the Debtor", Motion ¶66, and implying that the South Carolina Court is more convenient in light of the York County Action.  *See id.* ("Obviously, Rock Hill and County employees (and witnesses to the Debtor's transactions with those entities) are located in South Carolina.").  MBM appears to be conflating the best venue for a theoretical adversary proceeding brought by MBM against the Debtor with the most appropriate venue for the entire bankruptcy case.  *See* Feb. 10, 2021 Hr'g Tr. at 9:7-9, *In re Wardman Hotel Owner* (rejecting

---

[48]   *See Enron II*, 384 B.R. at 393 (where persons who are likely to be primary witnesses are able and willing to travel, this factor does not support venue transfer).

[49]   A copy of the relevant portion of this hearing transcript is attached hereto as ***Exhibit G.***

[50]   Ignoring this in-Circuit case law, MBM relies on a single Ohio bankruptcy court decision from over 20 years ago to claim that this Court should completely ignore the Debtor's counsel and other professionals.  *See* Motion ¶53 n.4 (citing *In re Trico Steel Co.*, 261 B.R. 915, 917 (Bankr. N.D. Ohio 2001)).

similar argument in denying motion to transfer because "[t]he breach of contract claim . . . is not currently before the Court.  The bankruptcy proceeding is").  The primary objective of this case is to effectuate a recapitalization or sale (or other transaction in respect) of the Debtor's assets that will maximize value for all stakeholders.  Further, MBM's claims against the Debtor are contractual and their resolution will depend primarily on documentary evidence, not witness testimony.  Any issues related to MBM's allegations and purported non-contractual claims will be dealt with at the appropriate time, and do not warrant disruption of venue in Delaware.[51]

5.      **The Necessity for Ancillary Administration if Liquidation Should Result**

45.    The potential need for ancillary administration in the event of liquidation does not support transferring this matter to the South Carolina Court.  The "'anticipation of the failure of the [Chapter 11] proceeding is an illogical basis upon which to predicate a transfer.'"  *CORCO*, 596 F.2d at 1248 (quoting *In re Fairfield P.R.*, 333 F. Supp. at 1191); *accord Enron I*, 274 B.R. at 349 (finding it unnecessary to contemplate failure of the case at the early stage of the proceedings).  Indeed, "[t]his factor is often discounted by the courts."  *Enron I*, 274 B.R. at 343 n.11.  MBM offers no factual or legal basis for this Court to contemplate the failure of the Debtor's chapter 11 case, other than MBM's own ill-advised threats to force this case to convert to chapter 7.[52]  Therefore, this factor does not weigh in favor of transferring venue to the South Carolina Court.

B.      **To the Extent Relevant, the *Jumara* Factors Also Weigh Against Transfer**

46.    As noted, the *Jumara* factors were developed for litigation, not main bankruptcy

---

[51]    Similarly, the question of the appropriate venue for the York County Action likewise is not the central focus of this case.  In any event, that lawsuit has been removed to federal court and will be subject to a motion to transfer that action to this Court.  *See* York County Action Notice of Removal, *supra* n.25.

[52]    *See* June 30, 2022 Hr'g Tr. at 50:25-51:1 (Mr. Roeschenthaler: "I'd rather see this in Chapter 7.").

AMERICAS 115565601

cases, and the factors articulated by the *CORCO* court are clearly the most relevant to this Court's determination of the Motion. However, to the extent relevant, the *Jumara* factors also weigh in favor of retaining venue in Delaware.

47.   *The Debtor's Choice of Forum*.   The Debtor's choice of forum is Delaware.   A debtor's choice of forum is accorded substantial weight and deference. *See supra* Section II. Thus, this factor weighs heavily in favor of keeping venue in this Court.

48.   *MBM's Choice of Forum*.   MBM states a preference for the South Carolina Court over this Court, but a movant's choice of forum is generally "given less weight." *In re NWL Holdings, Inc.*, 2011 WL 767777, at *5 (Bankr. D. Del. Feb. 24, 2011). However, it is difficult to imagine how South Carolina could be more "convenient" for MBM than Delaware given that MBM is a joint venture located in Pennsylvania with counsel based in Pittsburgh and Wilmington. MBM's true motivation is clearly to gain a litigation advantage and has nothing to do with "convenience." *See infra* ¶60. If anything, MBM's view is not entitled to any deference given the improper purpose of its Motion. Accordingly, this factor does not support transfer.

49.   *Where the Claims Arose*.   MBM argues that the claims relate to issues in South Carolina. The Debtor does not dispute that the majority of its assets are located in South Carolina or that the claims against it relate to the construction of the Project. However, the key issues in this case will revolve around a recapitalization or sale and chapter 11 plan confirmation – not discrete matters of contractual interpretation.[53] Thus, this factor is entitled to little weight.

50.   *Location of Books and Records*.   MBM erroneously claims that "all of the Debtor's records are located at the Project site in South Carolina and, to a lesser degree, at Panther's

---

[53] Even insofar as MBM's claims against the Debtor are relevant, those claims are contractual. Where, as here, the issues in the case "will be resolved through basic contractual interpretation and the location of the underlying events is not germane, this factor is neutral." *In re Visteon Corp.*, 2011 Bankr. LEXIS 4008, at *4-7 (Bankr. D. Del. Oct. 21, 2011) (denying transfer of venue and holding that location of the events did not favor either forum).

Stadium, . . ." Motion ¶35.  The Debtor's books and records are actually maintained at the Debtor's

principal place of business in North Carolina.  *See supra* n.9.  Further, MBM fails to account for

the modern convenience of electronic document transfer and electronic document production,

which render the physical location of books and records immaterial.  *Enron II*, 284 B.R. at 394

(physical location of books and records "not a major concern" because "with modern technology

that information, which is ordinarily computerized, can be readily transported via electronic

mail").[54]  Consequently, this factor weighs against transfer.

51.    *Convenience of the Parties*.  MBM argues that South Carolina is the most convenient

forum for all parties in this chapter 11 case.  As stated above, the facts speak otherwise: a majority

of the Debtor's creditors are located outside of South Carolina.  *See supra* III.A.3.  Hence, this

factor does not support transfer.

52.    *Convenience of Witnesses*.  As explained above, the Debtor's management, who are

willing to travel to Delaware if necessary, are the most likely witnesses and they prefer this Court.

*Supra* III.A.4.[55]  This factor weighs in favor of venue in this District.

53.    *Enforceability of a Judgment*.  MBM makes no suggestion that a judgment of this

Court would not be enforceable, so this factor does not weigh in favor of transferring venue.

54.    *Practical Considerations*.  The core question for this Court to ask is "whether it is

actually easier, faster or less expensive" to administer this case in South Carolina than in Delaware.

*In re ONCO*, 320 B.R. at 581.  Again, MBM has not offered any evidence that the actual ease of

---

[54]    MBM also claims that South Carolina would be more convenient "if it becomes necessary to view the Practice Facility/HQ in
the course of this action, . . ."  Motion ¶64.  The possibility of viewing the Project in this case is irrelevant to the venue
analysis, as the parties may visit and view the site regardless of where the case is being administered.

[55]    Moreover, under *Jumara* this factor is only relevant to the extent that the movant shows that witnesses are "actually unavailable
for trial in Delaware." *In re Visteon*, 2011 Bankr. LEXIS 4008, at *8.  "Without such a showing, 'witnesses are presumed to
be willing to testify in either forum, despite the inconvenience that one of the forums would entail.'"  *In re Visteon*, 2011
Bankr. LEXIS 4008, at *8-9 (quoting *In re ONCO,* 320 B.R. at 580).  MBM has not (and cannot) show that any relevant
witness for the main bankruptcy case would be unavailable to testify in Delaware.

AMERICAS 115565601

administration of the case would be improved if the case were transferred to South Carolina.  For all the reasons set forth in Section III.A.1 above, the evidence shows the opposite and, therefore, this factor weighs greatly in favor of venue in Delaware.

55.    _Relative Administrative Difficulty_.  This Court has already conducted two substantial hearings in this case.  It is more judicially efficient to keep this cases in Delaware, where this Court is already familiar with many of the relevant issues and parties. *See In re Hechinger*, 296 B.R. at 327 ("[I]t would be in the interests of judicial economy" for this Court to retain proceeding "rather than have a judge in the Houston Division invest the time on an entirely new matter").  Therefore, this factor weighs in the Debtor's favor.

56.    _Public Policy_.  It is plain that Delaware has a substantial interest in the reorganization of Delaware entities.  *See supra* ¶22.  According to MBM, however, "[t]he State of South Carolina has a clear interest in having South Carolina courts . . . decide such local controversies."  Motion ¶70.  Again, MBM appears to conflate the appropriate venue for the entire bankruptcy case with the best venue for specific disputes, such as the York County Action.  *See* Feb. 10, 2021 Hr'g Tr. at 9:7-9, *In re Wardman Hotel Owner* ("The breach of contract claim . . . is not currently before the Court.  The bankruptcy proceeding is").  The York County Action is not in front of the Court as this time, much less the main focus of this bankruptcy case, and the Debtor is not a named defendant.  The main issue before this Court will be whether the Debtor can sell or reorganize its interest in the Project.  Moreover, where both venues can assert policy concerns arising out of the case, this factor favors neither venue.  *Am. Institutional Partners v. Fairstar Res., Ltd.*, 2011 WL 1230074, at *15 (D. Del. Mar. 31, 2011) (denying transfer of venue).  Thus, this factor is at best neutral or weighs in favor of the Debtor.

57.    _Familiarity with Applicable State Law_.  Despite MBM's efforts to highlight the

purported importance of South Carolina law, *see* Motion ¶69, "[i]t is likely that most of the substantive law applied in this case will be federal bankruptcy law, a subject on which bankruptcy judges in every jurisdiction have comparable expertise." *In re Alcorn*, 2012 WL 2974889, at *4 ("[B]ankruptcy judges regularly apply the law of jurisdictions other than the jurisdiction in which the bankruptcy court is located" and this "is a by-product of a flexible bankruptcy venue statute . . .."). As to any peripheral South Carolina law issues, even if relevant, bankruptcy courts regularly deal with state law issues without difficulty. MBM does not suggest that this Court is unequipped to address any South Carolina law issues. *See* Sept. 8, 2010 Hr'g Tr. at 56:12-16, *In re Caribbean Petroleum* ("This is a sale case. The Bankruptcy Code is applicable and will largely control the outcome of the bankruptcy case before the Court. And where Puerto Rico law governs, the Court is fully able to determine and apply Puerto Rican law."). Finally, MBM, the City, and the County believe that claims sounding in alter ego may lie against certain affiliates of the Debtor, requiring an analysis of whether the Court should pierce the Debtor's corporate veil under Delaware law or whether the Debtor's managers and officers exercised their fiduciary duties under Delaware corporate law. This Court is obviously well-equipped to address these types of issues. Thus, this factor does not weigh in favor of transfer.

58. *Local Interests*. MBM vastly overstates the local interests of South Carolina. MBM's suggestion that Rock Hill residents will line up to be heard in this case as if it were a local town hall meeting, *see* Motion ¶46, is far-fetched. The Project is non-operating and dormant. The Debtor has no employees. While the outcome of the Project is certainly a disappointment right now to Rock Hill and the County, the welfare and economic stability of Rock Hill or the County are not under threat. *See CORCO*, 596 F.2d at 1248 (despite the importance of the debtor, a major supplier of petroleum in Puerto Rico, to the welfare and economic stability of Puerto Rico, the

28

court determined not to transfer venue to Puerto Rico).  Further, this Court rejected a similar argument to MBM's last year in the *In re Wardman Hotel Owner* case:

> [T]he last time the issue of redevelopment of the Wardman Hotel property was raised in 2016, it resulted in news reports that members of the community were outraged.  While there is certainly local interest in what happens to the property once the Debtor sells it, those issues will be dealt with at the local level.  In the context of this bankruptcy, the only issue is the sale of the property.

Feb. 10, 2021 Hr'g Tr. at 11:14-21, *In re Wardman Hotel Owner*.  As such, this factor does not favor transfer.

59.    In sum, nearly all of the *CORCO* and *Jumara* factors either clearly favor maintaining venue in Delaware or are neutral on balance.  Even if the factors were equally weighted (they are not), MBM would still be unable to carry its burden to show by a preponderance of the evidence that transferring this case to South Carolina will better serve the convenience of the parties.[56]  *See In re Strouse Greenberg Props. VI Ltd. P'ship*, 1990 WL 19803, at *2 (Bankr. E.D. Pa. Mar. 2, 1990) (denying motion to transfer venue where two factors tipped in favor of transfer, two factors tipped in favor of maintaining the case in debtor's chosen venue, and two factors were insignificant); *In re Alcorn*, 2012 WL 2974889, at *5 (holding that, where factors tipped only somewhat in favor of transfer, transfer of venue was not warranted).  As such, the Debtor's choice of venue should not be disturbed.

## IV.    The Interest of Justice is Not Served by Transferring Venue

60.    In determining whether a transfer would be "in the interest of justice," the Court should consider "whether transfer of venue will promote the efficient administration of the estate, judicial economy, timeliness, and fairness."  *Enron II*, 284 B.R. at 387.  These factors have

---

[56]    In any event, given modern technological advances, courts have noted the diminished importance of the "convenience" factor to the venue transfer analysis.  *See In re PWS Holding*, 1998 Bankr. LEXIS 549, at *15 (acknowledging "the reality that technological advances continue to diminish the importance of the 'convenience' factor").

AMERICAS 115565601

generally been discussed above and support keeping this case in Delaware.[57]  Moreover, MBM's forum shopping in pursuit of value destructive litigation[58] is contrary to the "interest of justice" and cannot serve as a basis for transferring venue – regardless of how many of its subcontractors MBM convinces to join the Motion.  *See In re Portjeff Dev. Corp.*, 118 B.R. 184, 197 (Bankr. E.D.N.Y. 1990) ("It is not in the 'interest of justice' to tolerate or encourage forum shopping"); *Greater Yellowstone Coal. v. Bosworth*, 180 F. Supp. 2d 124, 129 (D.D.C. 2001) (stating that "public interest considerations that weigh against a transfer [of venue] include the possibility that the defendants are forum shopping").  As described above, the attendant delay and uncertainty caused by a transfer of this case to the South Carolina Court could jeopardize the Debtor's access to funding and impair its ability to maximize the purchase price for its assets to the detriment of all stakeholders.  The disruption caused by transferring this case would not promote the efficient administration of the Debtor's estate and would prejudice the Debtor's stakeholders (including MBM).  For these reasons and for the reasons set forth in the discussion of the *CORCO* and *Jumara* factors above, the interest of justice would be best served by maintaining this case in Delaware.

WHEREFORE, the Debtor respectfully requests that this Court enter an ordering denying the Motion, and granting such other and further relief as this Court deems appropriate.

---

[57]  Courts often combine the "interest of justice" and "convenience of parties" analyses "since the facts and circumstances which inform one evaluation will almost always bear on the other as well." *In re LaGuardia*, 316 B.R. at 839.

[58]  *See* June 30, 2022 Hr'g Tr. at 43:11-13 (Mr. Roeschenthaler referring to this case as "the most incestuous case perhaps in the history of U.S. jurisprudence"), 51:8-10 (Mr. Roeschenthaler: "[I]f there's ever a fact pattern that I can get somewhat encouraged by, with some of the suggestions of alter ego, this might be it.").

Dated: July 12, 2022                    Respectfully submitted,

                                        **FARNAN LLP**

                                        /s/ Michael J. Farnan
                                        Joseph J. Farnan, Jr. (Bar No. 100245)
                                        Brian E. Farnan (Bar No. 4089)
                                        Michael J. Farnan (Bar No. 5165)
                                        919 North Market Street, 12th Floor
                                        Wilmington, Delaware 19801
                                        Telephone:    (302) 777-0300
                                        Email:        farnan@farnanlaw.com
                                                      bfarnan@farnanlaw.com
                                                      mfarnan@farnanlaw.com

                                        **WHITE & CASE LLP**
                                        Thomas E Lauria (admitted *pro hac vice*)
                                        Varoon Sachdev (admitted *pro hac vice*)
                                        Southeast Financial Center
                                        200 South Biscayne Boulevard, Suite 4900
                                        Miami, FL 33131
                                        Telephone:    (305) 371-2700
                                        Email:        tlauria@whitecase.com
                                                      varoon.sachdev@whitecase.com

                                        J. Christopher Shore (admitted *pro hac vice*)
                                        Stephen Moeller-Sally (admitted *pro hac vice*)
                                        Colin West (admitted *pro hac vice*)
                                        Mark Franke (admitted *pro hac vice*)
                                        Brandon Batzel (admitted *pro hac vice*)
                                        1221 Avenue of the Americas
                                        New York, NY 10020
                                        Telephone:    (212) 446-4800
                                        Email:        cshore@whitecase.com
                                                      ssally@whitecase.com
                                                      cwest@whitecase.com
                                                      mark.franke@whitecase.com
                                                      brandon.batzel@whitecase.com

                                        William A. Guerrieri (admitted *pro hac vice*)
                                        111 South Wacker Drive, Suite 5100
                                        Chicago, IL 60606
                                        Telephone:    (312) 881-5400
                                        Email:        william.guerrieri@whitecase.com

                                        *Proposed Counsel to the Debtor and*
                                        *Debtor-in-Possession*