## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| GT Real Estate Holdings, LLC, | ) Case No. 22-10505 (KBO) |
| | ) |
| Debtor.[1] | ) **Hearing Date: August, 3 2022 at 10:00 a.m. (ET)** |
| | ) **Objection Deadline: July 28, 2022 at 4:00 p.m. (ET)** |
| | ) **Reply Deadline: July 29, 2022 at 4:00 p.m. (ET)** |
| | ) |
| | ) **Re: Docket No. 204** |

### DEBTOR'S OBJECTION TO MOTION OF THE CITY OF ROCK HILL FOR ENTRY OF AN ORDER DIRECTING THE DEBTOR TO (I) PRODUCE DOCUMENTS IN RESPONSE TO RULE 2004 REQUESTS AND (II) SIT FOR A RULE 2004 EXAMINATION

GT Real Estate Holdings, LLC, the debtor and debtor in possession (the "***Debtor***") in the above-captioned chapter 11 case respectfully submits this objection (this "***Objection***") in response to the *Motion of the City of Rock Hill for Entry of an Order Directing the Debtor to (i) Produce Documents in Response to Rule 2004 Requests and (ii) Sit for a Rule 2004 Examination* [D.I. 204] (the "***Motion***"), and respectfully states as follows:[2]

### OBJECTION

1.    The rules and law applicable here are non-controversial.  Bankruptcy Rule 2004 permits this Court to "order the examination of any entity" relating "to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate."  Fed. R. Bankr. P. 2004 (a)-(b).  However, the right to

---

[1]    The Debtor and the last four digits of its taxpayer identification number are: GT Real Estate Holdings, LLC (9589).  The location of the Debtor's principal office is 800 South Mint Street, Charlotte, NC 28202.

[2]    In support of this Objection, the Debtor relies upon and incorporates by reference the *Declaration of Jonathan Hickman, Chief Restructuring Officer of the Debtor, in Support of the Chapter 11 Petition and First Day Pleadings* [D.I. 8] (the "***First Day Declaration***").  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

examination and discovery under Rule 2004 is not absolute, and it is granted at the discretion of the Court.  *Id.* (noting that the Court "may" order examination under Rule 2004); *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 626 (Bankr. D. Del. 2016) ("[P]arties do not have an absolute right to Rule 2004 examinations—the granting of a Rule 2004 examination is dependent on the discretion of the court.").

2.      "The party seeking to conduct a 2004 examination has the burden of showing good cause for the examination which it seeks." *Millennium Lab Holdings II*, 562 B.R. at 627.  To determine whether "good cause" exists, this Court must "balance the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination." *In re AOG Ent., Inc.*, 558 B.R. 98, 109 (Bankr. S.D.N.Y. 2016).  Courts look to the surrounding circumstances to determine whether good cause exists.  *In re Express One Int'l, Inc.*, 217 B.R. 215, 217 (Bankr. E.D. Tex. 1998) (limiting scope of examination under Rule 2004 to narrow issue); *see also In re Enron Corp.*, 281 B.R. 836, 844 (Bankr. S.D.N.Y. 2002).  Moreover, the burden to show good cause is an affirmative one, *In re Wilcher*, 56 B.R. 428, 435 (Bankr. N.D. Ill. 1985), and the movant must show that the examination and production is "*necessary* to establish the claim of the party seeking the examination, or . . .  denial of [the Bankruptcy Rule 2004] request would cause the examiner undue hardship or injustice."  *In re AOG Ent.*, 558 B.R. at 109 (emphasis added).

3.      And finally, the modern view is that courts *should not* permit unfettered "fishing expedition[s]." *In re SunEdison, Inc.*, 562 B.R. 243, 250-51 (Bankr. S.D.N.Y. 2017) (recognizing that Rule 2004 requests should be proportional to the claim at issue).  Further, a party does not have unlimited power to investigate anything it wishes without first establishing a basis for examination properly within the scope and purpose of Rule 2004.  *In re Mathews*, 2018 U.S. Dist.

AMERICAS 116396309

LEXIS 178364, at *5 (D. Del. Oct. 17, 2018).

4.    What is controversial here is the City's proposed application of those rules and rulings to its attempt to recover on its investments in the Debtor – particularly through its vastly overreaching discovery requests, which essentially call upon the Debtor to produce virtually every electronic and physical document in its possession, custody or control.  The Court should deny the Motion in its current iteration.

## I.    The City's Proposed Requests are Unfettered and Far From Proportional to the City's Claim

5.    Under Bankruptcy Rule 2004, the City is only entitled to information sufficient to provide a reasonable understanding of the Debtor's affairs and financial condition – not every single document and communication the Debtor has ever held or produced.  *SunEdison*, 562 B.R. at 250-51.  Notwithstanding these restrictions, the City has made 90 separate requests for production, with requests so broad that they include giant swaths of the Debtor's files, including, for example,

- "All Documents and Communications concerning the Project Documents . . . ." Motion, Ex. B (the "***Rule 2004 Requests***"), Document Requests ¶9.

- "All Documents and Communications concerning the formation of GTRE . . . ." *Id.*, Document Requests ¶32.

- "All Documents and Communications concerning any intercompany transfers . . . , transfers out of GTRE . . . , [and] all transfers between GTRE and its Affiliates and Subsidiaries since June 5, 2019." *Id.*, Document Requests ¶¶41-43.

Moreover, each of the City's requests are not only targeted at the Debtor, but also at the Debtor's bankers, financial advisors, attorneys, affiliates, and other agents and representatives. *Id.*, Definitions ¶16.  The massive undertaking the City proposes far exceeds the bounds of reasonableness and appears designed to cause the Debtor to incur excessive administrative expense.  Indeed, if the Motion is granted, the Debtor's estate would be forced to bear, at a minimum, many hundreds of

3

thousands of dollars in legal fees just to review the requested production for privileged and non-responsive documents, in addition to the costs of collection and production.

6.    Additionally, while the City has not stated the purpose behind these overly broad requests for production (one of the Motion's many infirmities discussed in Section II, *infra*), it appears that many of the requests are aimed at assessing the Debtor's potential claims against its affiliates.[3]  While these estate causes of action may exist,[4] the City may only seek such documents to identify whether the claims actually exist.  As Judge Shannon has explained,

> I view Rule 2004 as a vehicle to investigate whether there are causes of action that should be sued upon and then investigated by traditional discovery, and I don't fault the [movant] for asking for everything that they ultimately would probably want through traditional discovery, but really if they got everything that they wanted in these topics, once they filed the complaint the discovery would be largely complete and I don't think that that's really the purpose of Rule 2004.

July 16, 2008 Hr'g Tr. at 45:16-24, *In re Amp'd Mobile, Inc.*, Case No. 07-10739 (BLS) (Bankr. D. Del. Sept. 10, 2008) [D.I. 1020].[5]

7.    The purpose here then is to identify a set of disclosures that meet the City's purported need to determine whether claims exist without imposing obligations on the Debtor that presume such claims in fact do exist or otherwise interferes with the Debtor's investigation of estate claims. To that end, the Debtor has attempted to strike a more appropriate balance through discussions with the City.  Indeed, despite the velocity of the Debtor's Chapter 11 Case over the past few weeks (including a two-day contested and evidentiary DIP hearing, a contested venue transfer

---

[3]    The City has already stated its intent to assess claims of alter ego liability on the record in this Chapter 11 Case.  *See, e.g.*, June 30, 2022 Hr'g Tr. at 60:9-11 [D.I. 169].

[4]    The existence of any such causes of action are the subject of a current investigation by the Debtor's fiduciaries.  The Debtor takes no position at this time on the viability of any such claims.

[5]    A copy of the relevant portion of this hearing transcript is attached hereto as ***Exhibit A***.

4

motion, the need to protect estate causes of action via the filing of the adversary proceeding against the County [D.I. 205] (the "***County Adversary Complaint***"), and the ongoing effort to develop a chapter 11 plan in compliance with the DIP financing agreement's milestones), the Debtor has met and conferred with the City twice since the City filed the Motion and made a proposal to produce certain documents on a rolling basis that are responsive to a number of the City's requests with the intention of resolving the Motion.  The City rejected the Debtor's proposal.  Moreover, various pieces of information sought by the City are already in the record of this Chapter 11 Case.  The Debtor is hopeful it will be able to narrow the City's open requests, assuming that the City is also willing to take a reasonable and practical approach and focusing on information that is most relevant to the City's claims and the potential exit plan for this Chapter 11 Case.  The Debtor files this objection, however, due to the breadth, burden, and unarticulated basis for the presently unresolved requests, and the Debtor reserves its rights to address specific items that remain unresolved by the time of the hearing.

8.      As for its Motion, the City asserts, based on no record, that "the Debtor has been less than forthcoming" with respect to, among other things, the relationship of the Debtor with its corporate affiliates, funding for the Project, the sources and uses of a $20 million payment made by the City in support of the Project, and a prepetition transaction involving the sale of a parking lot by the Debtor to an affiliate.  Motion ¶22.  The City further claims that the information sought "bears directly on the maximization of the Debtor's estate for the benefit of its creditors."  *Id.* ¶23. The City has not affirmatively shown that the Debtor has failed to provide appropriate disclosure and, indeed, evidence in the record of this Chapter 11 Case shows that the Debtor has complied with all of its disclosure obligations as a chapter 11 debtor.

9.      Mere relevance of the information is insufficient to establish good cause for the

AMERICAS 116396309

purposes of Bankruptcy Rule 2004—the movant's affirmative obligation is to show not only *relevance*, but the *necessity* of the information sought.  *In re Millennium Lab Holdings II*, 562 B.R. at 627; *In re AOG Ent.*, 558 B.R. at 109 ("'That documents meet the requirement of relevance does not alone demonstrate . . . good cause . . . .'" (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991))).  Vague explanations and assertions that point to no facts in the record of these proceedings cannot suffice to meet the City's burden of establishing good cause.  *See Mathews*, 2018 U.S. Dist. LEXIS 178364, at *6-7 (rejecting movant's vague explanation of how investigation related to its potential claim).  Generalized statements about how the requests relate to broad categories of information that may (or may not) properly be requested under Bankruptcy Rule 2004 without any effort to justify particular, detailed requests for production are also insufficient.

10.    Here, the volume of the City's Rule 2004 Requests, coupled with its other discovery requests lodged in connection with the pending motion to transfer venue[6] (a motion the City did not bring and only joined), has only served to burden the Debtor with overly broad and unnecessary discovery and, if the Motion is granted, will require it to incur ballooning administrative costs on the Debtor's estate for no demonstrable benefit.  Moreover, the City has not explained why this discovery is actually necessary now, before the Debtor has filed a plan that addresses the treatment of the City's claim and claims held by the estate.

11.    Indeed, the Debtor is in the process of formulating a plan of reorganization, which it hopes to file in the coming weeks.  Discussions with parties in interest regarding treatment of claims that are allowed in this case are ongoing, and the City only recently has begun to engage

---

[6]    *See The City of Rock Hill's Interrogatories to the Debtor in Connection with the Venue Transfer Motion*, attached hereto as **Exhibit B**; *The City of Rock Hill's Requests for Admission to the Debtor in Connection with the Venue Transfer Motion*, attached hereto as **Exhibit C**; and *The City of Rock Hill's Requests for Production of Documents to the Debtor in Connection with the Venue Transfer Motion*, attached hereto as **Exhibit D**.

with the Debtor in those discussions.  The Debtor invites the City to continue to participate in those discussions and to articulate its perspective on the substance, rather than procedural and discovery matters.  In the meantime, though, the Debtor submits that this Court should not allow the City to abuse Bankruptcy Rule 2004 with unnecessary, irrelevant, and overly broad discovery requests as a tactical ploy to frustrate necessary plan negotiations.

## II.    The Motion Should be Denied Because the Requests Impose an Undue Burden on the Debtor

12.    As noted *supra*, the Debtor has no objection to producing some of the requested information including with respect to non-privileged corporate organization and transactional documents like contracts and debt documents, organizational charts, and other similar materials. Indeed, in some cases, the Debtor has already produced the requested information prior to the Motion being filed in connection with the Debtor's DIP financing motion [D.I. 9] (such as the Prepetition Debt Documents).  But as described above, the requested information goes far beyond what is necessary to investigate potential claims and, as described below, would impose a significant, unjustifiable burden on the Debtor.  Thus, if the Court determines that good cause exists for a Bankruptcy Rule 2004 examination of the Debtor (it should not), the Debtor submits that the Court should materially narrow the scope of the City's requests.

13.    The "permissive, conditional language" of Bankruptcy Rule 2004 can be used "to restrict discovery that appears unduly intrusive or burdensome." *In re Roman Catholic Church of Diocese of Gallup*, 513 B.R. 761, 766 (Bankr. D.N.M. 2014).  In weighing the proper scope of an examination under Bankruptcy Rule 2004, this Court must balance the City's interest in collecting further information concerning potential claims versus the burden imposed on the Debtor.  *In re Brown*, 2018 Bankr. LEXIS 3138, at *11 (Bankr. S.D.N.Y. Oct. 11, 2018).

AMERICAS 116396309

### A.    Requests for "All Documents" and "All Communications" Should Be Denied

14.    The City's requests are extremely broad in scope, requesting "all" documents and communications relating to a litany of topics that may capture essentially all documents and communications of the Debtor since the Project's inception.    While the Debtor has voluntarily produced certain information, and is willing to continue cooperative dialogue to the extent the City requires more thereafter, the City has not met its burden to show that the breadth and depth of what they request is relevant to its or the estate's potential claims.

15.    The City's defined terms of "Document" and "Communication" are themselves vastly overbroad.    *See* Rule 2004 Requests, Definitions ¶¶7, 12 (proposing that such terms be given "the broadest meaning allowable under the Federal Rules of Civil Procedure and the Federal Rules of Bankruptcy Procedure").    Courts routinely limit such definitions to readily identifiable and accessible materials that can be practically gathered.    In *In re Texaco, Inc.,* 79 B.R. 551, 553 (Bankr. S.D.N.Y. 1987), for instance, the court concluded that a definition of the term "document" that was even narrower than the one put forward by the City was "obviously too broad and border[ing] on the ridiculous" and imposed a substantially narrower definition to reduce the burden on the estate.    As such, at the very least, definitions of "Document" and "Communication" should be substantially limited to clearly identifiable categories of information relevant to potential claims that can be practically gathered without undue burden.

### B.    To the Extent the City's Requests Seek Examination of Non-Debtors, Such Requests Should be Denied

16.    The City's defines "GTRE" to mean "GT Real Estate Holdings, LLC ***and its Affiliates, subsidiaries***, officers, representatives, agents, advisors, and attorneys."    2004 Request List, Definitions ¶16 (emphasis added).    Although the City does not expressly request the

AMERICAS 116396309

examination of any non-Debtor parties, to the extent that the City seeks to expand the scope of its examination indirectly through this overly broad definition of "GTRE," the Court should deny this request.  *See In re Millennium Lab Holdings II*, 562 B.R. at 628 ("An investigation into the existence of the Consenting Lenders' claims against non-debtor Third Parties does not fall within the scope or purpose of Rule 2004 as it is not an investigation into the 'property or to the liabilities and financial condition of the debtor,' and will not further the recovery and distribution of the Debtors' assets or otherwise assist with the administration of this case." (quoting Fed. R. Bankr. P. 2004(b)).  If the Court grants the Motion, the definition of "GTRE" should be limited to only the Debtor and its officers and managers.

     **C.**  **Requests for Materials Protected by Legal Privilege Should be Denied**

   17.  The Motion also requests information protected by the attorney-client privilege and/or Rule 408 of the Federal Rules of Evidence, including, for instance, "All Documents and Communications concerning the Standstill Agreement."  2004 Requests, Document Requests ¶31. Courts have recognized that such requests for information protected by the attorney-client privilege pose the obvious risk of harassing the Debtor and should be denied.  *In re First Conn. Consulting Grp., Inc.,* 2017 WL 3089736, at *2 (Bankr. D. Conn. July 19, 2017) ("Moreover, such inquiry poses the obvious risk of harassing . . . invading privilege, work-product and strategic thinking on vigorously litigated and concluded matters**,** and creating unnecessary expenses to both estates.").  To the extent that the Court decides review of the files of the Debtor's attorneys or other Bankruptcy Rule 2004 relief is appropriate here, the proposed order should expressly exclude documents that are covered by the attorney-client privilege, work product doctrine, Federal Rule of Evidence 408, or other legal privilege.

9

### D.    Requests Concerning Retention of the Debtor's Professionals Should be Denied

18.    The City also requests discovery relating to the Debtor's retention of its professionals in this Chapter 11 Case, namely, White & Case LLP, Farnan LLP, and Alvarez & Marsal North America LLC.  But such professionals have already provided detailed disclosures in connection with their applications, the City did not object to the Debtor's retention of these professionals (nor did any other party), and the Court has approved all retentions.  As such, the Court should deny these requests.

### E.    The Requests are Otherwise Overly Broad and Should be Denied

19.    As described above, the City's requests are essentially limitless and exceed the scope of what is reasonably necessary for the City to conduct a thorough investigation.  Collecting, reviewing, and producing materials will cost the Debtor and its professionals a substantial amount of time and resources.  Requiring the Debtor's key personnel to spend additional time responding to expansive discovery requests consisting of 90 items, and preparing for and attending related depositions, will necessarily disrupt and needlessly divert attention away from the Debtor's substantive plan negotiations and otherwise harm the Debtor's estate.  If the Court is inclined to grant the City's request, the Court should impose material limitations on e-discovery, restricting the timeframe, custodians, and scope.

### III.    The Motion Should be Denied Because There Are Two Pending Proceedings to Which the Debtor Is a Necessary Party

20.    Where there is a pending proceeding to which the proposed Bankruptcy Rule 2004 examiner and examinee are a party, Bankruptcy Rule 2004 may not be used to circumvent the normal discovery rules applicable to adversary proceedings or contested matters under the Bankruptcy Rules.  *Enron Corp.*, 281 B.R. at 840-44 (Bankr. S.D.N.Y. 2004) (applying the "well recognized rule that once an adversary proceeding or contested matter is commenced, discovery

10

AMERICAS 116396309

should be pursued under the Federal Rules of Civil Procedure and not by Rule 2004"). The disputes between the Debtor and the City are already subject to two pending litigations.

21. First, the County has sued the City and other non-debtor affiliates of the Debtor, seeking relief in state court for alleged breach of the City's contractual obligations to the County, among other claims. *See York County v. Appaloosa Management, LP*, 2022-CP-4601756 (S.C. 16th Jud. Cir. Ct. June 9, 2022) (the "***State Court Action***"). Both the City and the affiliates of the Debtor have removed the State Court Action to the United States District Court for the District of South Carolina. *See York County v. Appaloosa Management, LP*, No. 0:22-cv-02167 (D.S.C. July 07, 2022) [D.I. 1] (notice of removal filed by non-debtor defendant affiliates); *York County v. Appaloosa Management, LP*, No. 0:22-cv-02380 (D.S.C. July 22, 2022) [D.I. 1] (notice of removal filed by City). Further, the Debtor's affiliates have sought to transfer the State Court Action to the United States District Court for the District of Delaware. *York County*, No. 0:22-cv-02167 (D.S.C. July 14, 2022) [D.I. 9].

22. Second, on July 14, 2022, the Debtor sued the County by filing the County Adversary Complaint, asserting that breach of contract claims the County has asserted against the City violate the automatic stay and stating a claim for injunctive relief requesting that the Court enjoin the continuation of such action as to the City because the Debtor is a necessary party. [D.I. 205]. Indeed, the City agrees with the Debtor, noting in its notice of removal of the State Court Action that the Debtor is a "necessary and indispensable party" to the State Court Action. *York County v. Appaloosa Management, LP*, No. 0:22-cv-02380 (D.S.C. July 22, 2022) [D.I. 1 ¶2]). If the Court grants the relief requested in the County Adversary Complaint, the County's only option will be to bring those claims against the City before this Court, and the Debtor would be a necessary party to that action. As such, the Court should wait until the County Adversary Complaint and the

AMERICAS 116396309

pending motion to transfer are decided before allowing the City to pursue its requests through Bankruptcy Rule 2004, as the relevant complaints will likely be channeled into this Court.

**IV.    Even if the Motion is Granted, the Court Should Require a Protective Order**

23.    Further, if the Court were inclined to grant the City's request, it should enter a protective order  that does not allow the City to use any of the materials discovered in any litigation outside this Court. *See* Del. Bankr. L.R. 2004-1(c)(ii) (providing that the party providing discovery under a Bankruptcy Rule 2004 examination may move the Court for a protective order); *In re Analytical Sys., Inc.*, 71 B.R. 408, 412 (Bankr N.D. Ga. 1987) ("The Court can, and frequently does, fashion protective orders to safeguard rights of parties to the [Bankruptcy Rule 2004] examination."); *In re Countrywide Home Loans*, 384 B.R. 373, 387 (Bankr. W.D. Pa. 2008) (noting the ability of courts to grant protective orders in the context of a Bankruptcy Rule 2004 examination "to rein in or restrict any attempt to abuse the process").

## RESERVATION OF RIGHTS

24.    The Debtor reserves all of its rights with respect to any subpoena or other discovery request served in this Chapter 11 Case, including without limitation, its right to object on customary grounds of overbreadth, burden, and relevance, to assert any applicable claim of privilege, and to condition any production upon entry of an appropriate protective order. Moreover, to the extent that the City attempts to remedy its failure in the Motion articulate proper bases for the relief requested, the Debtor reserves the right to supplement to reply to any such additional arguments.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that this Court enter an ordering denying the Motion, and granting such other and further relief as this Court deems appropriate.

Dated:  July 28, 2022

Respectfully submitted,

**FARNAN LLP**

/s/ Michael J. Farnan
Joseph J. Farnan, Jr. (Bar No. 100245)
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, Delaware 19801
Telephone:    (302) 777-0300
Email:        farnan@farnanlaw.com
              bfarnan@farnanlaw.com
              mfarnan@farnanlaw.com

**WHITE & CASE LLP**
Thomas E Lauria (admitted *pro hac vice*)
Varoon Sachdev (admitted *pro hac vice*)
Southeast Financial Center
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
Telephone:    (305) 371-2700
Email:        tlauria@whitecase.com
              varoon.sachdev@whitecase.com

J. Christopher Shore (admitted *pro hac vice*)
Stephen Moeller-Sally (admitted *pro hac vice*)
Colin West (admitted *pro hac vice*)
Mark Franke (admitted *pro hac vice*)
Brandon Batzel (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020
Telephone:    (212) 446-4800
Email:        cshore@whitecase.com
              ssally@whitecase.com
              cwest@whitecase.com
              mark.franke@whitecase.com
              brandon.batzel@whitecase.com

William A. Guerrieri (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, IL 60606
Telephone:    (312) 881-5400
Email:        william.guerrieri@whitecase.com

*Counsel to the Debtor and*
*Debtor-in-Possession*