IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|   |   |
|---|---|
| In re:<br><br>GT Real Estate Holdings, LLC,<br><br>Debtor.[1] | ) Chapter 11<br>)<br>) Case No. 22-10505 (KBO)<br>)<br>)<br>) **Hearing Date:**<br>) September 19, 2022 at 9:00 a.m. (ET)<br>) **Objection Deadline:**<br>) September 1, 2022 at 4:00 p.m. (ET) |

### DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF CLARUS PROPERTIES, INC. DBA COLLIERS INTERNATIONAL AS REAL ESTATE BROKER AND COLLIERS INTERNATIONAL VALUATION & APPRAISAL SERVICES, LLC AS APPRAISER TO THE DEBTOR EFFECTIVE AS OF AUGUST 4, 2022

GT Real Estate Holdings, LLC, the above-captioned debtor and debtor in possession (the "*Debtor*"), states as follows in support of this application (this "*Application*"):[2]

### RELIEF REQUESTED

1. The Debtor seeks entry of an order (the "*Order*"), substantially in the form attached hereto as **Exhibit A**, authorizing the Debtor to employ and retain effective as of August 4, 2022 (the "*Retention Date*") (a) Clarus Properties, Inc. dba Colliers International ("*Clarus*") in accordance with the terms and conditions set forth in that certain *Exclusive Right to Sell Listing Agreement (Commercial)* between the Debtor and (b) Clarus dated as of August 11, 2022 (the "*Broker Agreement*") and Colliers International Valuation & Appraisal Services, LLC ("*CIVAS*," collectively with Clarus, "*Colliers*" or the "*Firm*") in accordance with the terms and conditions

---

[1] The Debtor and the last four digits of its taxpayer identification number are: GT Real Estate Holdings, LLC (9589). The location of the Debtor's principal office is 800 South Mint Street, Charlotte, NC 28202.
[2] In support of the Application, the Debtor relies upon and incorporates by reference the Declaration of Jonathan Hickman, Chief Restructuring Officer of GT Real Estate Holdings, LLC, in Support of the Chapter 11 Petition and First Day Pleadings (the "*First Day Declaration*") [D.I. 8]. Capitalized terms used but not defined herein have the meaning given to them in the First Day Declaration.

set forth in that certain *Professional Services Agreement* between the Debtor and CIVAS, dated as of August 2, 2022 (the "***Appraisal Agreement I***") and the certain Professional Services Agreement between Debtor and CIVAS, dated August 16, 2022 (the "***Appraisal Agreement II***," and with Appraisal Agreement I, the "***Appraisal Agreements***", collectively with the Broker Agreement, the "***Engagement Agreements***"). Copies of the Broker Agreement and Appraisal Agreements are attached as **Exhibits 1** and **2** respectively to the Johnson Declaration (as defined herein) and incorporated herein by reference.

2. The services to be provided by Collier's are critical to the Debtor's chapter 11 plan process. The Debtor filed a chapter 11 plan, related disclosure statement, and related disclosure statement motion on Thursday, August 11, 2022.[3] The Debtor is focused on receiving court approval to solicit votes on, confirm, go effective, and make distributions to creditors under the Plan as soon as practicable. Among other things, the Plan contemplates a marketing and sale process for the Project (as defined in the Plan), which will be led by Clarus, and the liquidation analysis to be filed in support of the Plan will rely, in part, on the appraisal of CIVAS. The approval of the Engagement Agreements is necessary so that the Disclosure Statement and Plan process can continue without uncertainty and the costs of any consequential delay.

3. In support of this Application, the Debtor relies upon and incorporates by reference the *Declaration of Bryan T. Johnson in Support of Debtor's Application for Entry of an Order Authorizing the Employment and Retention of Colliers as Real Estate Broker and Appraiser to the Debtor Effective as of August 4, 2022* (the "***Johnson Declaration***"), attached hereto as **Exhibit B**.

---

[3] *Chapter 11 Plan of Reorganization of GT Real Estate Holdings, LLC* [D.I. 295] (the "***Plan***"); *Disclosure Statement for the Chapter 11 Plan of Reorganization of Gt Real Estate Holdings, LLC* [D.I. 296] (the "***Disclosure Statement***"); *Debtor's Motion for Entry of order (I) Approving (A) the Plan Support and Sponsorship Agreement, (B) the Disclosure Statement and Form and Manner of Notice Thereof, (C) the Plan Solicitation and Voting Procedures, (D) the Forms of Ballots and Notices Related to the Plan and Confirmation Hearing, and (E) the Confirmation Timeline and (II) Granting Related Relief* [D.I. 297]

**JURISDICTION, VENUE, AND PREDICATES FOR RELIEF**

4.  The United States Bankruptcy Court for the District of Delaware (the "*Court*") has jurisdiction to consider this Application under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012 (Sleet, C.J.). This is a core proceeding under 28 U.S.C. § 157(b). Venue of this chapter 11 case and this Application in this District is proper under 28 U.S.C. §§ 1408 and 1409.

5.  The predicates for the relief requested by this Application are sections 327(a) and 328(a) of title 11 of the United States Code (the "*Bankruptcy Code*"), rules 2014(a) of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"), and rule 2014-1 and 2016-2(h) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "*Local Bankruptcy Rules*").

6.  Pursuant to Local Bankruptcy Rule 9013-1(f), the Debtor consents to the entry of a final judgment or order with respect to this Application if it is determined that this Court lacks Article III jurisdiction to enter such final order or judgment absent consent of the parties.

**BACKGROUND**

7.  On June 1, 2022 (the "*Petition Date*"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the Court. The Debtor continues to operate its business and manage its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this chapter 11 case. To date, no committees have been appointed or designated.

8.  The Debtor was created to, among other things, own and develop a mixed-use, pedestrian-friendly community, sports, and entertainment venue, that would also include a new

headquarters and practice facility for the Carolina Panthers, a National Football League team, situated on a 240-acre site located in Rock Hill, South Carolina (the "*Project*"). The Debtor acquired a site for the Project and entered into various agreements with certain governmental authorities as well as providers of design, construction and other services to support the development of the Project.

9. Additional factual background and information regarding the Debtor, including its business operations, its corporate and capital structure, and the events leading to the commencement of this chapter 11 case, are set forth in detail in the First Day Declaration.

10. On June 28, 2022, the Debtor filed applications to employ White & Case LLP [D.I. 149], as counsel, Farnan LLP, as co-counsel [D.I. 150], Alvarez & Marsal North America LLC [D.I. 151], to provide a chief restructuring officer and additional personnel, and Kroll Administrative Services LLC, as administrative agent [D.I. 152] (collectively, the "**Initial Retention Applications**") and *Debtor's Motion for Establishment of Procedures for Interim Compensation and Reimbursement of Expenses for Chapter 11 Professionals and Committee Members (if Any)* [D.I. 153] (the "**Interim Compensation Motion**").

11. The Court granted the Initial Retention Applications and Interim Compensation Motion on July 18, 2022. [D.I. 217-18, 220, 225, 227].

## COLLIERS'S QUALIFICATIONS

12. The Debtor seeks to retain Colliers as its real estate broker and appraiser in this Chapter 11 Case based upon Colliers' excellent reputation for its real estate brokerage and appraisal services. Colliers is the local branch of a premier full service real estate brokerage firm with a global presence, operating in 62 countries, among other services provided. Colliers also has a strong real estate brokerage practice in the Rock Hill, South Carolina market, having sold

over 600 commercial acres in the area, as well as the broader York County market. As a result, Colliers has the depth to market the Properties to local, national, and global buyers through their strategic marketing channels. Further, the depth of Colliers capabilities means that they will be able to promptly move forward with the real estate services needed, including the full and comprehensive appraisal required for the Debtor's unique real properties. Colliers was selected subsequent to the Debtor conducting interviews and soliciting proposals from a number of other well-qualified real estate professionals. Finally, the Debtor notes that Colliers' compensation structure (discussed below) is competitive.

## SERVICES TO BE PROVIDED[4]

### I. Scope of Services

13. The Debtor seeks to employ and retain Clarus to render real estate broker services (the "**Broker Services**") and CIVAS to render appraisal services (the "**Appraisal Services**," collectively with the Broker Services, the "**Services**") concerning approximately 240 acres of land and improvements located at 280 Mt. Gallant Road, Rock Hill, SC 29730 and other real estate owned by the Debtor, including the Waterford Golf Club, located at 1900 Clubhouse Road, Rock Hill, SC 29730 (the "**Waterford Golf Club**", collectively with the aforementioned real estate, the "**Properties**"). The Broker Services include:

    a. Directing concentrated efforts in bringing about a sale.

    b. Advertising said Properties as Clarus deems advisable.

    c. Encouraging cooperating brokers in sale of said Properties by furnishing information and assistance.

---

[4] Capitalized terms used but not defined herein have the meaning given to them in the Broker Agreement and Appraisal Agreements as applicable.

   d.  Keeping the Debtor informed as to the progress made toward finding a purchaser for said Properties.

   e.  Making an earnest and continued effort to sell the Properties.

Broker Agreement § 11.

  14.  The Appraisal Services include:

   a.  Providing an appraisal of real estate property in accordance with USPAP and the Code of Ethics and Certifications Standards of the Appraisal Institute and State Licensing Laws.

   b.  Research relevant market data and perform necessary analysis.

   c.  Perform interior/exterior observation of the subject property.

Appraisal Agreement I, at 2.

  15.  The Debtor does not intend that the Services to be rendered by Colliers will duplicate the services performed by any other retained professional, including Farnan LLP, Alvarez & Marsal North America, LLC, White & Case LLP, and Kroll Restructuring Administration LLC. The Debtor may file applications to employ additional professionals, but the Debtor does not anticipate that any such future professionals (if any) would duplicate Colliers' Services. In any event, the Debtor will take appropriate steps to minimize the overlap between the Services rendered by Colliers and any other professional that the Debtor retains in connection with this Chapter 11 Case.

  **II.**  **Indemnification**

   a.  **Indemnification Under the Broker Agreement**

  16.  Subject to Order of the Bankruptcy Court approving Colliers' retention, the Debtor agreed in the Broker Agreement to indemnify and hold harmless (the "***Clarus Indemnification***

*Provisions*") Clarus and its directors, officers, partners, members, employees and agents (Clarus and each such entity or person being a "*Clarus Indemnified Party*") from and against any and all losses, damages, or expenses (including courts costs and reasonable attorneys' fees) resulting from a breach of the Debtor's duties and obligations under the Broker Agreement or the negligence, gross negligence, willful misconduct or fraud of the Debtor or its employees, agents, and contractors, as incurred, to which such Clarus Indemnified Party may become subject.

17.　The Clarus Indemnification Provisions were negotiated between the Debtor and Clarus at arm's length and in good faith, and the Debtor respectfully submits that the terms are reasonable and in the best interests of the Debtor, its estate and its creditors.

　　　　b.　**Indemnification Under the Appraisal Agreement**

18.　Subject to Order of the Bankruptcy Court approving Colliers' retention, the Debtor agreed in the Appraisal Agreement to defend, indemnify and hold harmless (the "*Appraisal Indemnification Provision*") CIVAS and its parent, subsidiaries, affiliates, officers, directors, employees, and agents (CIVAS and each such entity or person being a "*CIVAS Indemnified Party*") from and against any and all losses, damages, claims, and expenses (including costs and reasonable attorneys' fees) (collectively, "*CIVAS Losses*"), sustained or incurred by a third party, as a result of the negligence or intentional acts or omissions of the Debtor (including any failure to perform any duty imposed by law), any misrepresentation, distortion or if Debtor fails to provide complete and accurate information to CIVAS, for which recovery is sought against the CIVAS Indemnified Parties. The Debtor also agreed to indemnify and hold harmless the CIVAS Indemnified Parties from any claims, expenses, judgments or other items or costs (each, a CIVAS Loss) arising as a result of the Debtor's failure or the failure of any of the Debtor's agents to provide a complete copy of the Appraisal to any third party. The Debtor and CIVAS have agreed

that the Debtor shall have no obligation to indemnify and hold harmless a CIVAS Indemnified Party for any CIVAS Losses that are caused by the negligent act or willful misconduct of CIVAS.

19. The CIVAS Indemnification Provisions were negotiated between the Debtor and CIVAS at arm's length and in good faith, and the Debtor respectfully submits that the terms are reasonable and in the best interests of the Debtor, its estate and its creditors.

## COLLIERS'S DISINTERESTEDNESS

20. To the best of the Debtor's knowledge and as disclosed herein and in the Johnson Declaration, (a) Colliers is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtor's estate, and (b) Colliers has no connection to the Debtor, its creditors, or other parties in interest, except as may be disclosed in the Johnson Declaration.

21. Colliers will review its files periodically during the pendency of this Chapter 11 Case to ensure that no conflicts or other disqualifying circumstances arise. If any new relevant facts or relationships are discovered or arise, Colliers will use reasonable efforts to identify such developments and will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a) and Local Bankruptcy Rule 2014-1(a).

## PROFESSIONAL COMPENSATION

22. As more fully set forth in the Engagement Agreements, Colliers' compensation will be as follows (the "***Fee Structure***"):

- Clarus will earn a brokerage commission of 3.5% of the gross purchase price (the "***Brokerage Commission***"), provided that if the Project is sold (a) by the Debtor to the City or (b) by the Debtor to the Property Trust and the Property Trust sells it to

the City, Clarus will not earn a Brokerage Commission for such sales. For the avoidance of doubt, Clarus shall be entitled to a Brokerage Commission if the Property Trust sells the Project to a third party (other than the City of Rock Hill) and nothing herein shall limit Clarus' ability to negotiate and enter into an agreement with the City of Rock Hill to run a marketing and sale process as broker for the City of Rock Hill (following any sale of the Project to the City of Rock Hill). The Brokerage Commission will be incurred if and when a closing of the sale occurs and a deed is delivered and shall be payable solely out of the proceeds of the closing of the sale.

- Clarus will earn a separate brokerage commission of 3.5% of the gross purchase price (the "*Waterford Brokerage Commission*") upon a sale of the Debtor's equity interests in the Waterford Golf Club. The Waterford Brokerage Commission will be incurred if and when a closing of the sale occurs and the equity interests are transferred to a third party, or substantially all of the assets of the subsidiaries are sold to a third party, and shall be payable solely out of the proceeds of the closing of the sale.

- CIVAS will earn of a flat fee of $18,000.00 for the appraisal of the Debtor's property located at 280 Mt. Gallant Road, Rock Hill, SC and a flat fee of $15,000.00 for the appraisal of the Waterford Golf Club, totaling $33,000.000 (the "*Appraisal Fee*"). The Appraisal Fee will be incurred upon the delivery to Debtor of the appraisal. Additional appraisal work and/or litigation support will be billed at $350/hour for litigation support and court preparation (including travel) and $450/hour for expert testimony and depositions.

23. The Fee Structure that Colliers may earn in this Chapter 11 Case is the same or competitive to the commissions and fees that Colliers charges outside of representing debtors in chapter 11 cases and is competitive with other real estate brokers and appraisers representing parties who are not debtors in chapter 11 cases. The Debtor believes that the Fee Structure set forth in the Engagement Agreements includes reasonable terms and conditions of employment and should be approved under section 328(a) of the Bankruptcy Code.

24. Consistent with the Engagement Agreements, any expenses incurred by Colliers will not be charged to the Debtor or its estate.

25. The Debtor understands that Colliers intends to apply to this Court for allowance of its fees in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any orders entered in this Chapter 11 Case governing professional compensation.

26. Consistent with its ordinary practice and the practice of real estate brokerage and appraisal firms in other chapter 11 cases whose fee arrangements are not hours-based, Colliers does not maintain contemporaneous time records or conform to a schedule of hourly rates for its professionals. Given the foregoing, the Debtor requests that, notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the guidelines of the Office of the United States Trustee, and Local Bankruptcy Rule 2016-2, Colliers shall not be required to keep time records with respect to services rendered pursuant to the Engagement Agreements.

27. The Debtor submits that the retention of Colliers on the terms and conditions set forth herein and in the Engagement Agreements are in the best interests of the Debtor, its estate, and its creditors and other parties in interest.

## SUPPORTING AUTHORITY

28. The Debtor seeks to retain Colliers as its real estate broker and appraiser pursuant to section 327(a) of the Bankruptcy Code, which provides that a debtor, subject to Court approval:

> [M]ay employ one or more attorneys, accountants, ***appraisers***, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C. § 327(a) (emphasis added). Courts have construed real estate brokers to be "other professionals" within the scope of section 327(a). *In re Kanuika*, No. 90-6453 (JPF), 1990 U.S. Dist. LEXIS 17167, *3 (E.D. Penn. Dec. 15, 1990) ("It is well-settled that realtors are 'professional persons' under § 327(a).") (citations omitted); *In re Indian River Homes, Inc.*, 108 B.R. 46, 50 n.13 (D. Del. 1989), *appeal dismissed*, 909 F.2d 1476 (3d Cir. 1990) ("Bankruptcy courts routinely hold that real estate brokers are professional persons for purposes of § 327(a).").

29. Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a).

30. Further section 328(a) of the Bankruptcy Code provides, in relevant part, that a debtor, "with the court's approval, may employ or authorize the employment of a professional person under section 327 … on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."

31. The Debtor submits that for all the reasons stated above and in the Johnson Declaration, the retention and employment of Colliers as broker to the Debtor is warranted. Further, as stated in the Johnson Declaration, Colliers is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtor's estate and has no connection to the Debtor, its creditors, or other parties in interest in this Chapter 11 Case, except as may be disclosed in the Johnson Declaration.

32. Additionally, given the numerous issues that Colliers may be required to address in performing its Services for the Debtor pursuant to the Engagement Agreements, in light of the unique and challenging nature of the Debtor's real properties, Colliers' commitment to the variable time requirements and effort necessary to address all such issues as they arise, and the price for Colliers' services for engagements of this nature, the Debtor believes that the terms and conditions of the Engagement Agreements (including the Fee Structure and Indemnification Provisions) are fair and reasonable under the standards set forth in section 328(a) of the Bankruptcy Code. Indeed, the Debtor believes that the Fee Structure appropriately reflects (i) the nature and scope of Colliers' services; (ii) Colliers' substantial real estate experience; and (iii) the fee structures typically utilized by Colliers and other commercial real estate brokerage and appraisal firms of a similar peerage.

33. The Debtor, therefore, requests a waiver of the requirements of Bankruptcy Rule 2016, Local Bankruptcy Rule 2016-2, and any order governing the interim compensation and reimbursement of expenses to professionals (including the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Chapter 11 Professionals and Committee Members* [D.I. 227]) as to Colliers, with respect to any requirement to submit detailed

time entries. *See* Local Bankr. R. 2016-2(h) (permitting a Court to waive requirements of Local Bankruptcy Rule 2016-2 for cause). The detailed filing requirements of Bankruptcy Rule 2016 and the informational requirements of Local Bankruptcy Rule 2016-2 would require the expenditure of unnecessary time and fees in compiling time records and preparing fee applications and could hinder Colliers from performing the Services in as efficient a manner possible. Moreover, because Colliers' compensation will not be a function of the time spent working on this engagement, and instead constitutes a success fee, keeping time records is completely unnecessary and would be unduly burdensome on Colliers.

34.     Finally, the Debtor believes that employment of the Broker effective as of August 4, 2022 is warranted under the circumstances of this Chapter 11 Case. The Broker has provided and will continue to provide valuable services with regard to the sale of the Properties. *See In re Ark Co.*, 798 F.2d 645, 648 (3d Cir. 1986) ("[T]he bankruptcy courts have the power to authorize retroactive employment of counsel and other professionals under their broad equity power."); *Indian River Homes*, 108 B.R. at 50-53 (approving retroactive approval of broker); *see also* Local Bankr. R. 2014-1(b) ("the retention shall be effective as of the date of the motion was filed, unless the Court orders otherwise"). In determining whether to grant retroactive approval of a retention application, courts consider (among other things) whether there was "time pressure to begin service" and "the extent to which compensation to the applicant will prejudice innocent third parties" are relevant factors. *Ark. Co.*, 798 F.2d at 650. Here, it has been and continues to be important to appraise the value of, market, and negotiate the sale of the Properties to maximize the value of the Debtor's estate. Colliers began its work on August 4, 2022, even before the execution of all of the Engagement Agreements. It has since provided and continues to provide beneficial and necessary real estate broker and appraisal services to the Debtor.

35. In light of the foregoing, the Debtor submits that the retention of Colliers is in the best interests of its estate.

## NOTICE

36. The Debtor will provide notice of this Application to the following parties: (a) the Office of the United States Trustee for the District of Delaware; (b) the holders of the 20 largest unsecured claims against the Debtor; (c) the DIP Lender;[5] (d) the Construction Manager; (e) the United States Attorney for the District of Delaware; (f) the state attorney general for South Carolina; (g) the Internal Revenue Service; (h) the United States Securities and Exchange Commission; (i) the City; (j) the County; (k) the South Carolina Department of Revenue; (l) the Banks; (m) any such other party entitled to notice pursuant to Local Bankruptcy Rule 9013-1(m); and (n) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtor submits that, in view of the nature of the relief requested, such notice is sufficient and no other or further notice need be provided.

## NO PRIOR REQUEST

37. No previous request for the relief sought herein has been made by the Debtor to this or any other Court.

[*Remainder of page intentionally left blank*]

---

[5] The term "DIP Lender" is defined in the *Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to Obtain Post-Petition Financing, (II) Granting Liens and Super-Priority Claims, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [D.I. 9].

**CONCLUSION**

The Debtor respectfully requests that the Court enter the Order, substantially in the form attached hereto, granting the relief requested in this Application and such other and further relief as the Court deems appropriate under the circumstances.

Dated: August 17, 2022
Charlotte, NC

                                       Respectfully submitted,

                                       GT REAL ESTATE
                                       HOLDINGS, LLC

                                       By:    /s/*Jonathan Hickman*
                                       Name: Jonathan Hickman
                                       Title:  Chief Restructuring Officer