## <u>EXHIBIT B</u>

**Westbrook Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| GT Real Estate Holdings, LLC, | ) Case No. 22-10505 (KBO) |
| | ) |
| Debtor.[1] | ) |
| | ) |
| | ) |
| | ) |
| | ) |

**DECLARATION OF MARGARET R. WESTBROOK IN SUPPORT OF**
**DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING**
**THE EMPLOYMENT AND RETENTION OF K&L GATES LLP AS**
**SPECIAL COUNSEL EFFECTIVE AS OF SEPTEMBER 7, 2022**

I, Margaret R. Westbrook, pursuant to 28 U.S.C. § 1746, hereby declare that the

following is true and correct to the best of my knowledge, information, and belief:

1.      I am a partner of the firm of K&L Gates LLP ("**K&L Gates**" or the "**Firm**"), an

international law firm, which maintains offices for the practice of law at, among other locations,

Raleigh, Charlotte and Research Triangle Park, North Carolina, as well as Charleston, South

Carolina.  I am a member in good standing of the Bar of the State of North Carolina and I have

been admitted to practice in the state courts of the same.  There are no disciplinary proceedings

pending against me.

2.      I submit this declaration (the "**Declaration**") pursuant to sections 327(e), 328(a),

and 330 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2014 and 2016 of

the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2014-1 and

2016-1 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy

---

[1]      The Debtor and the last four digits of its taxpayer identification number are:  GT Real Estate Holdings, LLC (9589).  The location of the Debtor's principal office is 800 South Mint Street, Charlotte, NC 28202.

Court for the District of Delaware (the "**Local Rules**") in support of the *Debtor's Application for Entry of an Order Authorizing the Employment and Retention of K&L Gates LLP as Special Counsel Effective as of September 7, 2022* (the "**Application**"), filed contemporaneously herewith by the Debtor.[2]  This Declaration is contemplated by Section D.1 of the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases* (the "**U.S. Trustee Guidelines**").  Except as otherwise noted, I have personal knowledge of the matters set forth herein.[3]

### K&L GATES'S QUALIFICATIONS AND SCOPE OF SERVICES

3.      K&L Gates's representation of the Debtor will be led by Margaret R. Westbrook, and will be assisted by other K&L Gates attorneys and paraprofessionals, including, Stephen R. McCrae, Jennifer Thiem, Caitlin Nevin, Jon Edel, Zechariah Etheridge and Katie Conrad.  These K&L Gates attorneys and paraprofessionals are specialized in the local law matters for which the Debtor requires advice.

4.      K&L Gates's representation of the Debtor will be limited to South Carolina legal advice, including real estate advice, and those additional matters for which the Firm expressly agrees to provide representation.  Neither the Debtor, K&L Gates, nor Farnan or White & Case anticipate any overlap in responsibility or duplication of efforts between K&L Gates, on the one hand, and Farnan or White & Case, on the other hand.  In any event, out of an abundance of caution and a desire to effectively provide legal services to the Debtor, Farnan and White & Case will coordinate efforts with K&L Gates to avoid the duplication of work and unnecessary fees.

---

[2]      Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

[3]      Certain of the disclosures herein relate to matters within the knowledge of attorneys or employees of K&L Gates and are based on information provided by them.

5.      K&L Gates is an international law firm with more than 1,750 attorneys in over 40 cities with substantial experience and expertise in numerous areas, including real estate law.  The attorneys at K&L Gates involved in this matter have extensive experience representing clients in complex real estate matters.

### PROFESSIONAL COMPENSATION

6.      K&L Gates will accept, as compensation for its work during the chapter 11 case, such sums as may be allowed by the Court in accordance with the Bankruptcy Code.  Additionally, K&L Gates will seek compensation for all time and expenses associated with its retention in this chapter 11 case, including the preparation of the Application, this Declaration and related documents, as well as any monthly fee statements and/or interim and final fee applications.  K&L Gates intends to apply to the Court for allowance of compensation on an hourly basis as well as reimbursement of out-of-pocket expenses incurred on and after September 7, 2022 in connection with the services to be provided, subject to court approval and in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any other applicable procedures or orders of this Court, and the U.S. Trustee Guidelines.

7.      The Debtor and K&L Gates entered into the Engagement Agreement on September 9, 2022.  Under the Engagement Agreement, K&L Gates will be providing professional services to the Debtor at the then-current standard rate charged by the Firm for such services.  The current hourly rates for the attorneys and paraprofessionals expected to work on the matter are Margaret R. Westbrook ($1,045), Stephen R. McCrae ($775), Jennifer Thiem ($815), Caitlin Nevin ($565), Jon Edel ($700), Zechariah Etheridge ($500), and Katie Conrad ($385).  K&L Gates has advised the Debtors that the hourly rates set forth above are subject to periodic increases in the normal course of the Firm's business, often due to the increased experience of a particular

professional.  Consistent with the Firm's policy with respect to its other clients, K&L Gates will continue to charge the Debtors for reimbursement of costs, out of pocket and office expenses, and disbursements incurred in the rendition of services.  These include but are not limited to: photocopying, printing, facsimile, media duplication, legal research, long distance telephone and conference calls, secretarial overtime, couriers, business meals, and off-site storage retrieval, and other costs, expenses, and disbursements as set forth in the Engagement Agreement.

8.      K&L Gates also intends to make a reasonable effort to comply with U.S. Trustee requests for information and additional disclosures as set forth in the U.S. Trustee Guidelines, both in connection with this Application and the interim (if any) and final fee applications to be filed by K&L Gates in this chapter 11 case.

9.      Other than as set forth above and in the Engagement Agreement, no arrangement is proposed between the Debtor and K&L Gates for compensation to be paid for K&L Gates's representation of the Debtor.

10.     Pursuant to Bankruptcy Rule 2016(b), K&L Gates has no agreement with any other entity to share any compensation received by K&L Gates, except as permitted under section 504(b)(1) of the Bankruptcy Code.

**NO ADVERSE INTEREST**

11.     To the best of my knowledge, K&L Gates, as required by section 327(e) of the Bankruptcy Code, does not represent or hold any interest adverse to the Debtor or its estate with respect to matters on which K&L Gates is to be retained in this chapter 11 case.

12.     In connection with its proposed retention by the Debtor to represent the Debtor in the chapter 11 case, K&L Gates undertook to determine whether it had any conflicts or other relationships that might cause it to hold or represent an interest adverse to the Debtor.  Specifically,

4

K&L Gates obtained from the Debtor and its agents the names of individuals and entities that may be parties in interest in this chapter 11 case (the "**Potential Parties in Interest**"), and such parties are listed on **Exhibit 2** hereto, categorized for ease of reference.[4]

13.     K&L Gates has searched on its electronic database for its connections to the entities listed on **Exhibit 2**.  The information listed on Exhibit 2 may have changed without K&L Gates's knowledge and may change during the pendency of this chapter 11 case.  Accordingly, K&L Gates will update this Declaration as necessary and when K&L Gates becomes aware of additional material information.

14.     The results of K&L Gates's searches of the Potential Parties in Interest are set forth in **Exhibit 3**.  Specifically, **Exhibit 3** identifies that K&L Gates currently represents, or has represented within the last two (2) years, certain individuals, entities or their affiliates who are Potential Parties in Interest in matters unrelated to the Debtor, the chapter 11 case, or such entities' claims against and interests in the Debtor.[5]

15.     As noted in **Exhibit 3**, K&L Gates currently represents certain contractors and subcontractors to the Debtor (*e.g.*, Barton Maloy Company, Bolon AB, and Williams Scotsman, Inc.) and other general creditors of the Debtor (*e.g.*, Duke Energy Corp., LandDesign, Inc., and Terracon Consultants, Inc.).  Nevertheless, the matters for which K&L Gates represents the

---

[4]     The categorization of an entity is neither a concession as to whether such entity has a valid claim against the Debtors nor as to the nature of such claim.

[5]     The term "client" means an entity listed as a client or affiliate of a client in an active or closed matter in K&L Gates's conflicts search system.  To the extent that a Potential Party in Interest falls under more than one category, such Potential Party in Interest is disclosed below in only one category.  Furthermore, the inclusion of a Potential Party in Interest within one or more categories in the Application, this Declaration, or otherwise is for convenience only and is not, and shall not be construed as, an acknowledgement or admission regarding any Potential Party in Interest, including with respect to any claims or relationships that such Potential Party in Interest may have with the Debtors.

foregoing entities—and, indeed, all entities listed on **Exhibit 3**, hereto—are unrelated to the chapter 11 case and present no conflicts with respect to the proposed retention of K&L Gates.

16.     Further, for the avoidance of doubt, none of the entities listed in **Exhibit 3** represented more than 1% of K&L Gates's revenue for the twelve-month period from September 2021 through August 2022.

17.     At this time, I am unaware of any conflict that would cause K&L Gates's retention to be improper under section 327(e) of the Bankruptcy Code.  If, at a later date, K&L Gates discovers any information that is contrary or pertinent to the statements made herein, K&L Gates will promptly disclose such information to the Bankruptcy Court and to the U.S. Trustee and such other parties in interest as may be required under noticing procedures applicable to the chapter 11 case.

## STATEMENT REGARDING U.S. TRUSTEE GUIDELINES

18.     The following information is provided pursuant to paragraph D.1 of the U.S. Trustee Guidelines:

**Question:**     Did you agree to any variations from, or alternatives to, your standard or customary billing arrangements for this engagement?

**Answer:**     No.

**Question:**     Do any of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case?

**Answer:**     No.

**Question:**     If you represented the client in the twelve (12) months prepetition, disclose your billing rates and material financial terms for the prepetition engagement, including any adjustments during the twelve (12) months prepetition. If your billing rates and material financial terms have changed postpetition, explain the difference and the reasons for the difference.

**Answer:**     K&L Gates did not represent the Debtor in the 12 months prior to the Petition Date.

**Question:**    Has your client approved your prospective budget and staffing plan, and, if so, for what budget period?

**Answer:**    K&L Gates is presently in the process of working with the Debtor to prepare a budget and staffing plan.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.


Dated: September 20, 2022
      Raleigh, NC


                              */s/Margaret R. Westbrook*
                              Margaret R. Westbrook

# <u>EXHIBIT 1</u>

**Engagement Agreement**

DocuSign Envelope ID: 52133E2A-4EB3-46E7-8BA1-D064F8009F16



September 9, 2022

Margaret R. Westbrook
Margaret.westbrook@klgates.com

T +919-743-7311

GT Real Estate Holdings, LLC
Jonathan Hickman, Chief Restructuring Officer
800 South Mint Street
Charlotte, NC 28202
jhickman@alvarezandmarsal.com

**Re:  Confirmation of Engagement**

Dear Mr. Hickman:

Thank you for asking K&L Gates LLP (the "Firm" or "K&L Gates") to represent GT Real Estate Holdings, LLC ("GT Real Estate").  We welcome this opportunity and look forward to working with you on this engagement.

I enclose our Terms of Engagement for Legal Services (the "Terms") which supplement this letter and include additional information regarding our legal services, our relations with our clients, our billing and payment arrangements, potential conflicts, and other matters.  These Terms will apply to all matters on which we may represent you, except as you and we may otherwise expressly agree.

Please review this letter and the Terms carefully.  If they are not consistent with your understanding of our engagement in any respect or if you have any questions concerning the nature and terms of our engagement, please contact me as soon as possible so that we can promptly address your concerns.

**The Scope of Our Engagement**

The Firm is being engaged to act as counsel solely for GT Real Estate and not for any affiliated entity (including parents and subsidiaries), shareholder, partner, member, manager, director, officer or employee not specifically identified herein.

We understand that we are to act as special counsel to the Debtor, providing advice regarding South Carolina law including with regard to real estate, and to address those additional matters for which the Firm expressly agrees to provide representation.  K&L Gates will only provide legal

K&L GATES LLP
4350 LASSITER AT NORTH HILLS AVENUE   SUITE 300   POST OFFICE BOX 17047   RALEIGH   NC 27619-7047
T +1 919 743 7300  F +1 919 743 7358   klgates.com

313364961.3

DocuSign Envelope ID: 52133E2A-4EB3-46E7-8BA1-D064F9009F36

services.  We have not been retained, and expressly disclaim any obligation, to provide business or investment advice.  We understand that our retention may be approved by the United States Bankruptcy Court for the District of Delaware pursuant to Section § 327(e) of the United States Bankruptcy Code and that the fees awarded shall be subject to review by the Court pursuant to the Code and the Local Rules and Procedures of the United States Bankruptcy Court for the District of Delaware.

## Our Charges

Our statements for professional services will be substantially based upon the amount of time spent by lawyers, paralegals, and other professionals who perform services on your behalf and their respective hourly rates as then in effect.  Those hourly rates vary by office across the Firm, take into account the timekeepers' experience in particular areas, and are adjusted periodically.  Our charges for fees, disbursements, and other charges and the basis for our invoices are addressed in more detail in the enclosed Terms.

## Our Billing and Payment Arrangements

We will generally render statements for professional services and related charges on a monthly basis and expect payment to be made within 30 days of your receipt of our statement, without regard to the consummation or outcome of the matter for which we have been engaged.  In the event our statements are not timely paid, we reserve the right to suspend our services until satisfactory payment arrangements are made or to terminate our services if such arrangements are not made and if such termination is otherwise appropriate.  You may, of course, terminate our services at any time.

## Our Staffing of Your Engagement and Communications with You

I will be your principal contact with respect to the Firm's representation of GT Real Estate.  My current hourly rate for this matter is $1,045. My colleagues along with their hourly rates are as follows:  Steve McCrae ($775), Caitlin Nevin ($565), Jon Edel ($700), Zechariah Etheridge ($500) and our paralegal, Katie Conrad ($385) will be assisting in this matter.

Our representation of you will be staffed by other partners, associates and other professional staff as may be appropriate under the circumstances.  We will endeavor to keep you apprised of significant developments in the course of our engagement, to consult with you about our work on an ongoing basis and to obtain your direction on critical issues.

You should contact me with any questions you may have about our work or any other aspect of our representation of you.  You can reach me at the office (919-743-7311) or on my mobile telephone (919-961-7729) at your convenience.

2

September 9, 2022

**Conflicts of Interest**

We have searched the Firm's conflicts database and have disclosed to you any ethical conflicts of interest, as defined by the applicable rules of professional conduct, that existed at the time. Such conflicts, if any, have been resolved to your and to our satisfaction. With respect to conflicts of interest that may arise in the future during our engagement by you, the Terms includes a Conflict of Interest section in which you agree to a limited, prospective waiver.  This means that, if all the conditions set forth therein are met, and provided that the matter is not substantially related to the matters we handled or are handling for you, the Firm 1) may represent another client in a matter in which its interests are adverse to your interests, and 2) may represent as a client any individual or entity that is or has been adverse to you.  Please review this section, as well as all other sections of the Terms, in detail.

**Our Agreement**

In providing legal services to you, absent timely advice from you to the contrary, we will act in reliance upon the understanding that this letter and the enclosed Terms constitute our mutual understanding with respect to the terms of our retention.  If you proceed with the use of our services, please sign and return this letter.

On behalf of K&L Gates, I thank you for the opportunity to represent GT Real Estate.  We look forward to serving you.

Sincerely,

*Margaret R Westbrook*
DocuSigned by:
25761B9EF7CB498...

Margaret R. Westbrook

Enclosure:  Terms of Engagement for Legal Services

I confirm our engagement of K&L Gates LLP as set forth herein and in the enclosed Terms of Engagement.

GT REAL ESTATE HOLDINGS, LLC

*Jonathan Hickman*
DocuSigned by:
935F5D35B649422...

Jonathan Hickman
Chief Restructuring Officer

Date: 9/9/2022

3

September 9, 2022

# K&L GATES LLP

## TERMS OF ENGAGEMENT FOR LEGAL SERVICES

Thank you for selecting K&L Gates LLP ("K&L Gates") to represent you and to provide legal services as described in our engagement letter.  These Terms of Engagement for Legal Services (the "Terms"), together with our engagement letter, set forth the basis upon which K&L Gates will provide legal services to you.  Absent a contrary agreement between us, we will understand that our engagement letter and these Terms supersede any prior oral understandings between us and together form the contract ("Engagement Contract") for our initial engagement and any subsequent assignments upon which you and we may mutually agree.

We believe it is important to establish clearly the basic terms of our engagement at the outset.  Accordingly, if you have any questions concerning these Terms, please contact the lawyer responsible for your engagement so that your questions or concerns may be addressed and resolved promptly.

### INTRODUCTION

K&L Gates comprises multiple affiliated entities: a limited liability partnership named K&L Gates LLP organized under the laws of Delaware ("K&L Gates-US," the "Firm," or "we" or "us" as the context requires) and maintaining offices in certain states throughout the United States and in a number of international multiple affiliated entities.[1]

### OTHER K&L GATES ENTITIES

You agree that, as your agent, we may engage other K&L Gates entities to assist us in carrying out our engagement, where appropriate and with notice to you.

Numerous countries in which our offices are located have enacted Anti-Money Laundering ("AML") laws.  If K&L Gates lawyers in any of these offices are engaged to assist you in matters within the scope of our engagement, it will be necessary to comply with the applicable AML laws.  In connection therewith, we or lawyers from the appropriate office may be required to obtain additional, specific evidence of client identity from you and/or to report certain transactions to the authorities.  If these AML requirements are applicable, you will be informed of the details needed for compliance.

### OUR LAWYER-CLIENT RELATIONSHIP

The Firm has been engaged to represent only the client(s) named in our engagement letter ("you" or the "Client"), even if someone other than you, including an insurer, is responsible for paying, or has agreed to pay, our statements.  Accordingly, absent a specific, separate engagement to represent such other persons or entities, (1) if our Client is an individual, the Firm has not agreed to represent, and is not representing, any other person or any affiliated entity; (2) if our Client is a corporation, partnership, joint venture or other entity, the Firm has not agreed to represent, and is not representing, any of your constituents, including directors, officers, employees, managing agents, partners, members, shareholders, affiliates (including parents and subsidiaries) or other persons associated with you; and, (3) if our Client is a trade association or other member organization, the Firm has not agreed to represent, and is not representing, any director, officer, member of or other entity represented by you or any of your other constituents.

In addition, the Firm's engagement to represent you is limited to the matter(s) described in our engagement letter and to any additional matters for which the Firm expressly agrees to provide legal representation.

---

[1] K&L Gates comprises multiple affiliated entities:  a limited liability partnership named K&L Gates LLP organized under the laws of Delaware ("K&L Gates-US," the "Firm,: or "we" or "us" as the context requires) and maintaining offices in certain states throughout the United States and in Beijing ("K&L Gates LLP Beijing Representative Office"), Berlin, Doha, Dubai, Frankfurt, Munich, Seoul ("K&L Gates LLP Seoul Foreign Legal Consultant Office"), and Shanghai ("K&L Gates LLP Shanghai Representative Office"); an Australian multi-disciplinary partnership maintaining offices in Brisbane, Melbourne, Perth and Sydney ("K&L Gates-AUS"); a limited liability partnership (also named K&L Gates LLP); incorporated in England and Wales and maintaining offices in London and Paris ("K&L Gates-UK"); a Delaware general partnership ("K&L Gates Belgium") maintaining an office in Brussels; a private limited company registered with the Luxembourg Register of Commerce and Companies ("K&L Gates Volckrick S.à.r.l") with an office in Luxembourg;  a Hong Kong general partnership ("K&L Gates, Solicitors") maintaining an office in Hong Kong; a professional association established and organized under the laws of Italy named Studio Legale Associato with an office in Milan; a general partnership organized under the laws of Brazil named K&L Gates LLP – Consultores em Direito Estrangeiro/Direito Norte-Americano, with an office in São Paulo; a Taiwan general partnership ("K&L Gates") maintaining an office in Taipei; a joint enterprise formed in accordance with Japanese regulations ("K&L Gates Gaikokuho Joint Enterprise") maintaining an office in Tokyo;  and a limited liability company organized under the laws of Singapore ("K&L Gates Straits Law LLC").

You acknowledge that the Firm has not provided you with legal advice concerning the terms and conditions of our Engagement Contract.

## OUR CHARGES FOR LEGAL SERVICES

### A.   Legal Fees

Our statements for professional services will be substantially based upon the time spent by professionals, including lawyers, paralegals and other staff members operating under the supervision of lawyers, who perform services on your behalf. The hourly rates for those individuals are based upon their experience and vary by office across the Firm. Time spent on your matters will include meetings with you and others; traveling; considering, preparing and working on documents, pleadings and other papers; written and electronic correspondence; and, making and receiving telephone calls. Whether or not a matter proceeds to completion, our statements will include all work done and all expenses incurred, unless otherwise agreed.

Our hourly rates are periodically reviewed and adjusted. In preparing our statements for professional services, we will use our hourly rates in effect when our services were rendered.

Information regarding standard hourly rates and other charges established by the Firm is proprietary to the Firm. You agree not to disclose such information to third parties without the Firm's prior written consent. In the event that you are served with a demand or legal process that you believe requires you to disclose such information, you agree to notify the Firm immediately of such demand or process, and to reasonably cooperate with the Firm in protecting the Firm's proprietary information from disclosure without the Firm's consent.

### B.   Payment

We will expect payment to be made within thirty days after your receipt of our statement, without regard to the consummation of any proposed transaction or the outcome of any matter. Payment should be made by you in the full amount of our statement and you will be responsible also for any withholding tax or other deduction that may be chargeable to you by the relevant taxing authorities or by a governmental entity. In the event our statements are not paid in a timely manner, we reserve the right to defer further work on your account and, where such arrearage is not resolved after notice of delinquency is given to you, to terminate our representation of you. Under such circumstances, you agree to consent to, and not oppose, such termination and to sign a substitution of counsel and/or such other document as may be reasonably necessary to effect the Firm's termination of our lawyer-client relationship, including the Firm's withdrawal of its prior appearance in any court or other litigated proceeding. The termination of our lawyer-client relationship shall not affect your ongoing responsibility for any fees or other charges incurred as of the date of our notice of termination.

### C.   Third Party Payment Responsibility

If a third party (including an insurer) undertakes to pay any portion of the Firm's bills, 1) you will remain responsible for payment of any amounts billed by the Firm and not paid by that third party, 2) you hereby consent to the application of those funds to the outstanding balance of your account with the Firm and waive any right you might otherwise have to direct us to pay or apply those funds in any other fashion, and 3) to the extent any such third party makes payment to us on your behalf accompanied by directions as to what portion of outstanding fees and expenses are to be covered by such payment, you hereby consent to us adhering to those directions and waive any right you might otherwise have to direct us to pay or apply those funds in any other fashion. If you are awarded legal fees or costs by a court or other party, you will remain responsible for payment of the Firm's billed fees and other charges, even if the award to you is less than the amounts we have billed you. Where we have agreed to represent multiple clients in a matter, each client will be jointly and severally responsible for payment of the Firm's statements.

### D.   Questions

If you have any questions about any statement that we submit to you, you should contact the lawyer responsible for your engagement as soon as you receive it so that we may understand and address your concerns promptly.

## TERMINATION

### A.   Your Right to Terminate

You may terminate our engagement on any or all matters at any time, with or without cause. Your termination of our services will not affect your responsibility to pay for billed and unbilled legal services rendered or other charges incurred as of the date of termination and, where appropriate, for such expenses as we may incur in effecting an orderly transition to successor lawyers of your choice.

### B.   Our Right to Terminate

Subject to any applicable ethical rule or legal requirement, the Firm reserves the right to terminate its representation of you, subject to such permission from any court or tribunal as may be required under the circumstances. In such event, we will provide you with reasonable notice of our decision to terminate and afford you a reasonable opportunity to arrange for

313364961.3

successor lawyers, and we will assist you and your successor lawyers in effecting a transition of the engagement. Reasons for the Firm's termination may include your breach of our Engagement Contract including, without limitation, failure to pay outstanding statements in a timely manner as set forth above, the risk that continued representation may result in our violation of applicable rules of professional conduct or legal standards or of our obligations to any tribunal or third parties, your failure to give us clear or proper direction as to how we are to proceed or to cooperate in our representation of your interests, or other good cause.

**C.**     **Termination Upon Conclusion**

Unless it is previously terminated, the Firm's representation of you, and our lawyer-client relationship with you, will terminate automatically as of the date of the last task performed by the Firm as reflected in the Firm's last invoice, regardless of whether (1) the Firm sends you a closing letter, (2) the Firm sends you invoices for unpaid expenses or fees, (3) a matter for you is open in the Firm's accounting records, or (4) the Firm refers to any matter for you on its website.

**D.**     **Post-Engagement Matters**

After the conclusion or termination of our representation of you as described in our engagement letter and these Terms, changes in relevant laws, regulations or decisional authorities may affect your rights and obligations. Unless you engage the Firm to provide future services and to advise you with respect to any issues that may arise in the future as a result of such changes, we will have no continuing obligation to advise you with respect to future legal developments.

## OUR COMMUNICATIONS WITH CLIENTS

The Firm's lawyers strive to keep our clients reasonably informed about the status of our engagements and promptly to comply with reasonable requests for information. To enable us to provide effective representation, you agree to be truthful and to cooperate with us in the course of the engagement and to keep us reasonably informed of material developments.

If there are particular limitations on how you would like us to communicate with you, please advise us in advance about your preferences. Unless you advise us to the contrary, however, we will assume that communication by e-mail and fax is acceptable to you. Absent special arrangements, we do not employ encryption technologies in our electronic communications.

## CONFIDENTIALITY

**A.**     **Confidentiality and Disclosure**

We owe a duty of confidentiality to all our clients. Accordingly, you acknowledge that we will not be required to disclose to you, or use on your behalf, any documents or information in our possession with respect to which we owe a duty of confidentiality to another client or former client.

Information regarding standard hourly rates and other charges established by the Firm is proprietary to the Firm. Information regarding the Firm's security procedures, policies, and systems is proprietary and confidential to the Firm. Disclosure of this information to outside parties poses a significant security risk to the Firm and its clients. Accordingly, you agree not to disclose such information to third parties without the Firm's prior written consent. In the event that you are served with a demand or legal process that you believe requires you to disclose such information, you agree to notify the Firm immediately of such demand or process, and to reasonably cooperate with the Firm in protecting the Firm's proprietary and confidential information from disclosure without the Firm's consent.

**B.**     **Disclosure to Certain Third Parties**

You agree that we may, when required by our insurers, auditors or other advisers, provide details to them of any matter or matters on which we have represented you.

**C.**     **Disclosure to Other K&L Gates Entities**

You agree that we may disclose confidential information relating to you, or any matters on which we are representing you, to other K&L Gates entities.

**D.**     **Disclosure of Representation**

You agree that, in Firm brochures, attorney biographies, and other materials or information about our practice, we may indicate the general nature of our representation of you, your identity as a Firm client, and examples of engagements handled on your behalf. Consistent with our ethical obligations, we will not disclose any confidential information. If you do not wish to have your name mentioned in our materials, please so inform us in writing.

**E.**     **Internet/Cloud-Based Services and Data Protection**

Any information, including personal data, that K&L Gates collects in our global legal practice may be controlled, stored and processed in, and transferred among, any of our offices and with such contractors,

vendors, consultants, professional advisors, and other service providers as we engage to assist us in our practice or to meet our clients' legal needs (collectively, "contractors"), and may be transferred to and through any country, including countries that may not have privacy (data protection) legislation and regulations comparable, for example, to countries in the European Economic area. The location of our offices and of such contractors may change from time to time, and we may acquire offices and engage contractors in other countries at any time.

In addition, we may use internet/cloud-based infrastructure, services and applications for storing information and files, sharing information with clients and contractors, and for ease of access. These internet/cloud-based services and applications may include, among others, email, mobile phone applications, voice services, electronic data/document websites, appointment/event tracking, contact information storage, time tracking, file sharing with you and other authorized persons or entities, and file synchronization services to keep such information up to date. We understand that, in engaging the Firm, you expressly consent to all such control, storage, processing and transfers.

Whether we control, store, or process this information in our offices or with internet/cloud-based service providers or other contractors, we have an obligation under the applicable rules of professional conduct to protect your confidential information and not reveal such information without your informed consent. We are therefore advising you of the likelihood that during the course of this engagement we may use internet/cloud-based services and applications in your representation. Consistent with applicable rules and ethics opinions, we will take reasonable steps to prevent the disclosure of confidential information, including reviewing the various policies, procedures, and security safeguards that any internet/cloud-based service providers have in place. Although the use of these services and applications involves some degree of risk that third parties may access confidential information, we believe and, by signing this letter, you agree that the benefits of using these services and applications outweigh the risk of any accidental disclosure.

When we handle personal data in connection with the services we provide to you, including any data we outsource to internet/cloud-based service providers or other contractors or share within our offices around the world, we will comply with applicable data privacy regulations (e.g., the EU General Data Protection

Regulation 2016/679, the California Consumer Privacy Act, the Chinese Personal Information Protection Law).

## CONFLICTS OF INTEREST

The Firm's lawyers, acting in a variety of practice areas and in multiple jurisdictions, provide and will provide legal services to thousands of current clients and future clients. Those clients may be competitors, customers, suppliers or have other business dealings and relationships inter se. As a result, those clients may have matters in which their interests are actually or potentially adverse to one another.

In these circumstances, the Firm's ability 1) to represent you in any matter involving, directly or indirectly, another client, and 2) to represent as a client any individual or entity that is or has been adverse to you will be governed exclusively by applicable rules of professional conduct, unless otherwise agreed to by you and the Firm and, as appropriate, any other Firm client. To allow the Firm to represent both you and other current and future clients in pending or future matters to the fullest extent consistent with applicable ethical restrictions, we request our clients to agree to a limited waiver of certain actual or potential conflicts of interest.

Specifically, by this engagement, (1) you agree that the Firm can represent other clients whose interests are actually or potentially adverse to you and can represent as a client any individual or entity that is or has been adverse to you, provided that: (a) the matter is not substantially related to any current or concluded matter in which the Firm has represented you; (b) in carrying out any such other representation, the Firm shall not violate the duty of confidentiality that we owe to you; and, (c) prior to undertaking the other representation, the Firm has reasonably concluded, in the existing circumstances, including this consent, that the Firm can provide competent and diligent representation to you and each other affected client and that the other representation complies with applicable ethical standards; and, (2) you agree that you will not seek to disqualify us from representing other clients with respect to any matters where such provisos are satisfied.

You further agree that, if you choose to withdraw your consent to the Firm's representation of another client in any such other representation, you will, at our request, engage other counsel, and, after any brief and reasonably necessary transition period (for which we will not bill you), you will permit us to terminate our representation of you unless any rule or statute or tribunal with jurisdiction precludes us from doing so.

We have a large and diverse transactional patent practice. You agree that no conflict of interest is presented when, on behalf of other Firm clients, we render patentability, infringement and validity opinions

313364961.3

regarding, and advance patentability arguments over, patents and/or patent applications owned, licensed or controlled by you, but not handled by our law firm. In order to avoid any misunderstanding, we request that our clients, by accepting our engagement letter and these Terms, confirm that they do not think it is a conflict of interest (or that any conflict of interest is waived) when we opine for one client with respect to a patent owned by another client of the firm or distinguish same during prosecution of a patent application.

We also have a large and diverse transactional trademark practice. You agree that no conflict of interest is presented when, on behalf of other Firm clients, we render registrability, infringement and validity opinions regarding, and advance registrability arguments over, registered or unregistered trademarks and/or trademark registration applications owned, licensed or controlled by you, but not handled by our law firm. In order to avoid any misunderstanding, we request that our clients, by accepting our engagement letter and these Terms, confirm that they do not think it is a conflict of interest (or that any conflict of interest is waived) when we opine for one client with respect to a trademark owned by another client of the firm or distinguish same during prosecution of a trademark application.

The Firm represents various third party funders ("TPFs") that provide financing for, without limitation, court based litigation, arbitration proceedings, and court judgment and arbitral award enforcement proceedings in various countries around the world (collectively, "Financing Activities"). There may be situations (known or unknown to the Firm) in which a client of the Firm (which we do not represent in relation to its Financing Activities) is providing or has provided financing to the adverse party in a matter in which the Firm is representing you. The Firm has determined that it would be able to provide competent and diligent representation to both the TPF and you in such a situation and that our representation of each will not be materially limited by our responsibilities to the other. As a condition of this engagement, you consent to the Firm's representation of you and TPFs (in matters unrelated to our work for you). In the event you seek funding or related services (known or unknown to the Firm), from TPFs, you agree that the Firm will not consider the TPF to be a client of the Firm solely as a result of the TPF providing funding and related services to you. Furthermore, you agree the Firm is in no way precluded from representing other clients in any matters adverse to TPFs that have provided or are currently providing financing or related services to you.

Finally, you agree that, for the purposes of determining whether any conflict may exist, only the client(s) identified in our engagement letter, and not any affiliated entity or person, shall be considered our client.

## SANCTIONS

The firm and its lawyers are subject to legal requirements relating to international sanctions enforced in various jurisdictions. These various laws and regulations may at any time impose restrictions or prohibitions on our ability to continue work on your matter due to the parties or activity involved. In such event, we may have legal obligations, or otherwise determine it is appropriate, to take certain steps including potentially reporting matters to relevant authorities and pausing or stopping work for you immediately. Where appropriate we also may decide to apply for a government license under which work may be permitted to continue, but we are under no obligation to do so. Should additional work become necessary as a result of international sanctions, we will advise you about the estimated costs and timescales that may be involved.

## OPPOSING LAWYERS

In addition to our representation of business and not-for-profit entities as well as individuals, we also regularly serve as legal counsel to lawyers and law firms. From time to time, we engage other lawyers and law firms to represent us. As a result, opposing lawyers in a matter may be a lawyer or law firm that we represent now or may represent in the future. Likewise, opposing lawyers in a matter may represent us now or in the future. Further, we have professional and personal relationships with many other lawyers, often because of our participation in professional organizations. Collectively, these situations are common in the legal field. We believe that these relationships with other lawyers will not adversely affect our ability to represent you.

## DOCUMENT RETENTION

Your original hard copy documents and property, described further below, will be returned to you upon conclusion of our representation of you on a particular matter (unless they are relevant to another matter on which we continue to represent you) and, upon our receipt of payment for outstanding fees and other charges, subject to applicable Rules of Professional Conduct. At that time, you will have the opportunity to receive the remainder of your client file (other than the original documents previously returned to you). Some K&L Gates offices maintain files in a digital image format. If you request your file from any of those offices, we will provide it in an electronic format on a CD, DVD or other medium. Should you decide not to accept your remaining file at that time, you authorize us to destroy your files at our discretion. If you do not request the return of your file at the time your matter is concluded, we may retain or destroy the file without further notice to you.

313364961.3

Original documents and property, if not returned to you for any reason, will be designated for permanent retention and will not be destroyed without your prior approval. Such items include, but are not limited to, money orders, travelers checks, stocks and bonds, final executed releases, settlement agreements, contracts and sale or purchase agreements, judgments, deeds, titles, easements, wills and trusts, powers of attorney and all other dispositive estate planning documents.

You agree that our drafts of documents, notes, internal working papers, internal e-mail and electronic databases shall be and remain the property of K&L Gates LLP and shall not be considered part of your client file.

The Firm retains the right to make copies of your file, at our expense, for our own information and retention

## FIRM LAWYERS' PRIVILEGE

We believe it is in your interest as well as the Firm's interest that, in the event ethical or other legal issues arise during our representation of you, including conflict of interest issues or potential disputes between us, the Firm lawyers working on your behalf are able to receive informed, confidential advice regarding their obligations. Accordingly, if we determine in our discretion that it is necessary or advisable for Firm lawyers to consult with our internal or outside counsel, you agree that they may do so and that you recognize the Firm has a lawyer-client privilege protecting the communications between the Firm lawyers working on your behalf and the Firm's internal or outside counsel.

## NEW YORK FEE DISPUTE PROCESS

If any of our New York licensed lawyers work on this matter and if a material portion of the legal services we provide to you takes place in New York, you may have an option to invoke arbitration should a fee dispute arise between you and us during or at the conclusion of this engagement. Specifically, in any civil matter where the fee dispute involves a sum of up to $50,000, you may have a right to compel resolution by binding arbitration. In addition, whether or not binding arbitration is available, both you and we are encouraged to seek resolution of lawyer-client disputes, including fee disputes, through mediation, and the New York Courts and Bar have established a program for mediation of such disputes by an impartial mediator. In the event that any fee dispute should arise in this engagement which is not promptly and satisfactorily resolved between us, we shall furnish you with further details concerning the procedures and effects of arbitration and mediation, so that you can make an informed decision as to how to proceed in the circumstances.

## CLIENT RESPONSIBILITIES

It is possible that you may have insurance policies relating to the matter that is the subject of our engagement. You should carefully check the insurance policies you have purchased and, if coverage may be available, you should provide notice to all insurers that may provide such coverage as soon as possible. Although we will be pleased to assist you in assessing the potential for coverage under any policies you may have, our engagement will not include advising you with respect to the existence or availability of insurance coverage for matters within the scope of our engagement unless you supply us with copies of your insurance policies and expressly request our advice on the potential coverage available under such policies.

## SEVERANCE OF TERMS

If all or any part of our Engagement Contract is or becomes illegal, invalid or unenforceable in any respect, then the remainder will remain valid and enforceable.

## THIRD PARTY RIGHTS

No provision of our Engagement Contract is intended to be enforceable by any third party. Accordingly, no third party shall have any right to enforce or rely on any provision of our Engagement Contract.

## ASSIGNMENT

**A.** **Permitted Assignment**

We may assign the benefit of our Engagement Contract to any partnership or corporate entity that carries on the business of K&L Gates-US in succession to us and you will accept the performance by such assignee of the Engagement Contract in substitution for our performance. References in these Terms (other than in this paragraph) and in any relevant engagement letter to the Firm or to K&L Gates-US shall include any such assignee.

**B.** **Other Assignment**

Subject to the foregoing paragraph, neither you nor we shall have the right to assign or transfer the benefit or burden of our Engagement Contract without the written consent of the other party.

## DEFINITIONS

In these Terms a reference to a **"matter"** is to a transaction, case or other matter as to which at any time you have engaged us to represent you; and, any reference to **"our services"** is to the legal services to be provided by us to you as described in our

engagement letter and any other legal services provided by us to you at any time in relation to a matter.

## INCONSISTENCIES

In the event of any inconsistency between our engagement letter and these Terms, the engagement letter shall prevail.

## RESOLVING PROBLEMS AND DISPUTES

If you have any complaints or concerns about our work for you, please raise these in the first instance with the lawyer responsible for your engagement or with the Firm's Chairman or Global Managing Partner. We will investigate your complaint promptly and carefully and do what we reasonably can to resolve the difficulties to your satisfaction.

## APPLICATION OF TERMS

These Terms supersede any earlier terms of business we may have agreed with you and, in the absence of express agreement to the contrary, will apply to the services referred to in any engagement letter accompanying these Terms and all subsequent legal services we provide to you.

313364961.3

DocuSign Envelope ID: 52133E2A-4EB3-46E7-BBA1-D064F9009F16

# K&L GATES LLP

## SCHEDULE OF STANDARD CHARGES

### 2022

| DESCRIPTION OF CHARGE: | STANDARD CHARGE | UNIT BASIS |
|---|---|---|
| Photocopying/Image Printing | $0.20 | Each copy |
| Color Copying/Printing | $1.00 | Each copy |
| Facsimile/eFax | $0.75 | Each outgoing transmitted page, plus cost of telephone line usage |
| Media Duplication | $25.00 | Per CD/DVD |

Legal Research: The Firm pays for Lexis and Westlaw under monthly fixed fee contracts. The actual, monthly fixed fee is allocated to all users of the database each month, and client charges for such usage are directly proportional to the actual research conducted on their behalf.

Long Distance Telephone and Conference Calls: The charge for long distance and conference calls is based on the actual time length of the call placed at rates that reasonably approximate our costs.

Secretarial Overtime: As required by client specific circumstances, secretarial overtime will be charged at the Firm's average hourly rate for secretarial overtime.

The following are examples of items that will be charged at their out-of-pocket cost to K&L Gates:

Courier (Federal Express, UPS, etc.)

Business Meals

Off-site Storage Retrieval

## EXHIBIT 2

## Potential Parties in Interest List

**Bank**[1]
> JP Morgan Chase Bank

**Bankruptcy Judges**
> Judge Ashely M. Chan
> Judge Brendan L. Shannon
> Judge Christopher S. Sontchi
> Judge Craig T. Goldblatt
> Judge J. Kate Stickles
> Judge John T. Dorsey
> Judge Karen B. Owens
> Judge Laurie Selber Silverstein
> Judge Mary F Walrath

**Debtor**
> GT Real Estate Holdings, LLC

**Debtor Affiliates**
> Appaloosa Management, LP
> David Tepper
> DT Panthers, LLC
> DT Sports Holding, LLC
> Panthers Football, LLC
> Panthers Football Holdco, LLC
> Tepper Sports & Entertainment
> Tepper Sports Holding, Inc.
> Waterford Golf Club 1, LLC
> Waterford Golf Club, LLC

**Former/Current Officers/Directors**
> Jim Bolin
> Kristi Coleman
> Mark Hart
> Mike Palmer
> Steve Argeris
> Tom Glick
> Jonathan Hickman

---

[1]     To the extent that a Potential Party in Interest falls under more than one category, such Potential Party in Interest may be disclosed below in only one category. Furthermore, the inclusion of a Potential Party in Interest within one or more categories in the Application or this Declaration is for convenience only and is not, and shall not be construed as, an acknowledgment or admission regarding any Potential Party in Interest, including with respect to any claims or relationships that such Potential Party in Interest may have against or with the Debtor.

**Governmental Entities**
City of Rock Hill
Rock Hill Police Department
South Carolina Department of Transportation
State of South Carolina, Department of Revenue
York County Treasurer
York County, South Carolina

**Independent Managers**
Vik Jindal
Lawrence Rolnick

**Insurance Providers**
ACE Property and Casualty Insurance Company
Allied World National Assurance Company
American Guarantee and Liability Insurance Company
Beazley
Berkley Entertainment
Berkshire Hathaway Specialty Insurance Company
Federal Insurance Company
Great American Assurance Company
Great American Insurance Company of New York
Greenwich Insurance Company
HDI Global Specialty
Liberty Insurance Underwriters
Lloyds of London
Markel American Insurance Company
North American Specialty Insurance Company
Scottsdale Insurance Company
Starr Indemnity & Liability Company
Travelers Property Casualty Company of America
XL Insurance Americas, Inc.
XL Specialty Insurance Company

**Parties Asserting Lien Rights**
Baker Roofing Company
Barton-Malow Company
Fessler & Bowman, Inc.
MSS Fire & Security, LLC
Precision Walls, Inc.
Steelfab of North Carolina, Inc.
Tepper Sports Holding, Inc
Underwriters at Lloyd's
Watertight Systems, Inc.

**Retained Professionals**
Alvarez & Marsal
Farnan LLP
Kroll Restructuring Administration LLC
White & Case LLP

**Top Unsecured Creditors**
Brabendercox
CMTA, Inc.
Duke Energy
Heidi Edwards
Johnston, Allison & Hord, P.A.
Kelley Vieregg Interior Design
Land Design Inc.
Mascaro/Barton Malow, a Joint Venture
PMC
Populous Architects, P.C.
REC Solar
S&ME, Inc
SLS Boston Design
Terracon Consultants, Inc.
Xenia Hospitality Group

**UCC Lien Parties**
PNC Equipment Finance, LLC

**U.S. Trustee**
Office of the United States Trustee for the District of Delaware
Lauren Attix
David Buchbinder
Linda Casey
Denis Cooke
Joseph Cudia
Holly Dice
Shakima L. Dortch
Timothy J. Fox, Jr.
Diane Giordano
Christine Green
Benjamin Hackman
Ramona Harris
Nyanquoi Jones
Jane Leamy
Joseph McMahon
Hannah M. McCollum
Angelique Okita
James R. O'Malley

Michael Panacio
Linda Richenderfer
Juliet Sarkessian
Richard Schepacarter
Edith A. Serrano
Rosa Sierra-Fox
Dion Wynn

**<u>Vendors</u>**

Beam Wireless, Inc.
BDO Consultants, LLC
Construction Reinforcement LLC
Curtain Wall Design and Consulting, Inc.
Jones Lang LaSalle Americas, Inc.
Mascaro Construction Company, LP
McGuire Woods LLP
Moor & Van Allen, PLLC
MSS Solutions, LLC
O'Melveny & Myers LLP
Perpetual Holdings, LLC
Pricewaterhouse Coopers LLP
Provost Studio
Sherry C. Hutchinson
Shook Kelley Inc.
Ruppert Landscape, Inc.
SteelFab, Inc.
TAB Services, Inc.
Warco Construction, Inc.

313389974.5

**<u>EXHIBIT 3</u>**

**Results of the Connections Search**

## Client Match List

| Name Searched | Relationship to Debtors | Name of Entity and/or Affiliate of Entity that is a K&L Gates Client | Client Status | Nature of Representation |
|---|---|---|---|---|
| Alvarez & Marsal, Inc. | Retained Professionals | Alvarez & Marsal Capital - A&M Capital & Alvarez & Marsal Capital Europe - A&M Capital | Inactive Client | Representation is matters unrelated to the bankruptcy |
| Assa Abloy, Inc. | Subcontractor | ASSA ABLOY Entrance Systems US Inc.; Assa Abloy Entrance Systems Greenville, Inc. f/k/a Overhead Door Company of Greenville Inc.; ASSA ABLOY Global Solutions, Inc.; ASSA ABLOY Entrance Systems AB; ASSA ABLOY Entrance Systems Germany GmbH; ASSA ABLOY Entrance Systems; August Home, Inc. | Active Client | Representation is matters unrelated to the bankruptcy |
| Barton-Malow Company | Subcontractor; Parties asserting lien rights | Barton Malow Company | Active Client | Representation is matters unrelated to the bankruptcy |
| Bolon/Mats Inc. | Subcontractor | Bolon AB | Active Client | Representation is matters unrelated to the bankruptcy |
| Brightview Landscape Development Inc. | Subcontractor | BrightView Landscapes, LLC | Active Client | Representation is matters unrelated to the bankruptcy |
| Capital Electric & Supply LLC | Subcontractor | Colam Invest | Inactive Client | Representation is matters unrelated to the bankruptcy |
| Duke Energy Corporation | Top Unsecured Creditors | Duke Energy Corporation; Rec Solar Commercial Corp; Duke Energy Carolinas, LLC; Duke Energy Renewables Solar, LLC; Duke Energy Progress; PHX Management Holdings, LLC; Duke Energy Trading and Marketing LLC | Active Client | Representation is matters unrelated to the bankruptcy |
| EMSEAL JOINT SYSTEMS, LTD. | Subcontractor | Sika France SAS; Sika Supply Center AG; Sika Parexgroup | Active Client | Representation is matters unrelated to the bankruptcy |
| Ferguson Waterworks | Subcontractor | Ferguson Enterprises, LLC | Active Client | Representation is matters unrelated to the bankruptcy |
| Jonathan Hickman | Chief Restructuring Officer | Jonathan C. and Allison R. Hickman | Active Client | Representation is matters unrelated to the bankruptcy |

| Name Searched | Relationship to Debtors | Name of Entity and/or Affiliate of Entity that is a K&L Gates Client | Client Status | Nature of Representation |
|---|---|---|---|---|
| JP Morgan Chase Bank, N.A. | Banks | JPMorgan Chase Bank, N.A.; JPMorgan Asset Management; J.P Morgan Chase & Co.; J.P. Morgan SE; JPM Capital Corporation; JPMC Strategic Investments I Corporation; J.P. Morgan Securities plc; J.P. Morgan Securities, LLC; JPMorgan IIF Int'l Acquisitions Ltd on behalf of JPMorgan Infrastructure Investments Fund; J.P Morgan Securities Australia Limited; TruSight Solutions, Inc.; Bear Stearns & Co. Inc. | Active Client | Representation is matters unrelated to the bankruptcy |
| Kroll, LLC | Retained Professionals | Kroll Inc. | Inactive Client | Representation is matters unrelated to the bankruptcy |
| Land Design Inc. LandDesign, Inc. | Top Unsecured Creditors | LandDesign, Inc. | Active Client | Representation is matters unrelated to the bankruptcy |
| Mobile Mini | Subcontractor | Williams Scotsman, Inc. | Active Client | Representation is matters unrelated to the bankruptcy |
| MSS FIRE & SECURITY, LLC | Parties asserting lien rights; Subcontractor | Mechanical Systems & Services, Inc. | Inactive Client | Representation is matters unrelated to the bankruptcy |
| MSS Solutions, LLC | Parties asserting lien rights; Subcontractor; Vendors | Mechanical Systems & Services, Inc. | Inactive Client | Representation is matters unrelated to the bankruptcy |
| PNC EQUIPMENT FINANCE, LLC | UCC Lien Parties | The PNC Financial Services Group, Inc.; PNC Mezzanine Capital; PNC Erieview Capital; PNC Riverarch Capital; PNC Bank, N.A.; PNC Realty Investors Inc.; PNC Merchant Services Company | Active Client | Representation is matters unrelated to the bankruptcy |
| PRICEWATERHOUSE COOPERS LLP | Vendors | PricewaterhouseCoopers Services Limited f/k/a PricewaterhouseCoopers LLP (PwC); PricewaterhouseCoopers | Active Client | Representation is matters unrelated to the bankruptcy |
| REC Solar Commercial Corp. | Top Unsecured Creditors | Duke Energy Corporation; Rec Solar Commercial Corp; Duke Energy Carolinas, LLC; Duke Energy Renewables Solar, LLC; Duke Energy Progress; PHX Management Holdings, LLC; Duke Energy Trading and Marketing LLC | Active Client | Representation is matters unrelated to the bankruptcy |
| Smith Turf & Irrigation LLC | Subcontractor | Smith Turf and Irrigation | Active Client | Representation is matters unrelated to the bankruptcy |

| Name Searched | Relationship to Debtors | Name of Entity and/or Affiliate of Entity that is a K&L Gates Client | Client Status | Nature of Representation |
|---|---|---|---|---|
| Sunbelt Rentals, Inc. (Fort Mill, SC) | Subcontractor | Sunbelt Rentals Inc.; Sunbelt Rentals Exchange Inc., Wilmington | Active Client | Representation is matters unrelated to the bankruptcy |
| Terracon Consultants, Inc. | Top Unsecured Creditors | Terracon Consultants, Inc. | Active Client | Representation is matters unrelated to the bankruptcy |
| White & Case LLP | Retained Professionals | White & Case LLP | Active Client | Representation is matters unrelated to the bankruptcy |